47

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

**JAN 2 4 2002**

Michael N. Milby
**Clerk of Court**

| | | |
|---|---|---|
| JUAN PEQUENO | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-00-180 |
| | § | (Jury Requested) |
| CITY OF BROWNSVILLE, IVAN WELKER, | § | |
| in his official capacity, and CARLOS | § | |
| RUBINSTEIN, in his official capacity | § | |

## JOINT PRETRIAL ORDER

The parties to the above cause through their respective counsel of record enter into the

following Joint Pretrial Order.

**I.**
## APPEARANCE OF COUNSEL

**Defendants:**
Mr. Hugh P. Touchy
State Bar No. 20150800
Federal I.D. No. 12401

Mr. Ryan Henry
State Bar No. 24007347
Federal I. D. No. 22968

WILLETTE & GUERRA, L.L.P.
International Plaza, Suite 460
3505 Boca Chica Boulevard
Brownsville, Texas 78521
Telephone      : (956) 541-1846
Facsimile      : (956) 541-1893

**Plaintiff:**

Mr. Frank Costilla
State Bar No. 04856500
Federal I.D. No. 1509

Mr. Alejandro Garcia
State Bar No. 24004663
Federal I. D. No.   Appearing Pro Hac Vice

LAW OFFICE OF FRANK COSTILLA, P.L.L.P.
5 East Elizabeth Street
Brownsville, Texas   78520
Telephone      : (956) 541-4982
Facsimile      : (956) 544-3152

## II.
## STATEMENT OF THE CASE

### A.    Plaintiff's Statement

On or about December 14, 1998, Plaintiff Juan Pequeno was terminated from his employment as the Management Information Systems (MIS) Director with the City of Brownsville. Plaintiff's discharge came about after a fourteen year career with the City (1984-1998) and was a retaliatory action by the City, the City Manager Carlos Rubinstein and the Assistant City Manager Ivan Welker for exercising his constitutional right to free speech at a public meeting of the City Commission on October 20, 1998.

The subject matter of this lawsuit originated from a private audit report requested and delivered to the City of Brownsville in September 1998, outlining various findings and recommendations to the internal accounting of the City's Emergency Medical Services ("EMS") Department. One of the findings proposed the purchase and use of an industry specific software program to displace the present in-house system which was being administered by the City's MIS Department. However, because the audit did not properly analyze the in-house system, the report was subjective, incomplete and misrepresented the capabilities and efficiency of the present system.

During a public meeting of the Brownsville City Commission on October 20, 1998, the purchase of an industry specific software program called "Sweetsoft Ambulance 2000" was proposed to the Commission. At this meeting, Plaintiff, in the capacity of a concerned citizen with first-hand knowledge about the existing software system, voiced concerns to the Commission about the details of the software in order that the Commission would be able to make an accurate, objective, and unbiased decision. Consequently, the issue was tabled and no decision to purchase was made at that time.

3

Incensed about Plaintiff's speech and the delay of the Commission's approval, Defendant Rubinstein ordered Plaintiff to submit a written proposal within a mere two days to draw a comparison on the virtues of the two software systems. Plaintiff was also instructed to contact the EMS Director, Arturo Rodriguez on the issue. The proposal was produced on October 29, 1998, and although Plaintiff made several attempts to contact Mr. Rodriguez, his attempts were futile in that Mr. Rodriguez, who was also angry at Plaintiff for his comments at the October 20th meeting, failed to return Plaintiff's calls. On November 4, 1998, Defendant Rubinstein requested a second proposal with the same information that Plaintiff had already provided. In compliance with management's instruction, Plaintiff submitted this second proposal on November 9, 1998. The following day, Arturo Rodriguez and Plaintiff attended a meeting with supervisors Rubinstein and Welker where the two individuals verbally abused Plaintiff, referred to the two proposals as acts of insubordination, and used this meeting and Plaintiff's alleged "insubordination" as a pretext for Plaintiff's termination.

On November 24, 1998, Welker recommended that Plaintiff be terminated. This recommendation, however was subject to a final decision by the City Manager, Rubinstein, and the resolution of Plaintiff's appeal. On December 14, 1998, Rubinstein addressed a letter to Plaintiff informing him that he was affirming Welker's previous recommendation to terminate Plaintiff. Prior to these events, Plaintiff had never been the subject of any documented disciplinary action by the City and each and every reason cited for Plaintiff's termination was a direct consequence of Plaintiff's speech on October 20, 1998, with no relation to anything Plaintiff had done prior to this date. Accordingly, Defendants unlawfully conditioned Plaintiff's employment on a basis that infringed on his constitutionally protected interest in freedom of expression.

4

### B.     Defendant's Statement

Plaintiff is the former director of the Management Information Systems (MIS) Department of the City of Brownsville.  The MIS Department was responsible for overseeing almost all of the data processing functions of the City of Brownsville, including hardware, software, and computer programming.  [In September of 1998, the City had an independent audit performed on all City departments.  The auditors advised that the EMS billing software was inadequate and needed to be replaced].  The City began looking into alternatives.  On October 20, 1998, at a City Commission meeting, Plaintiff spoke regarding the City of Brownsville's  proposed purchase of the "Sweetsoft Ambulance 2000" software to be used for the City's Emergency Medical Service (EMS) billing.  The "Sweetsoft Ambulance 2000" software is a comprehensive accounting program.  It is designed specifically for use by county and city Emergency Medical Service divisions to help them keep track of billing, accounts receivable, etc..., and was expected to lead to an increase in money recouped for services.  Plaintiff disagreed with the purchase of the software as well as the results of the audit.  The City was previously using an in-house software program developed by Plaintiff's department for Emergency Medical Services billing.  Plaintiff felt his in-house software was adequate and did not need to be replaced.

Shortly after the October 20, 1998 City Commission meeting, the City Manager asked Plaintiff to meet with the Emergency Medical Services (EMS) Director and to prepare a proposal that outlined the specific needs of EMS and detailed how the City's Management Information Systems staff could meet those needs as well as or better than the "Sweetsoft 2000" package.  In response, Plaintiff submitted a "proposal" dated October 29, 2000, defending MIS and the job they had done in the past.  After this first insufficient "proposal", the City Manager sent Plaintiff a memo

5

detailing exactly what was expected of him. Plaintiff then wrote another "proposal" defending MIS. Neither of the "proposals" fulfilled the requests by the City Manager. The City Manager requested specific information from the Plaintiff, which was not provided in either proposal. Instead, the proposals focused on how beneficial Plaintiff felt MIS was to the City. Additionally, Plaintiff failed to meet with the EMS Director to assess the needs of the EMS Department, as directed.

The Assistant City Manager viewed Plaintiff's refusal to meet with EMS to assess its billing needs, his failure to respond properly to the City Manager's request, and his attempt to scuttle the potential purchase as insubordination, actions tending to destroy friendly relations between the City and its employees, refusal or failure to cooperate with fellow workers, and conduct reflecting unfavorably towards the City. Plaintiff was placed on administrative leave, with pay, on November 19, 1998. A letter to this effect was given to Plaintiff and it stated that the City was considering disciplinary action against him. Plaintiff believed that this disciplinary action was going to be termination. After scheduling a pre-disciplinary hearing, which Plaintiff did not attend, the Assistant City Manager decided to terminate Plaintiff. This termination took effect at 5:00 p.m. on November 24, 1998. Written notice of this termination was delivered to Plaintiff shortly after the decision was made on November 24, 1998.

On December 3, 1998, Plaintiff appealed his November 24, 1998 termination to the City Manager's office and an appeal hearing was set. The appeal hearing was rescheduled three times at Plaintiff's request. Despite this, Plaintiff never appeared and failed to deliver any documentary evidence in connection with his appeal to the City Manager's office. On December 14, 1998, Plaintiff's termination of November 24, 1998, was affirmed by the City Manager. The Plaintiff was not terminated for any speech, but was instead terminated for insubordination.

6

### III.
### JURISDICTION

Jurisdiction and venue are proper in the United District Court of the Southern District of

Texas, Brownsville Division.  This Court has subject matter jurisdiction of this case under 28 U.S.C.

§ 1331 (Federal Question) and, 28 U.S.C. § 1343(3) (Civil Rights).  Plaintiff has alleged a claim

under 42 U.S.C. 1983, for violation of his First and Fourteenth Amendment rights, implicating

federal question jurisdiction arising from events allegedly occurring in Brownsville, Cameron

County Texas.

### IV.
### MOTIONS

The following motions are pending at the time of the pretrial conference:

1.      Defendants' Motion to Dismiss and Motion for Summary Judgment.

### V.
### CONTENTIONS OF THE PARTY

**A.      Contention of the Plaintiff**

Plaintiff brings this action against the City of Brownsville and the former Brownsville City

Manager and former Assistant City Manager in their official capacities pursuant to 42 U.S.C. § 1983,

for violations of Plaintiff's First and Fourteenth Amendment rights.  Plaintiff was terminated in

retaliation for his speech concerning the City's proposed purchase of the "Sweetsoft Ambulance

2000" software.

**Limitations**.  Plaintiff's suit was timely filed on Monday, November 27, 2000, following the

Thanksgiving Holiday weekend, and this Court was closed on Friday, November 24, 2000.  Thus,

the suit was timely filed in accordance with Rule 6(a) of the Federal Rules of Civil Procedure which

provides in relevant part:

The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the clerk of the district court inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.

Moreover, Plaintiff's limitations did not run because he was not terminated until December 14, 1998. This is the date that the Assistant City Manager's recommendation to terminate was affirmed by Defendant Rubinstein.

Alternatively, and even if the Assistant City Manager's recommendation to terminate Plaintiff on November 24, 1998 could be construed as a final decision on behalf of the City, Plaintiff did not receive notice of his termination on November 24, 1998. In the context of a wrongful termination case, a cause of action will commence when the employee receives unequivocal notice of his termination or when a reasonable person would know of his termination. *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 134 (5th Cir. 1992); *see also Luna v. Frito-Lay, Inc.*, 726 S.W.2d 624, 628 (Tex. App.–Amarillo 1987, no writ) (accrual of an action for termination of employment under federal statutes occurs when the employee is informed that his employment will be terminated, not when it actually is terminated). In this case, Plaintiff did not receive the Assistant City Manager's letter recommending termination until after November 27, 1998.

**Policy.** In the present case, Defendants Rubinstein and Welker, former City Manager and Assistant City Manager, respectively, were city officials whose acts and edicts represented official policy and whose decisions gave rise to municipal liability under section 1983. The city charter, personnel policies manual, and deposition testimony in the case indicate that these individuals had final authority with respect to the termination of Plaintiff which therefore constitutes official policy by the city and creates municipal liability.

Additionally, Plaintiff points to a summary judgment order in the case of *Ferrell v. City of Brownsville, Texas, et al.*, Civil Action No. B-99-62, filed August 16, 2001, wherein this Court denied the City of Brownsville's and Carlos Rubinstein's Motions for Summary Judgment and disposed of the same policy argument as that which is being proffered in the present case.

**Plaintiff must suffer an adverse employment decision.** It is undisputed that Plaintiff was terminated which constitutes an adverse employment decision.

**Plaintiff's speech must involve a matter of public concern (must pass content, form and context analysis).** Whether or not Plaintiff's speech involves a matter of public concern is a matter of law and will be determined by the content, form and context of Plaintiff's speech. In this regard, the content of Plaintiff's speech involved the proposed purchase of a software program called "Sweetsoft Ambulance 2000." The initial cost for the software was going to be approximately $15,000 and would eliminate the need for the "in-house" software program being administered by Plaintiff's department, MIS. Because the new software would require additional modules and training, several more thousand dollars were going to be spent on it in the future. The present in-house program was working fine and was recording a record volume of revenue for the EMS Department. Plaintiff was trying to let the City Commission and the public know that this was an unnecessary expense for the City and they were not being provided with the full picture of what would be entailed.

The form and context of the speech involves the manner, place, and time of its occurrence. Plaintiff's speech was made before the members of the Brownsville City Commission and the general public who attended the City meeting. Choosing this public forum to discuss the reasons the City should not purchase the software is indicative that Plaintiff's interest in discussing the subject

was to make the public and the City Commission aware of the problems surrounding the software and why it was an unnecessary expenditure. Plaintiff spoke as a citizen on a matter of public concern and not as a city employee with a private interest.

Plaintiff's comments were made and addressed to a public forum on matters which affected the fiscal strength of the City's EMS department, a department which is responsible for addressing emergency needs of the public. Obviously any fiscal shortages to this department could threaten the department's duties to function properly. The public had an interest in hearing the content of Plaintiff's speech. *See e.g., Moore v. City of Kilgore*, 877 F.2d 364, 370 (5th Cir. 1989) (firefighter's comments regarding staffing shortages constituted a matter of public concern).

**Plaintiff's interest in commenting on matters of public concern must outweigh the Defendants' interest in promoting efficiency.** Plaintiff's speech was not disruptive in the least. The speech did not interfere with Plaintiff's performance and operation of the MIS Department, nor did it affect the performance of the EMS Dept. After speaking on the matter, the City Commission decided to table the issue for a couple of weeks. Although this angered the EMS Director, Arturo Rodriguez, because he could not get the software he wanted as quickly as he wanted it, this did not effect governmental efficiency. The software was ultimately purchased after Plaintiff was terminated and the City's efficiency in operations was not affected.

**Plaintiff's speech must have motivated the Defendants' act.** Plaintiff had never been the subject of any disciplinary action by the City in his fourteen year tenure there. After his speech on October 20, 1998, he was terminated less than two months later. On or around November 19, 1998, Plaintiff had been notified of a disciplinary hearing which was scheduled to take place on November 24. Plaintiff was unable to attend the hearing because he was sick that day and had called in to

10

advise Assistant City Manager Welker of that fact. Because he did not show up, Defendants accused

Plaintiff of abusing his sick leave. Although Defendants have tried to fabricate a pretext for his

termination with issues such as this, the Assistant City Manager has conceded that Plaintiff's speech

on October 20, 1998 was a motivating factor for his termination.

### B.        Contention of the Defendants

To begin, Plaintiff's claims are barred by the statute of limitations. The Plaintiff has a two

year statute of limitations in this case. The evidence shows that Plaintiff was terminated on

November 24, 1998 by the Assistant City Manager. Plaintiff received notification that his

termination was effective on that date, and that was the last date for which he was paid. Plaintiff

filed his Original Petition with this Court on November 27, 2000. Thus, he missed the deadline by

three days, and his claim is barred.

Plaintiff admits a two year Statute of Limitation applies. Plaintiff argues that since the two

year limitation period would end on a holiday in which the Federal clerk's office is closed, he did

not miss the Statute of Limitation. This argument relies on the premise that Plaintiff's cause of

action accrued on November 24, 1998. However, Defendants would show that the cause of action

actually accrued earlier, and that November 24, 1998 was the latest it could have possibly accrued.

Under federal law, the limitations period for a § 1983 claim begins to run "the moment the plaintiff

becomes aware that he has suffered an injury or has sufficient information to know that he has been

injured. " *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (C.A.5 (Tex.) 2001). Even if this Court

finds that Plaintiff was not terminated on November 24, 1998, the evidence shows that Plaintiff

knew or should have known that he was going to be terminated prior to that date. As a matter of

11

fact, Plaintiff stated in his deposition that he felt he was going to be terminated on November 19, 1998, when he was placed on administrative leave.

Next, Plaintiff cannot succeed on his First Amendment claim because he did not speak out on a matter of public concern and thus there was no constitutional violation. Based on the content, form, and context of the speech at issue, the competent summary judgement evidence establishes that Plaintiff did not speak on a matter of public concern. Rather, he spoke on a matter of private concern, specifically, his belief that the in-house software, developed by his department, Management Information Systems (MIS), was superior to the commercial version the City of Brownsville was contemplating purchasing. As a result, Plaintiff cannot succeed on his First Amendment claim.

Plaintiff's argument on this point concentrates solely on the words he spoke at the October 20, 1998 city commission meeting. He argues his speech does focus on a matter of public concern due to the fact that it touches on the expenditure of public funds. However, whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement as revealed by the whole court record. Further, Plaintiff is not entitled to insert a few references to the expenditure of public funds and claim that his speech was primarily that of a citizen rather than a disgruntled employee.

Third, Defendants cannot be held liable because the Defendants' interest in efficiency at the office outweighed Plaintiff's interest in speaking. Government employers can fire their employees for speaking on a matter of public concern if their interest in efficiency at the office outweighs the employee's interest in speaking. The evidence shows the speech at issue was likely to generate controversy and disruption, it impeded the department's general performance and operation, and it

affected working relationships necessary to the department's proper functioning.

When an employee fails or refuses to perform their necessary job functions, simply because the City disagrees with their recommendations, it creates an unstable working atmosphere. The City must be able to maintain discipline within its employment ranks. To allow the Plaintiff to disregard the needs of other departments because of his concerns for his own, does not promote efficiency for the City. As a result, the City's interest in terminating the Plaintiff outweighs his right to speak on this particular issue.

Finally, Defendants cannot be held liable under 42 U.S.C. §1983 because Plaintiff has not established that a policy, custom, or practice on the part of Defendants caused his alleged injury. Plaintiff alleges that the City Manager for the City of Brownsville, is an authorized policymaker, and that his acts and edicts represent the official policy or custom of the City. However, Plaintiff does not specify what that policy or custom is. Further, he has shown no evidence to prove that such policy or practice exists, much less that it caused his alleged constitutional deprivation.

Even if this Court finds that Plaintiff has shown a constitutional violation, and even if this Court finds that Plaintiff has shown a policy, custom, or practice on the part of Defendants caused such violation, Defendants still cannot be held liable. Plaintiff cannot establish any policy, custom, or practice was enacted with deliberate indifference toward his constitutional rights. It is not enough that Plaintiff show a policy, custom, or practice on the part of the City of Brownsville caused his alleged constitutional violation. Plaintiff must also prove that the policy which produced or caused the constitutional violation resulted from the deliberate indifference of a final policymaker.

The Plaintiff is also suing Defendants Ivan Welker and Carlos Rubinstein in their official capacity. A §1983 damages suit against a local government official in his official capacity is a suit

13

against the local governmental entity itself.   Thus, to the extent that Plaintiff has brought a §1983

action against Defendants Welker and Rubinstein in their official capacity, he is really bringing suit

against the City of Brownsville, Texas who has already been named as a separate Defendant in this

action.   Plaintiff thus cannot recover damages from Defendants Welker and Rubinstein in their

official capacity, as claims for these damages properly lie solely with the City of Brownsville, Texas.

Further, Defendants Welker and Rubinstein, in their official capacity assert all defenses previously

asserted by Defendant City of Brownsville.

## VI.
## ADMISSIONS OF FACT

1.   Plaintiff is the former director of the Management Information Systems (MIS)
Department of the City of Brownsville.

2.   Directors of City Departments are given the opportunity to view City Commission
agendas before they are posted for the general public.

3.   In September of 1998, the City had an independent audit performed on all City
departments. The auditors advised that the EMS billing software was inadequate and
needed to be replaced

4.    On October 20, 1998, at a City Commission meeting, Plaintiff spoke regarding the
City of Brownsville's  proposed purchase of the "Sweetsoft Ambulance 2000"
software.

5.   At the October 20, 1998  meeting, Plaintiff discussed the total amount of EMS bills
collected in the previous years through use of the in-house software.

6.   At the October 20, 1998 meeting, Plaintiff also raised concerns about Sweetsoft
being DOS based.

14

7.    Plaintiff disagreed with the City's proposed purchase of "Sweetsoft Ambulance 2000."

8.    The City was previously using an in-house software program developed by Plaintiff's department for Emergency Medical Services billing.

9.    Plaintiff felt this in-house software was adequate and did not need to be replaced.

10.   Shortly after the October 20, 1998 City Commission meeting, the City Manager asked Plaintiff to meet with the Emergency Medical Services (EMS) Director and to prepare a proposal that outlined the specific needs of EMS and detailed how the City's Management Information Services staff could meet those needs as well as or better than the "Sweetsoft 2000" package.

11.   Plaintiff submitted a proposal in response to the City Manager's request on October 29, 1998.

12.   After this first proposal, which the City Manager felt was insufficient, the City Manager sent Plaintiff a memo detailing exactly what was expected of him.

13.   Plaintiff submitted a second proposal in response to the City Manager's written memo.  The City Manager felt this proposal was also insufficient.

14.   Plaintiff was placed on administrative leave, with pay, on November 19, 1998

15.   On November 24, 1998, then Assistant City Manager Ivan Welker made a decision regarding Plaintiff's employment with the City, stating it was his recommendation and decision that Plaintiff be terminated.

16.   Assistant City Manager Ivan Welker had the authority to terminate Plaintiff.

17.   On December 3, 1998, Plaintiff appealed the Assistant City Manager's decision.

15

18.   An appeal hearing was set and rescheduled three times at Plaintiff's request.

19.   Plaintiff never appeared for the appeal hearings and failed to deliver any documentary evidence in connection with his appeal to the City Manager's office.  He did however, prior to the scheduled time for the hearings, notify the City Manager that he was unable to attend.

20.   On December 14, 1998, then City Manager Carlos Rubinstein made a decision to uphold Plaintiff's termination.

21.   Plaintiff did in fact receive his final paycheck in May 2001 and after filing a lawsuit.

## VII.
## CONTESTED ISSUES OF FACT

**A.    Plaintiff**

1.   The in-house software would require hard-code changes in order to adapt to new programming.

2.   Plaintiff felt he was going to be terminated on November 19, 1998, when he was placed on administrative leave.

3.   Ivan Welker was not a final policymaker.

4.   Carlos Rubinstein was not a final policymaker.

5.   Plaintiff orally told the City to mail him his final paycheck.

6.   Plaintiff never went to pick up his check after he was terminated.

7.   At the October 29, 1998 meeting, Plaintiff raised concerns about the fact that using Sweetsoft would mean less responsibility for his department and more for EMS.

Plaintiff contests all other issues of fact presented by Defendant except those to which he has expressly admitted.

**B.      Defendant**

Defendant contests all other issues of fact presented by Plaintiff except those to which it has expressly admitted.

## VIII.
## AGREED PROPOSITIONS OF LAW

1.      There is no federal statute of limitations for actions under 42 U.S.C. §1983 and therefore, federal courts look to the general statute of limitations governing personal injuries in the forum state. *Flores v. Cameron County, Tex.*, 92 F.3d 258, 271 (5th Cir. 1996).

2.      Texas has a two year statute of limitations for personal injury claims. TEX. CIV. PRAC. & REM. CODE ANN. §16.003(a) (Vernon 1999).

3.      Texas law governs the limitations period, but federal law governs when a cause of action accrues. *Burns v. Harris County Bail Bond Bd.*, 139 F.3d 513, 518 (5th Cir. 1998).

4.      Under federal law, a §1983 cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Burns v. Harris County Bail Bond Bd.*, 139 F.3d 513, 517 (5th Cir. 1998).

5.      There are four elements to an employee's First Amendment retaliation claim against his employer: (1) the plaintiff must suffer an adverse employment decision, (2) the speech must involve a matter of public concern, (3) the plaintiff's interest in speaking must outweigh the defendant's interest in promoting efficiency, and (4) the plaintiff's

17

speech must have motivated the adverse employment decision. *See Teague v. City of Flower Mound, Tex.*, 179 F.3d 377, 380 (5th Cir. 1999). A city may not discipline an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech. *Rankin v. McPherson*, 483 U.S. 378 (1987); *Perry v. Sinderman*, 408 U.S. 593, 597 (1972). An employee does not abandon his or her First Amendment rights when the employee agrees to work for a public entity. *Moore v. City of Kilgore*, 877 F.2d 364, 370 (5th Cir. 1989).

6.    Whether or not Plaintiff spoke out on a matter of public concern is a legal question. *Kennedy v. Tangipahoa Parish Library Bd. Of Control*, 224 F.3d 359, 366 (5th Cir. 2000).

7.    In a mixed speech case, the courts are bound to use the *Connick* factors of content, context, and form to determine whether the speech is public or private. *Teague v. City of Flower Mound, Tex.*, 179 F.3d 377, 382 (5th Cir. 1999).

8.    Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement as revealed by the whole court record. *Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

9.    An employee cannot transform a personal conflict into an issue of public concern simply by arguing that individual concerns might have been of interest to the public under different circumstances. *Dodds v. Childers*, 933 F.2d 271, 273 (5th Cir. 1991). The existence of an element of personal interest on the part of an employee in his or her speech does not dictate a finding that the employee's speech does not

communicate on a matter of public concern. *Thompson v. City of Starkville*, 901 F.2d 456 (5th Cir. 1990).

10. Government employers can fire their employees for speaking on a matter of public concern if their interest in efficiency at the office outweighs the employee's interest in speaking. *Kennedy v. Tangipahoa Parish Library Bd. Of Control*, 224 F.3d 359, 377 (C.A.5 (La.) 2000).

11. In striking the balance between an employee's right to speak and a government employers interest in efficiency, a Court should examine whether the speech was likely to generate controversy and disruption, whether it impeded the department's general performance and operation, and affected working relationships necessary to the department's proper functioning. *Brawner v. Richardson*, 855 F.2d 187, 192 (5th Cir.1988).

12. To establish municipal liability under 42 U.S.C. § 1983, a complainant must demonstrate an official policy or custom which causes a constitutional deprivation. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978). A city policy, custom or practice can be created through a single act of a final policymaker designated as such under state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122-23 (1988); *Pembaur v. Cincinnati*, 475 U.S. 469, 478-79 (1986). While only final policymaking authority can create municipal liability, that authority can be shared among several individuals or bodies. *Flores v. Cameron County, Texas*, 92 F.3d 258, 264 (5th Cir. 1996).

13.     Plaintiff must also prove that the policy which produced or caused the constitutional violation resulted from the deliberate indifference of a final policymaker. *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 757-59 (5th Cir.1993).

14.     Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. *Board of the County Commissioners of Bryan County, Oklahoma, v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 1391, 137 L.Ed.2d 626 (1997).

15.     A 42 U.S.C. § 1983 suit naming defendants only in their "official capacity" does not involve personal liability to the individual defendant. *Turner v. Houma Mun. Fire and Police Civil Service Bd.*, 229 F.3d 478, 483 (5th Cir. 2000).

16.     A suit against a governmental employee, in his official capacity, is the functional equivalent of a suit against the entity he represents. *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Skelton v. Camp*, 234 F.3d 292, 296 (5th Cir. 2000).

## IX.
## CONTESTED PROPOSITIONS OF LAW

1.      An employer shall pay wages by delivering them to the employee at the employee's regular place of employment during regular employment hours or by delivering them to the employee by any reasonable means authorized by the employee in writing.

2.      Plaintiff is not entitled to insert a few references to the expenditure of public funds and claim that his speech was primarily that of a citizen rather than a disgruntled employee. *Bradshaw v. Pittsburg Ind. School Dist.*, 207 F.3d 814, 817 (5th Cir. 2000).

3.      The effectiveness of city department services, such as a Fire Department, is a public

concern. *See e.g., Moore v. City of Kilgore*, 877 F.2d 364, 372 (5th Cir. 1989).

## X.
## EXHIBITS

Plaintiff's Exhibit List is attached hereto as Attachment "A".

Defendants' Witness List is attached hereto as Attachment "E".

## XI.
## WITNESSES

Plaintiff's Witness List is attached hereto as Attachment "B".

Defendants' Witness List is attached hereto as Attachment "F".

## XII.
## SETTLEMENT

All settlement efforts have been exhausted.  The case cannot be settled and will have to be
tried.

## XIII.
## TRIAL

**A.** Probable length of trial is expected to last three (3) days.

**B.** Defendants do not anticipate any logistical problems.

## XIV.
## ATTACHMENTS

Attachment A:       Plaintiffs's Exhibit List

Attachment B:       Plaintiff's Witness List

Attachment C:       Plaintiff's Proposed Jury Instructions

Attachment D:       Plaintiff's Proposed Voir Dire

Attachment E:       Defendants' Exhibit List

21

Attachment F:      Defendants' Witness List

Attachment G:     Defendants' Proposed Jury Instructions

Attachment H:     Defendants' Proposed Voir Dire


Date: _____       _____

                                        UNITED STATED DISTRICT JUDGE

APPROVED:


Date: _1-24-02_         _____

                                  FRANK COSTILLA
                                  Attorney In Charge for Plaintiff


Date: _1-24-02_         _____

                                  RYAN HENRY
                                  Attorney In Charge for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION


JUAN PEQUENO                         §
                                     §
VS.                                  §
                                     §        CIVIL ACTION NO. B-00-180
CITY OF BROWNSVILLE,                 §              (Jury Requested)
IVAN WELKER, in his official capacity §
and CARLOS RUBINSTEIN, in his official §
capacity                             §

===============================================================

# EXHIBIT "A"

===============================================================

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JUAN PEQUENO                              §
                                          §
VS.                                       §
                                          §        CIVIL ACTION NO. B-00-180
                                          §            (Jury Requested)
CITY OF BROWNSVILLE,                       §
IVAN WELKER, in his official capacity      §
and CARLOS RUBINSTEIN, in his official     §
capacity                                   §

# EXHIBIT "B"

AO 187 (Rev. 7/87) Exhibit and Witness List

# UNITED STATES DISTRICT COURT

SOUTHERN _____ DISTRICT OF _____ TEXAS

JUAN PEQUENO

V.

CITY OF BROWNSVILLE, ET AL.

## EXHIBIT AND WITNESS LIST

Case Number:  B-00-180

| PRESIDING JUDGE Hilda Tagle | PLAINTIFF'S ATTORNEY Frank Costilla | DEFENDANT'S ATTORNEY Ryan Henry |
|---|---|---|
| TRIAL DATE (S) February 11, 2002 | COURT REPORTER | COURTROOM DEPUTY |

| PLF NO | DEF NO | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS* AND WITNESSES |
|---|---|---|---|---|---|
| 1 | | | | | Job Description for City Manager |
| 2 | | | | | City of Brownsville Agreed Upon-Procedures dated September 17, 1998 |
| 3 | | | | | City of Brownsville Agenda Request Form dated October 20, 1998 |
| 4 | | | | | Purchasing Department Memorandum dated October 15, 1998 |
| 5 | | | | | Purchasing Department Memorandum dated October 23, 1998 |
| 6 | | | | | Memo to Carlos Rubinstein from Juan Pequeno dated October 29, 1998 |
| 7 | | | | | City Manager's Office Memorandum dated November 4, 1998 |
| 8 | | | | | Memo to Carlos Rubinstein from Juan Pequeno dated November 9, 1998 |
| 9 | | | | | Letter to Juan Pequeno from Ivan Welker dated November 19, 1998 |
| 10 | | | | | Letter to Juan Pequeno from Ivan Welker dated November 24, 1998 |
| 11 | | | | | City of Brownsville City Charter and Amendments |
| 12 | | | | | City of Brownsville Personnel Policies Manual dated July 7, 1998 |
| 13 | | | | | Letter to Juan Pequeno from Carlos Rubinstein dated December 14, 1998 |
| 14 | | | | | City of Brownsville Performance Evaluation Form |
| 15 | | | | | City of Brownsville Personnel Action Notice |
| 16 | | | | | City of Brownsville Check #102177 for $13,922.51 |
| 17 | | | | | Job Description for Assistant City Manager |
| 18 | | | | | Memo to Carlos Rubinstein from Juan Pequeno dated October 20, 1998 |
| 19 | | | | | City of Brownsville, Texas Report of Absence dated October 20, 1998 |
| 20 | | | | | Letter to Juan Pequeno from Ivan Welker dated November 19, 1998 |
| 21 | | | | | Job Description for EMS Director |
| 22 | | | | | Job Description for MIS Director |

* Include a notation as to the location of any exhibit not held with the case file or not available because of size

AO 187A (Rev. 7/87)  **EXHIBIT AND WITNESS LIST – CONTINUATION**

| Juan Pequeno | | | | vs. | City of Brownsville, et al. | CASE NO | B-00-180 |
|---|---|---|---|---|---|---|---|

| PLF NO | DEF NO | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS AND WITNESSES |
|---|---|---|---|---|---|
| 23 | | | | | Letter to Juan Pequeno from Andres Vega, Jr. dated August 8, 1994 |
| 24 | | | | | Memo to Henry Gonzalez, et al. from Juan Pequeno dated November 16, 1998 |
| 25 | | | | | Statement of Paul Calapa of November 23, 1998 |
| 26 | | | | | Memo to Henry Gonzalez, et al. from Juan Pequeno dated November 23, 1998 |
| 27 | | | | | Memo to Carlos Rubinstein from Juan Pequeno dated December 2, 1998 |
| 28 | | | | | Memo to Carlos Rubinstein from Juan Pequeno dated December 5, 1998 |
| 29 | | | | | Memo to Carlos Rubinstein from Juan Pequeno dated December 8, 1998 |
| 30 | | | | | Memo to Carlos Rubinstein from Juan Pequeno dated December 11, 1998 |
| 31 | | | | | Letter to Juan Pequeno from Efren Fernandez dated January 7, 1999 |
| 32 | | | | | Report of Kenneth G. McCoin, Ph.D., C.F.A. dated September 21, 2001 |
| 33 | | | | | Resume of Kenneth G. McCoin |
| 34 | | | | | Monthly Labor Review June 2001 |
| 35 | | | | | Calculation Table |
| | | | | | |
| | | | | | **WITNESS LIST:** |
| | | | | | Carlos Rubinstein |
| | | | | | Ivan Welker |
| | | | | | Arturo Rodriguez |
| | | | | | Pete Gonzalez |
| | | | | | Juan Pequeno |
| | | | | | Efren Fernandez |
| | | | | | Lynn Pequeno |
| | | | | | Kenneth McCoin, PH.D. |
| | | | | | Paul Calapa |
| | | | | | Carlos Barrera of Long, Chilton, Payte & Hardin |
| | | | | | Long, Chilton, Payte & Hardin, Auditors |
| | | | | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION


JUAN PEQUENO                              §
                                          §
VS.                                       §
                                          §        CIVIL ACTION NO. B-00-180
CITY OF BROWNSVILLE,                      §            (Jury Requested)
IVAN WELKER, in his official capacity     §
and CARLOS RUBINSTEIN, in his official    §
capacity                                  §


# EXHIBIT "C"

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **JUAN PEQUENO** | § | |
| | § | |
| **vs.** | § | **Civil Action No. ___B-00-180___** |
| | § | |
| **CITY OF BROWNSVILLE, ET AL.** | § | |


## PLAINTIFF'S PROPOSED CHARGE TO THE JURY

MEMBERS OF THE JURY:

Now that you have heard the evidence and the argument, it becomes my duty to give you the instructions of the Court as to the law applicable in this case. When arriving at your verdict and in your deliberations, it is your duty to follow these instructions and to apply the rules of law here given to you and to find the facts of this case from the evidence introduced at the trial and in accordance with these rules of law.

You are not to single out one instruction alone as stating the law, but you must consider the instructions as a whole.

You are the sole and exclusive judges of the facts. You should determine these facts without any bias, prejudice, sympathy, fear, or favor and this determination should be made from a fair consideration of all evidence that you have seen and heard at trial. Do not speculate on matters which are not in evidence, and you should never discuss this with anyone until such time as you are discharged, except among yourselves when have been retired to deliberate your verdict.

You are not bound by any opinion which you might think the Court has concerning the facts of this case, and if I have in any way said or done anything which leads you to believe that I have any opinions about the facts in this case you are here instructed to disregard it. Further, nothing in these instructions to you is made for the purpose of suggesting or conveying to you an intimation as to what verdict I think you should find.

This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations of life. A corporation is entitled to the same fair trial at your hands as a private individual. All persons, including corporations, partnerships, unincorporated associations, and other organizations, stand equal before the law, and are to be dealt with as equals in a court of justice.

You are instructed that the statements and arguments of counsel are not evidence. They are only intended to assist the jury in understanding the evidence and the position and contentions of the parties to this suit. The jury should not consider or be influenced by the fact that during the trial of this case, counsel have made objections to the testimony, as it is their duty to do so, and it is the duty of the Court to rule on them in accordance with the law.

It is the function of the jury to determine the credibility of each witness and to determine the weight to be given to his testimony. In weighing the testimony of a witness, you should give that testimony careful scrutiny. Consider all of the circumstances under which each witness has testified, his appearance and demeanor while on the witness stand, his apparent candor and fairness, or the lack thereof, the reasonableness or unreasonableness of his testimony, the interest, if any, he has in the outcome of the case, and the extent to which he is contradicted or supported by other credible

evidence. You will rely on your own good judgment and common sense in considering the evidence and determining the weight to be given it.

The burden is on the plaintiff in a civil action, such as this, to prove every essential element of his claim by a preponderance of the evidence, unless I instruct you otherwise.

"Preponderance of the evidence" means such evidence, when considered and compared with that opposed to it, is more convincing and produces in your mind the belief that what is sought to be proved is more likely true than not true. In determining whether any fact in issue has been proven by a preponderance of the evidence, you should consider the testimony of all witnesses and all exhibits received in evidence, regardless of who may have introduced them.

Generally speaking, there are two types of evidence which a jury may consider in properly find the truth as to the facts of the case. One is direct evidence–such as testimony of an eyewitness. The other is indirect or circumstantial evidence–the proof of a chain of circumstances pointing to the existence or nonexistence of certain facts. As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that the jury find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.

Do not decide who you think should win and then try to answer the questions. You will not decide any issue by lot, by drawing straws, or by the use of any other method of chance. Further, do not do any trading on your answers and verdict must be unanimous; that is, all of the jurors must agree to each of your answers.

During the trial of this case, certain testimony has been presented to you by way of deposition consisting of sworn recorded answers to questions asked of the witness in advance of the trial by one

or more of the attorneys for the parties to the case. The testimony of a witness who, for some reason, cannot be present to testify from the witness stand may be presented in writing under oath or on a video recording played on a television set. Such testimony is entitled to the same consideration, and is to be judged as to credibility, and weighted, and otherwise considered by the jury, insofar as possible, in the same way as if the witness had been present, and had testified from the witness stand.

The Plaintiff, Juan Pequeno, has alleged that he was terminated in retaliation of his public speech during a public meeting of the City of Brownsville Commission against purchasing a software program called "Sweetsoft Ambulance 2000" to handle the accounting for the EMS Department.

If you determine that the Plaintiff has proven that he was terminated due to the City of Brownsville's retaliation for his public speech, then the defendant is liable to the plaintiff on his claim for compensation.

Upon retiring to the jury room, you will select one of your number to act as your foreman or forewoman to preside over your deliberations, and speak for you here in Court. If, during deliberations, you wish to communicate with the Court, your message or question must be written and signed by your foreman or forewoman. Pass the note to the Marshall, who will give it to me. I will then respond as promptly as possible, either in writing or by having you return to the Courtroom so that I can address you orally. I caution you, however, that any note you might send must never reveal your answers to the issues or your numerical division at that time.

Your verdict must represent the considered judgment of each juror, and it must be unanimous; that is each juror must agree to each of your answers. When you have reached

unanimous agreement, your foreman or forewoman will fill in the verdict form, date and sign it, and then you will return to the Courtroom.

Remember at all times that you are not partisans. You are judges–judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

## PLAINTIFF'S PROPOSED INSTRUCTIONS ON ESSENTIAL ELEMENTS

Your verdict must be for Plaintiff and against Defendants City of Brownsville and Carlos Rubinstein in his offical capacity as former City Manager and Ivan Welker in his official capacity as former Assistant City Manager on Plaintiff's First Amendment retaliation claim if the following elements have been proved by the preponderance of the evidence:

*First*, Defendant discharged Plaintiff; and

*Second*, Plaintiff's speech on October 20, 1998 to the Brownsville City Commission and the public in attendance regarding the proposed purchase of the Sweetsoft Ambulance 2000 software was a motivating factor in Defendant's decision to discharge Plaintiff; and

*Third*, defendant was acting under color of law.

However, your verdict must be for defendant if any of the above elements has not been proved by the preponderance of the evidence, or if it has been proved by the preponderance of the evidence that defendant would have discharged plaintiff regardless of his speech on October 20, 1998 to the Brownsville City Commission and the public in attendance regarding the proposed purchase of the Sweetsoft Ambulance 2000 software.

QUESTION NO. 1

Did Plaintiff suffer an adverse employment decision?

Yes_____  No_____

QUESTION NO. 2

Did plaintiff's interest in speaking on October 20, 1998 to the Brownsville City Commission and the public in attendance regarding the proposed purchase of the Sweetsoft Ambulance 2000 software outweigh the Defendant's interest in promoting efficiency in the workplace?

Yes_____  No_____

QUESTION NO. 3

Was Plaintiff's speech on October 20, 1998 to the Brownsville City Commission and the public in attendance a motivating factor in Defendants' decision to discharge?

Yes_____ No_____

**Question No.** 4  What sum of money, if any, will reasonably and fairly compensate the Plaintiff

for the violation of his constitutional right to free speech by the City of Brownsville, Ivan

Welker, and Carlos Rubinstein in their official capacities?

$_____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JUAN PEQUENO | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. B-00-180 |
| CITY OF BROWNSVILLE, | § | (Jury Requested) |
| IVAN WELKER, in his official capacity | § | |
| and CARLOS RUBINSTEIN, in his official | § | |
| capacity | § | |

# EXHIBIT "D"

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JUAN PEQUENO, | § | |
| | § | |
| vs. | § | |
| | § | CIVIL ACTION NO. B-00-180 |
| CITY OF BROWNSVILLE, | § | (Jury Requested) |
| IVAN WELKER (In His Official Capacity as | § | |
| Former Assistant City Manager), | § | |
| and CARLOS RUBINSTEIN (In His Official | § | |
| Capacity as Former City Manager) | § | |

## ATTACHMENT D
## PLAINTIFF'S PROPOSED VOIR DIRE QUESTIONS

1.     Is there anyone on the panel who knows Carlos Rubinstein and Ivan Welker who are Defendants in this case?  If so, how do you know them?

2.     Is there anyone on the panel or a close family member who has been represented by the law firm of Willette & Guerra?

3.     Is there anyone on the panel who knows the defense attorneys in this case, Mr. Ryan Henry and Mr. Hugh P. Touchy?  If so, how do you know them?

4.     Is there anyone on the panel or a close family member who has been employed or is currently employed with the City of Brownsville?

5.     Is there anyone on the panel or a close family member who has any business dealings with the City of Brownsville?

6.     Is there anyone on the panel who believes that a person who has been terminated from his or her employment has no right to sue for money damages to compensate for loss of past and future income and mental anguish?

7.     Is there anyone on the panel who believes that regardless of the manner in which the Plaintiff was terminated, they could not consider awarding damages in the range of one million dollars?

8.     Is there anyone on the panel who <u>does not</u> believe that free speech is an important right which should be protected and preserved in our country?

9.    Is there anyone on the panel who believes that it is alright for a person to be terminated from his or her employment simply because they have spoken publicly on an issue which might concern the general public?

10.    Is there anybody on the panel who is presently or has ever been in a managerial or supervisory position with duties which included the authority to hire, fire and reprimand employees?

11.    Is there anybody on the panel who feels that an employer has an absolute right to fire an employee no matter what circumstances exists?

12.    Is there anyone on the panel who feels that a money judgment against the City of Brownsville would have some type of economic impact or consequence on you personally or your business?

13.    Has anyone on the panel or a close family member been a Defendant in a lawsuit, that is, been sued by another person for any reason?

14.    Is there anyone on the panel who owns and/or manages their own business?

15.    Is there anyone on the panel or close family member who has any connection whatsoever with the accounting firm of Long, Chilton, Payte & Hardin, LLP?

16.    Who among you has seen on television, read ads in newspapers, or seen billboards regarding the topic "lawsuit abuse"? If so, how many of you feel that you have been influenced by these advertisements to the degree that they may affect your decision in this case?

17.    Is there anyone on the panel who cannot base their verdict solely on the evidence presented in the courtroom in this case?



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION


JUAN PEQUENO                          §
                                      §
VS.                                   §
                                      §        CIVIL ACTION NO. B-00-180
                                      §            (Jury Requested)
CITY OF BROWNSVILLE,                  §
IVAN WELKER, in his official capacity §
and CARLOS RUBINSTEIN, in his official §
capacity                              §


# EXHIBIT "E"

| UNITED STATES DISTRICT COURT | ☆ | SOUTHERN DISTRICT OF TEXAS |
|---|---|---|

| Juan Pequeño<br>*versus* | CASE NO.    B-00-180 |
|---|---|
| City of Brownsville, Ivan Welker,  in his official capacity and Carlos Rubinstein, in his official capacity | **Exhibit List** |
| Judge Hilda G. Tagle | Case Manager: Estella Cavazos<br>Court Reporter: Breck Record |
| List of Defendants | Proceeding Date:   February 7, 2002 |

| No. | Description | Adm | Exd |
|---|---|---|---|
| 1 | City of Brownsville Agreed upon procedures [Long, Chilton Audit Report] (September 17, 1998) | | |
| 2 | Excerpts from the meeting of the City Commission of the City of Brownsville (October 20, 1998) | | |
| 3 | Juan Pequeño's "Proposal to continue in-house processing of EMS billing" (October 29, 1998) | | |
| 4 | Carlos Rubinstein's memo to Juan Pequeño (November 4, 1998) | | |
| 5 | Juan Pequeño's "Response to memo received 11/03/98 - asking for Proposal #2" (November 9, 1998) | | |
| 6 | Ivan Welker's Notice of Pre-disciplinary hearing to Juan Pequeño (November 19, 1998) | | |
| 7 | Ivan Welker's letter to Juan Pequeño (November 24, 1998) | | |
| 8 | Juan Pequeño's letter of appeal (December 2, 1998) | | |
| 9 | Carlos Rubinstein's letter to Juan Pequeño (December 4, 1998) | | |
| 10 | Juan Pequeño's notice of unavailability (December 5, 1998) | | |
| 11 | Carlos Rubinstein's letter to Juan Pequeño (December 7, 1998) | | |
| 12 | Juan Pequeño's notice of unavailability (December 8, 1998) | | |
| 13 | Carlos Rubinstein's letter to Juan Pequeño (December 9, 1998) | | |
| 14 | Juan Pequeño's notice of unavailability (December 11, 1998) | | |

| | | | |
|---|---|---|---|
| 15 | Carlos Rubinstein's decision on Juan Pequeño's appeal (December 14, 1998) | | |
| 16 | Personnel Action Notice (December 14, 1998) | | |
| 17 | Affidavit of Ivan Welker (October 3, 2001) | | |
| 18 | Affidavit of Carlos Rubinstein (October 4, 2001) | | |
| 19 | Affidavit of Lanny Lambert (September 14, 2001) | | |
| 20 | Affidavit of Maria Gonzales [with attachements] (August 13, 2001) | | |
| 21 | Personnel file of Juan Pequeño | | |
| 22 | City of Brownsville Personnel Policies Manual (July 7, 1998) | | |
| 23 | City of Brownsville City Charter [with amendments] | | |
| 24 | Juan Pequeño's Answers and Objections to Defendants' Interrogatories, R4Production and R4Admissions (July 13, 2001) | | |
| 25 | Juan Pequeño's Responses and Objections to Defendants' R4Admissions and R4Production (August 17, 2001) | | |
| 26 | Juan Pequeño's First Supplemental Answers and Responses to Defendants' Interrogatories, R4Production and R4Admissions (November 30, 2001) | | |
| 27 | Expert report of Donna Johnson | | |
| 28 | | | |
| 29 | | | |
| 30 | | | |
| 31 | | | |
| 32 | | | |
| 33 | | | |
| 34 | | | |
| 35 | | | |
| 36 | | | |
| 37 | | | |
| 38 | | | |
| 38 | | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JUAN PEQUENO | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. B-00-180 |
| CITY OF BROWNSVILLE, | § | (Jury Requested) |
| IVAN WELKER, in his official capacity | § | |
| and CARLOS RUBINSTEIN, in his official | § | |
| capacity | § | |

# EXHIBIT "F"

| UNITED STATES DISTRICT COURT | ☆ | SOUTHERN DISTRICT OF TEXAS |
| --- | --- | --- |

| Juan Pequeño<br>*versus* | CASE NO.    B-00-180 |
| --- | --- |
| City of Brownsville, Ivan Welker, in his official capacity and Carlos Rubinstein, in his official capacity | **Witness List** |
| Judge Hilda G. Tagle | Case Manager: Estella Cavazos<br>Court Reporter: Breck Record |
| List of Defendants | Proceeding Date:   February 7, 2002 |

1.    Juan Pequeno
P.O. Box 5692
Brownsville, Texas 78523
956-542-2470
Plaintiff, has knowledge of the facts made the basis of this suit.

2.    Blanca Vela
Market Square
P.O. Box 911
Brownsville, Texas 78520
956-548-6063
Mayor, has knowledge of the facts made the basis of this suit.

3.    Carlton Richards
Market Square
P.O. Box 911
Brownsville, Texas 78520
956-548-6063
Commissioner, has knowledge of the facts made the basis of this suit.

4.    Ernie Hernandez
Market Square
P.O. Box 911
Brownsville, Texas 78520
956-548-6063
Commissioner, has knowledge of the facts made the basis of this suit.

5.    Harry McNair, Jr.
      Market Square
      P.O. Box 911
      Brownsville, Texas 78520
      956-548-6063
      Commissioner, has knowledge of the facts made the basis of this suit.

6.    John Wood
      Market Square
      P.O. Box 911
      Brownsville, Texas 78520
      956-548-6063
      Commissioner, has knowledge of the facts made the basis of this suit.

7.    Ivan Welker
      Market Square
      P.O. Box 911
      Brownsville, Texas 78520
      956-548-6063
      Assistant City Manager, has knowledge of the facts made the basis of this suit.

8.    Efren Fernandez
      Market Square
      P.O. Box 911
      Brownsville, Texas 78520
      956-548-6063
      Human Resource Director, has knowledge of the facts made the basis of this suit.

9.    Henry Gonzalez
      Market Square
      P.O. Box 911
      Brownsville, Texas 78520
      Former Mayor, has knowledge of the facts made the basis of this suit.

10.   Carlos Rubinstein
      Market Square
      P.O. Box 911
      Brownsville, Texas 78520
      Previous City Manager, has knowledge of the facts made the basis of this suit.

11.    Ed Manning
8323 Culebra Rd., Ste. 104
San Antonio, Texas 78521
210-256-0807
Texas Workforce Commission hearings officer

12.    Lidia Gonzalez
Market Square
P.O. Box 911
Brownsville, Texas 78520
Human Resource Director

13.    Paul Calapa
Market Square
P.O. Box 911
Brownsville, Texas 78520
Purchasing Department

14.    Leonard Calier
Market Square
P.O. Box 911
Brownsville, Texas 78520
Deputy EMS Director

15.    Sweet Soft Computer Service, Inc.
405 Highway 150 North
P.O. Box 349
West Union, IA 52175
319-422-5638
Computer Software Company

16.    Ms. Donna Johnson, M.Ed, C.R.C.
P. O. Box 270790
Corpus Christi, Texas 78401
361-883-7384
Vocational expert

17.    Arturo Rodriguez
665 Acacia Lake Drive
Brownsville, Texas 78521
(956) 821-5699

18.     Gail Bruciak
        Market Square
        P.O. Box 911
        Brownsville, Texas 78520
        Current MIS Director

19.     Long, Chilton, Payte & Hardin
        P. O. Box 2135
        Brownsville, Texas 78522-2135
        (956) 546-1655

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JUAN PEQUENO | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. B-00-180 |
| CITY OF BROWNSVILLE, | § | (Jury Requested) |
| IVAN WELKER, in his official capacity | § | |
| and CARLOS RUBINSTEIN, in his official | § | |
| capacity | § | |

# EXHIBIT "G"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JUAN PEQUENO                                    §
                                                §
VS.                                             §
                                                §       CIVIL ACTION NO. B-00-180
CITY OF BROWNSVILLE,                            §            (Jury Requested)
IVAN WELKER, in his official capacity           §
and CARLOS RUBINSTEIN, in his official          §
capacity                                        §

## DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**LADIES AND GENTLEMEN OF THE JURY:**

You have heard the evidence in this case. I will now instruct you on the law you must apply.

It is your duty to follow the law as I give it to you. On the other hand, you the jury, are the judges

of the facts. Do not consider any statement that I have made in the course of trial or make in these

instructions as an indication that I have any opinion about the facts of this case.

Statements and arguments of attorneys are not evidence and are not instructions on the law.

They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Do not decide who you think should

win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

You must answer all questions from a preponderance of the evidence. By this is meant the

greater weight and degree of credible evidence before you. In other words, a preponderance of the

evidence just means the amount of evidence that persuades you that a claim is more likely so than

not so. In determining whether any fact has been proved by a preponderance of the evidence in the

case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important act, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembered it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you are justified in light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence--such as testimony of an eyewitness. The other is indirect or circumstantial evidence--the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field--he is called an expert witness--is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant part of his income.

Any notes that you may have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of the other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

3

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

When you retire to the jury room to deliberate on your verdict, you may take the exhibits which the court has admitted into evidence. Select your foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any questions.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible, either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

Remember that in a very real way you are the judges - judges of the facts. Your only interest is to seek the truth from the evidence in the case.

After you have reached a verdict, you are not required to talk to anyone about the case unless the Court orders otherwise.

4

**PROPOSED INSTRUCTIONS**

<u>**WITNESSES**</u>

A witness may be discredited or "impeached" by contradictory evidence or by evidence that the witness has at other times made statements that are inconsistent with the witness's present testimony. The earlier contradictory statements are admissible only to impeach the credibility of the witness and not to conclusively establish the truth of the earlier statements. If you believe any witness has been impeached and thus discredited, you are free to give the testimony of that witness such credibility, if any, as you may think it deserves.

## EVIDENCE

You may, in your determination of the facts of this case, consider both direct and circumstantial evidence. Direct evidence is the testimony of a witness who actually saw an event occur. Circumstantial evidence is proof of a chain of circumstances pointing to the occurrence of a fact or the existence of a fact. Direct evidence includes a witness's testimony as to facts within that person's own personal knowledge, matters that the witness saw and heard, and matters that came to the witness out of that person's own senses or observations. Circumstantial evidence, rather than or in addition to direct evidence, can be used to establish a fact if that fact may be fairly and reasonably inferred from all other facts and circumstances proved in the case. In order to establish a fact or conclusion by circumstantial evidence, the facts that were directly proven in the case must be such as to make the fact or conclusion sought to be shown by circumstantial evidence more reasonably probable to be true than alternative facts or conclusions. As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that the jury find the facts in accordance with a preponderance of all the evidence in the case, both direct and circumstantial.

6

## **PREPONDERANCE OF THE EVIDENCE**

A "preponderance of the evidence" means the greater weight and degree of the credible evidence admitted in this trial. It does not necessarily mean the greater volume of evidence or the greater number of witnesses. To establish or prove something by a preponderance of the evidence means to prove that something is more likely true than not. In other words, a preponderance of the evidence in this case means such evidence that, when considered and compared with that opposed to it, has more convincing force and produces in your minds a belief that what is sought to be proved is more likely true than not.

7

## POLICY, CUSTOM OR PRACTICE

In order to hold the Defendant City of Brownsville, Defendants Carlos Rubinstein, and Ivan Welker in their official capacities liable under § 1983, the Plaintiff must prove by a preponderance of the evidence the violation of any of his federally protected rights were pursuant to the enforcement of a policy, custom, or practice of the Defendants.

The fact that an employee or employees of the City deprived the Plaintiff of his federally protected rights is not itself sufficient basis for imposing § 1983 liability against the Defendants. The Defendants must have acted through an official policy, custom, or practice that affirmatively caused the Plaintiffs damages.

The policy, custom, or practice is an official form or policy, or is a well settled persistent wide spread course of conduct by City officials having the force of law. Whether there was such a policy, custom, or practice is a question of fact for you, the jury to determine. In making this determination you may consider how long the alleged practice existed, the number and percentage of officials engaged in the practice, and the similarity of the conduct engaged in by the employees. A policy, custom, or practice has a force of law when it has been approved, expressly or implicitly, by the City's final policy makers or when the final policy makers, after being placed on notice of a practice or custom of unlawful conduct, are deliberately indifferent to it. Deliberate indifference is defined by what the Supreme Court calls an "objective obviousness" test. Let me explain. A Plaintiff might establish deliberate indifference by showing a pattern of certain specific violations of federally protected rights that puts the policy makers on notice that its practices or customs were causing violations. The Plaintiff would then have to prove that the policy makers consciously did not take reasonable steps to prevent future occurrences.

8

## THE PLAINTIFF'S CLAIMS

The Plaintiff claims that the Defendants, while acting "under color of state law," intentionally deprived the Plaintiff of rights under the Constitution of the United States.

The constitutional rights that the Plaintiff claims the Defendants violated are these:

1. The right to free speech

The First Amendment to the United States Constitution gives every citizen the right to freedom of speech. However, in determining whether the Defendants intentionally violated the Plaintiff's First Amendment rights, you must remember that the Plaintiff as a public employee has a right to practice freedom of speech only to the extent that it does not unduly interfere with the duties and responsibilities of the Plaintiff's employment. You must also balance the Plaintiff's First Amendment interests against the Defendants' interests in promoting the efficiency of the public service it performs through its employees.[1]

---

[1] FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS CIVIL 134 (Committee on Pattern Jury Instruction District Judges Association Fifth Circuit ed., 1999).

9

## **PRIMA FACIE CASE FOR FIRST AMENDMENT VIOLATIONS BY DEFENDANT CITY OF BROWNSVILLE, AND DEFENDANTS CARLOS RUBINSTEIN AND IVAN WELKER IN THEIR OFFICIAL CAPACITIES.**

A person may sue for an award of money damages against anyone who, "under color" of any State law, intentionally violates his rights under the Constitution of the United States.

The Plaintiff must prove each of the following by a preponderance of the evidence:

1.      That the Plaintiff's speech activities were constitutionally protected under the First Amendment;

2.      That the Defendants intentionally committed acts that violated Plaintiff's First Amendment right that I have described to you;

3.      That the Defendants acted "under color" of the authority of the State of Texas;

4.      That the Plaintiff's exercise of his protected First Amendment right was a substantial or motivating factor in the Defendants' acts.

5.      The violation of the Plaintiff's right was pursuant to a policy, custom or practice of the Defendants; and

6.      That the Defendants' policy, custom or practice was the legal cause of the Plaintiff's damages.

7.      The Defendants' policy, custom, or practice was created with deliberate indifference.

First, the Judge will determine whether the Plaintiff's speech activities were constitutionally protected under the First Amendment.  The question whether the Plaintiff's speech is protected by the First Amendment is a question of law, and is not a question for you to consider.

I have decided that the First Amendment protects the following speech in which the Plaintiff engaged:

10

Second, you must determine if the Plaintiff has proven by a preponderance of the evidence that the Defendants intentionally committed acts that violated his First Amendment rights. Remember, in determining whether the Defendants intentionally violated the Plaintiff's First Amendment rights, you must remember that the Plaintiff as a public employee has a right to practice freedom of speech only to the extent that it does not unduly interfere with the duties and responsibilities of the Plaintiff's employment. You must also balance the Plaintiff's First Amendment interests against the Defendants' interests in promoting the efficiency of the public service it performs through its employees.

Third, the Plaintiff must establish the Defendants acted "under color of law." The parties have stipulated that any acts of the Defendants were performed "under color of law" of the State of Texas.

Fourth, the Plaintiff must prove that his protected speech was a substantial or motivating factor in the Defendants' decision to take action against him. The Plaintiff's protected speech was a substantial or motivating factor in the Defendants' decision to take action against him if it played a substantial part in the actual decision to take action against him. The Defendants may have taken action for no reason whatsoever. If so, then the Plaintiff's speech was not a substantial or motivating factor in the Defendants' decision. The Defendants may have taken action for one sole reason. If that one sole reason was not the Plaintiff's speech, then the Plaintiff's speech was not a substantial or motivating factor in the Defendants' decision. The Defendants may have taken action for several reasons. If so, then you must determine whether one of those reasons was that the Plaintiff spoke. If it was one of those reasons, then you must determine whether it played a substantial part in the actual decision to take action against Plaintiff. If it did not, then the Plaintiff's speech was not a

11

substantial or motivating factor in the Defendants' decision.[2]

Fifth, the Plaintiff must prove by a preponderance of the evidence the violation of his First Amendment rights were pursuant to the enforcement of a policy, custom, or practice of the Defendants. The Plaintiff must also prove by a preponderance of the evidence that the policy, custom, or practice of the Defendants was a cause-in-fact of the damage Plaintiff suffered. The policy, custom, or practice of the Defendants is a cause-in-fact of an injury or damages if it appears from the evidence that the policy, custom, or practice played a substantial part in bringing about or actually causing the injury or damages. The Plaintiff must also prove by a preponderance of the evidence that the policy, custom, or practice of the Defendants was a proximate cause of the damage Plaintiff suffered. The policy, custom, or practice is a proximate cause of the Plaintiff's injuries or damages if it appears from the evidence that the injury or damage was a reasonably foreseeable consequence of the act or omission.

Therefore in order to find in favor of the Plaintiff and against Defendant City of Brownsville, and Defendants Carlos Rubinstein, and Ivan Welker in their official capacities, you must find, by a preponderance of the evidence: (1) the Defendants intentionally committed acts that violated the Plaintiff's right to free speech; (2) the Plaintiff's exercise of his protected First Amendment right was a substantial or motivating factor in the Defendants' acts; (3) the violation of the Plaintiff's right was pursuant to a policy, custom, or practice of the Defendants; (4) the policy custom or practice of the Defendants was the legal cause of the Plaintiff's damages. If you find that the Plaintiff has failed to establish any of these elements, your verdict must be for the Defendants.

---

[2] *Mt. Healthy City Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed. 2d 471 (1977).

## DEFENDANTS' AFFIRMATIVE DEFENSE

If you find that the Plaintiff's protected speech was a substantial motivating factor in the Defendants' decision to take action against the Plaintiff, you must consider whether the Defendants have presented an adequate defense to Plaintiff's case.

If the Defendants show, by a preponderance of the evidence, that they would have reached the same decision to take action against the Plaintiff, even in the absence of the Plaintiff's protected speech, they have mounted an adequate defense. In other words, if the Defendants show, by a preponderance of the evidence, that they would have reached the same decision to take action against the Plaintiff without considering the Plaintiff's protected speech, you must find in favor of the Defendants.[3]

---

[3] *Mt. Healthy City Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed. 2d 471 (1977). *Accord Givhan v. Western Line Consolidated Sch. Dist.*, 439 U.S. 410, 99 S.Ct. 693, 50 L.Ed. 2d 619 (1979).

# DAMAGES

## Cautionary Instructions on Damages

If you find that the Plaintiff has proven, by a preponderance of the evidence, all of the elements of his §1983 claims, you must then decide if he suffered any injuries as a result of the violation of his federally protected rights.

The fact that I am giving you instructions on damages does not mean that you must reach the issue of damages. Also just because I give you instructions on damages does not mean I have an opinion on liability, one way or the other. It is for you alone to decide whether Defendants whom you are considering is liable to the Plaintiff.

You should not reach the issue of damages unless you find that the Plaintiff has established liability on his § 1983 claims. Although I instruct you on the issue of damages, this should not be interpreted in any way as an indication that I believe the Plaintiff should, or should not, prevail in this case.

## Compensatory Damages

If you find that the Defendants are liable to the Plaintiff, then you must determine an amount that is fair compensation for all of the Plaintiff's damages. The purpose of compensatory damages is to compensate the Plaintiff for the damage that the Plaintiff has suffered, if any, from the injuries he sustained as a result of the Defendants' acts or omissions. Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize a Defendants. You should not award compensatory damages for speculative injuries, but only for those injuries which the Plaintiff has actually suffered or that the Plaintiff is reasonably likely to suffer in the future.

14

**Emotional Distress.**

In assessing compensatory damages, you may include an amount for emotional distress, caused by the constitutional violation, that you determine to be reasonable compensation in light of all the evidence in this case. We all know that the nature and degree of pain and mental distress may differ widely from person to person. Consequently, the law does not try to fix, nor does the law permit a precise formula by which pain or emotional distress as an element of compensatory damages may be measured and reduced to dollars and cents. Instead of providing a formula for measuring these damages, the law leaves the determination of the amount of damages to the common sense of you, the jurors.

You should arrive at a monetary amount, in light of your common knowledge and general experience, and without regard to sentiment, that you deem to be fair, reasonable, and adequate. In other words, without favor, without sympathy, and without any precise formula, you as jurors should arrive at a sum of money that will be justly, fairly and adequately compensate the Plaintiff for the actual pain suffering and emotional distress you find that she endured as a direct result of any constitutional deprivation she may have suffered. The amount of damages should be neither excessive nor inadequate. It should be fair, just, and reasonable.[4]

**Lost Earnings in the Past and in the Future**

In assessing compensatory damages, you may include an amount for lost past and future earnings that you determine to be reasonable compensation in light of all the evidence in this case.

---

[4] FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS CIVIL 134 (Committee on Pattern Jury Instructions District Judges Association Fifth Circuit ed., 1999).

15

An award of future damages requires that payment be made now for a loss that Plaintiff will not actually suffer until some future date. Accordingly, if you should award future earnings, then you must determine the present worth in dollars of such future earnings. If you award future earnings, you must consider two factors: (1) you should reduce any award by the amount of the expenses that the Plaintiff would have incurred in making those earnings; and (2) you must reduce the amount to present value by considering the interest that the Plaintiff could earn on the amount of the award if he made a relatively risk free investment.[5]

## Rule against Double Recovery

You should not award damages more than once for the same injury. For example, if the Plaintiff were to prevail on two claims and establish damages for the same injury under both claims you could not award him damages on both of those claims. The Plaintiff is entitled to be made whole, but entitled to recover more than he has lost. Of course, if different injuries are attributed to separate claims, then you must compensate him fully for all of his injuries.

## Nominal Damages

If you return a verdict in the Plaintiff's favor on his § 1983 claim, but find that he failed to meet his burden of proving that he suffered any actual injuries, then you must award the Plaintiff "nominal damages" not to exceed one dollar. Nominal damages are the law's way of recognizing that constitutional rights must be scrupulously observed, even when constitutional violations have not been shown to have caused actual injury.

---

[5] FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS CIVIL 188 (Committee on Pattern Jury Instructions District Judges Association Fifth Circuit ed., 1999).

16

## Mitigation of Damages

A person who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate - to avoid or minimize those damages.

If you find the Defendants are liable and the Plaintiff has suffered damages, the Plaintiff may not recover for any item of damage which he could have avoided through reasonable effort. If you find by a preponderance of the evidence the Plaintiff unreasonably failed to take advantage of an opportunity to lessen his damages, you should deny him recovery for those damages which he would have avoided had he taken advantage of the opportunity.

You are the sole judge of whether the Plaintiff acted reasonably in avoiding or minimizing his damages.  An injured Plaintiff can not sit idly by when presented with an opportunity to reduce his damages.  The Defendants have the burden of proving the damages which the Plaintiff could have mitigated.[6]

---

[6] FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS CIVIL 202 (Committee on Pattern Jury Instructions District Judges Association Fifth Circuit ed., 1999).

17

## DEFENDANTS' PROPOSED JURY QUESTIONS

**Question No 1.**  Did the City of Brownsville, Ivan Welker, and Carlos Rubinstein in their official capacity have a policy, custom, or practice that caused the violation of the Plaintiff's right to free speech?

Yes _____        No _____

If you answered "yes" to question 1, answer question 2, otherwise stop.

**Question No 2.**  Was that policy, custom, or practice created with deliberate indifference toward the Plaintiff's constitutional rights?

Yes _____        No _____

If you answered "yes" to question 2, answer question 3, otherwise stop.

**Question No 3.**  Did the City of Brownsville, Ivan Welker, and Carlos Rubinstein in their official capacities act pursuant to that policy, custom, or practice to intentionally violate Plaintiff's First Amendment right to free speech?

Yes _____        No _____

If you answered "yes" to question 3, answer question 4, otherwise stop.

**Question No. 4.**  Was the Plaintiff's exercise of his protected First Amendment right a substantial or motivating factor in the Defendants' acts?

Yes _____        No _____

If you answered "yes" to question 4, answer question 5, otherwise stop.

18

**Question No 5.**  Was the policy, custom, or practice that caused the violation of the Plaintiff's right the legal cause of the Plaintiff's damages?

Yes _____       No _____

If you answered "yes" to question 5, answer question 6, otherwise stop.

**Question No. 6.**  Would the City of Brownsville, Ivan Welker, and Carlos Rubinstein in their official capacities reached the same decision to take action against the Plaintiff, even in the absence of the Plaintiff's protected speech?

Yes _____       No _____

If you answered "yes" to question 6,  answer question 7, otherwise stop.

**Question No. 7.**  What sum of money, if any, will reasonably and fairly compensate the Plaintiff for the violation of his constitutional right to free speech by the City of Brownsville, Ivan Welker, and Carlos Rubinstein in their official capacities?

$_____

**SO SAY WE ALL**

Foreperson:_____       Date:_____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JUAN PEQUENO | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. B-00-180 |
| CITY OF BROWNSVILLE, | § | (Jury Requested) |
| IVAN WELKER, in his official capacity | § | |
| and CARLOS RUBINSTEIN, in his official | § | |
| capacity | § | |

# EXHIBIT "H"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JUAN PEQUENO                          §
                                      §
VS.                                   §
                                      §    CIVIL ACTION NO. B-00-180
CITY OF BROWNSVILLE,                  §          (Jury Requested)
IVAN WELKER, in his official capacity §
and CARLOS RUBINSTEIN, in his official §
capacity                              §

## DEFENDANTS' PROPOSED VOIR DIRE

1)    Does anyone know somebody employed by the City of Brownsville?

2)    Does anyone here know the Plaintiff or his wife? Other witnesses?

3)    Does anyone work for a City or County?

4)    Does anyone think that a City should not be able to maintain discipline and order among its employees?

5)    Has anyone here filed a lawsuit?  Anyone in their family?

6)    Has anyone here been sued?

7)    Does anyone believe that an employer must have a good reason to fire an employee, otherwise the employer should be liable for lost wages?

8)    Since Plaintiff gets to present his entire case before we can call a single witness, can you wait until both sides have had a chance to present their cases before you begin deciding?

9)    Do you believe the City of Brownsville and other Defendants are entitled to the same fair consideration as an individual person?

10)   Does anyone here agree if you lose your job at one place you should go try to find a job at another place?

11)  Can you return a verdict for the Defendants if the evidence does not support the Plaintiff's case?

12)  Have you reached any preliminary opinions about this case simply because of who the parties are?