63

United States District Court
Southern District of Texas
FILED

FEB 0 1 2002

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JUAN PEQUENO, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-00-180 |
| | § | (Jury Requested) |
| CITY OF BROWNSVILLE, et al. | § | |

## MEMORANDUM OF LAW

TO THE HONORABLE U.S. DISTRICT COURT:

NOW COMES PLAINTIFF JUAN PEQUENO and respectfully submits Plaintiff's

Memorandum of Law as follows with respect to the above-referenced cause:

Respectfully submitted,

**LAW OFFICES OF FRANK COSTILLA, P.L.L.P.**
5 East Elizabeth Street
Brownsville, Texas 78520
Telephone: (956) 541-4982
Facsimile: (956) 544-3152

_____
**Frank Costilla**
Attorney-in-Charge for Plaintiff
State Bar No. 04856500
Federal I.D. No. 1509

**Plaintiff's Memorandum of Law**                                        **Page 1**

## CERTIFICATE OF SERVICE

On this the __1st__ day of February, 2002, a true and correct copy of the above and foregoing document was sent to all counsel involved in the manner indicated below:

Mr. Ryan Henry                                     Via Hand Delivery
**Willette & Guerra, L.L.P.**
International Plaza, Suite 460
3505 Boca Chica Blvd.
Brownsville, Texas 78521


Frank Costilla

# MEMORANDUM OF LAW

## INTRODUCTION

Plaintiff brings this action against the City of Brownsville and the former Brownsville City Manager and former Assistant City Manager in their official capacities pursuant to 42 U.S.C. § 1983, for violations of Plaintiff's First and Fourteenth Amendment rights. Plaintiff was terminated on December 14, 1998 in retaliation for his speech concerning the City's proposed purchase of the "Sweetsoft Ambulance 2000" software.

It is established law that a public employee, such as the Plaintiff herein, does not relinquish his First Amendment rights to comment on matters of public interest simply by virtue of government employment. *Perry v. Sinderman*, 408 U.S. 593 (1972); *Pickering v. Board of Education*, 391 U.S. 563 (1968). A government employee must demonstrate several elements to establish a *prima facie* First Amendment retaliation claim pursuant to 42 U.S.C. § 1983. A *prima facie* cases consists of proof that (1) Plaintiff suffered an adverse employment decision; (2) the Plaintiff's speech involved a matter of public concern; (3) the First Amendment values implicated in the Plaintiff's speech outweighed the City's interest in promoting efficiency; and (4) the Plaintiff's speech motivated the Defendants' act of discharging Plaintiff. *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216 (5th Cir. 1999).

After Plaintiff has demonstrated a prima facie case, the Defendants must demonstrate that they would have taken the same adverse employment action regardless of the Plaintiff's protected speech. If Defendant succeeds in providing a non-retaliatory justification for his or her actions, the burden shifts back to the Plaintiff to demonstrate that the non-retaliatory reasons provided by the Defendants were a pretext for the termination. *See Mt. Healthy City School Dist. Bd. of Education*

*v. Doyle*, 429 U.S. 274 (1977).

The following points address the various elements discussed above as well as specific defenses that have been brought by the Defendants.

**Adverse Employment Decision**.

It is undisputed that Plaintiff was intentionally terminated by Defendants Ivan Welker and Carlos Rubinstein which constitute an adverse employment decision.

**Policy**

In order to establish municipal liability under 42 U.S.C. § 1983, a complaint must demonstrate an official policy or custom which causes a constitutional deprivation. A city policy, custom or practice can be created through a single act of a final policymaker designated as such under state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122-23 (1988); *Pembaur v. Cincinnati*, 475 U.S. 469, 478-79 (1986). The question of who is a final policymaker is a question of state law to be determined by the Court. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989).

In the present case, the actions of Defendants Rubinstein and Welker are at issue. Both had final policymaking authority as evidenced by their job descriptions. As stated in the job description, the City Manager is required to "prepare policy and procedural proposals . . . ." The Assistant City Manager performs the duties of the City Manager in his absence. and "directs, communicates and monitors policies. . . ." In addition, both had final policymaking authority over the termination and recommendation to terminate a Department Director such as Plaintiff. This final policymaking authority forms the basis for municipal liability under Section 1983.

Additionally, Plaintiff points to a summary judgment order in the case of *Ferrell v. City of Brownsville, Texas, et al.*, Civil Action No. B-99-62, filed August 16, 2001, wherein this Court

denied the City of Brownsville's and Carlos Rubinstein's Motions for Summary Judgment and disposed of the same policy argument as that which is being proffered in the present case.

**Plaintiff's Speech Involved a Matter of Public Concern--Content, Form and Context Analysis**

Plaintiff's speech which prompted his termination took place during a public meeting of the Brownsville City Commission on October 20, 1998, and focused on the reasons why the City should not purchase a new software program, "Sweetsoft Ambulance 2000," to handle the accounting and billing requirements for the City's EMS Department.

One of the necessary elements to establish a First Amendment violation requires Plaintiff to show that his speech involved a matter of public concern. *See Pickering v. Board of Education*, 391 U.S. 563 (1968). Whether an employee's speech addresses a matter of public concern is a question of law and must be determined by the content, form, and context of a given statement, as revealed by the whole record. *Connick v. Myers*, 461 U.S. 138, 147-48 (1983). Additionally, the speech's content, form, and context must be considered as a whole package, and the significance of these factors will differ depending on the circumstances of the particular situation. *Moore v. City of Kilgore*, 877 F.2d 364, 370 (5th Cir. 1989). Applying the *Connick* factors of content, form, and context to the facts of this case reveals that Plaintiff's speech clearly addressed a matter of public concern.

### *Content*

First, the content of Plaintiff's speech addressed the obsolete nature of the PC-DOS based software program that was being proposed for purchase. Plaintiff pointed out that using software which required use of a "DOS base" operating system, a system which originated in 1981, would be a step in the wrong direction. In other words, instead of advancing technologically, the City would

be regressing by purchasing this software package. To this Plaintiff stated:

> And one of the things about it was that it was DOS base, and one of the main
> drawbacks of it. * * * The only from this [sic] that concerns me that we [the City]
> might be going a little bit backwards.

He also noted that the software representative was unable to determine when there would be future

upgrades to the software:

> [A]nd we asked the consultant that was selling it you know, 'When are you going to
> look at upgrading it.' And, he really didn't know.

Plaintiff further stated that the purchase of the software would be unnecessary because record high

revenues for the EMS department were being generated with the present in-house software program:

> But we have been collecting this year . . . we have collected more than we ever have
> from Ambulance, $1.3 million. Last year it was 1.1 million. The year before .8, you
> know $800,000. So we have been going . . . you know consecutively going up and
> up.

He also informed the commission and the public who was attending the meeting that the in-house

program was being constantly updated to meet EMS's needs and was being run effectively with the

City's present computer system which had been purchased only three years ago. Finally, Plaintiff

added that the purchase of the software would decentralize the City's EMS billing system requiring

the EMS Department to maintain their own system and subject the City and the EMS Department

to computer security issues. He stated:

> Say once we move more operations to like EMS, if any. It is going to rely more on
> their department to maintain the whole system. * * * But the assurance right now,
> like if something happens over EMS all the data we keep it safe. It is under lock and
> key. And, that will be another issue that as you do that you open up the whole for
> security. More so than you are now.

All of these issues touch directly on an unnecessary expenditure by City government for a

software program that, in Plaintiff's opinion, would decrease the efficiency and effectiveness of the

City's ability to collect revenue from its EMS billings. Naturally, the citizens of Brownsville are concerned about the city's expenditures as well as the efficient operation of the City's EMS Department, which is responsible for responding and providing emergency medical services. Additionally, Plaintiff's comments regarding a centralized computer system and security of computer information raise concerns about privacy issues for those individuals who have used the City's EMS services. Public speech regarding the efficiency and effectiveness of a City's emergency services are a matter of public concern and the community has an interest in hearing discussion on these types of matters. *See e.g.*, *Moore v. City of Kilgore*, 877 F.2d 364, 370 (5th Cir. 1989)

### Form & Context

The form of the speech involves the manner, place, and time of its occurrence. Plaintiff's speech was made before the members of the Brownsville City Commission and the general public who attended the City meeting. Choosing this public forum to discuss the reasons the City should not purchase the software is indicative that Plaintiff's interest in discussing the subject was to make the public and the City Commission aware of the problems surrounding the software and why it was an unnecessary expenditure. If this had been a work related personal concern as Defendants contend, then it would have made no sense for Plaintiff to address the City Commission and the citizens of Brownsville who attended the meeting. Analyzing the content of the speech above in connection with the form in which it was made signifies that Plaintiff's concerns were focused on issues affecting the general public.

In fact, numerous cases involving an individual's speech in a public forum, such as that used by Plaintiff, have resulted in a finding that the speech addressed public concerns. *See Perry v. Sinderman*, 408 U.S. 593 (1972) (newspaper advertisement containing criticism of college's board

of regents); *Pickering v. Board of Education*, 391 U.S. 563 (1968) (published newspaper article criticizing Board's allocation of school funds); *Harris v. Victoria Ind. Sch. Dist.*, 168 F.3d 216 (5th Cir.), *cert. denied*, 528 U.S. 1022 (1999) (committee meeting of the school district); *Moore v. City of Kilgore*, 877 F.2d 364 (5th Cir. 1989) (interview with news media regarding the effectiveness of Fire Department Services).

A review of the content of Plaintiff's speech reveals that nothing he said relates to any job-related grievance or personal interest he had. Furthermore, the fact that Plaintiff was the MIS Director who was looking out after the interests of another Department Director's interests (the EMS Department) is wholly inconsistent with the Defendants' attempted portrayal of Plaintiff as a "disgruntled employee" with an "internal grievance."

But even if Plaintiff's speech could be perceived as combining a private or personal interest, which Plaintiff denies, an employee's speech may contain an element of personal interest and yet still qualify as speech on a matter of public concern. In *Thompson v. City of Starkville*, 901 F.2d 456 (5th Cir. 1990), the Court held: "The existence of an element of personal interest on the part of an employee in his or her speech does not, however, dictate a finding that the employee's speech does not communicate on a matter of public concern." *Thompson*, 901 F.2d at 463. In recognizing that an employee's speech may contain a mixture of public and private concerns and still be actionable, the court cited *Gonzalez v. Benavides*, 774 F.2d 1295, 1298 (5th Cir. 1985), where the court stated: "We do not read *Connick*, however, to exclude the possibility that an issue of private concern to the employer may also be an issue of public concern."

The events and circumstances giving rise to Plaintiff's speech involve an audit of the City's EMS Department. Because the MIS Department played such a critical role in the EMS's billing and

accounting systems, Plaintiff was shocked to discover that the MIS Department was not even consulted or interviewed with regard to the findings and recommendations made by the auditors. Because the auditors did not properly analyze the in-house system, the report was subjective, incomplete and contained misrepresentations about the capabilities and efficiency of the in house system. The audit committee and ultimately the city commission were going to be misinformed. Finally, the City's decision to have the accounts receivable of the EMS audited shows that the issue is a matter of public concern.

Accordingly, analysis of these factors, form and context support the proposition that Plaintiff's speech addressed a matter of public concern.

## Plaintiff's Interest in Commenting on Matters of Public Concern Outweighed Defendants' Interest in Promoting Efficiency

Plaintiff's speech was not disruptive in the least. The speech did not interfere with Plaintiff's performance and operation of the MIS Department, nor did it affect the performance of the EMS Dept. After speaking on the matter, the City Commission decided to table the issue for a couple of weeks. Although this briefly delayed the purchase of the software, this did not effect governmental efficiency. The software was ultimately purchased after Plaintiff was terminated and the City's efficiency in operations was not affected.

## Plaintiff's Speech Motivated the Defendants' Act

Plaintiff had never been the subject of any disciplinary action by the City in his fourteen year tenure there. After his speech on October 20, 1998, he was terminated less than two months later. On or around November 19, 1998, Plaintiff had been notified of a disciplinary hearing which was scheduled to take place on November 24. Plaintiff was unable to attend the hearing because of

illness and had called in to advise Assistant City Manager Welker of that fact. Because he did not show up, Defendants accused Plaintiff of abusing his sick leave. Although Defendants have tried to fabricate a pretext for his termination with issues such as this, the Assistant City Manager has conceded that Plaintiff's speech on October 20, 1998 was a motivating factor for his termination.

**Limitations**

Plaintiff's suit was timely filed on Monday, November 27, 2000, following the Thanksgiving Holiday weekend, and this Court was closed on Friday, November 24, 2000. Thus, the suit was timely filed in accordance with Rule 6(a) of the Federal Rules of Civil Procedure which provides in relevant part:

> The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the clerk of the district court inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.

FED. R. CIV. P. 6(a)

Moreover, Plaintiff's limitations did not run because he was not terminated until December 14, 1998. This is the date that the Assistant City Manager's recommendation to terminate was affirmed by Defendant Rubinstein.

Alternatively, and even if the Assistant City Manager's recommendation to terminate Plaintiff on November 24, 1998 could be construed as a final decision on behalf of the City, Plaintiff did not receive notice of his termination on November 24, 1998. In the context of a wrongful termination case, a cause of action will commence when the employee receives unequivocal notice of his termination or when a reasonable person would know of his termination. *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 134 (5th Cir. 1992); *see also Luna v. Frito-Lay, Inc.*, 726 S.W.2d 624,

628 (Tex. App.–Amarillo 1987, no writ) (accrual of an action for termination of employment under federal statutes occurs when the employee is informed that his employment will be terminated, not when it actually is terminated).  In this case, Plaintiff did not receive the Assistant City Manager's letter recommending termination until after November 27, 1998.

**CONCLUSION**

The United States Supreme Court  has frequently reaffirmed that speech on public issues occupies the highest rung of the hierarchy of First Amendment values and is entitled to special protection.  *See Connick*, 461 U.S. at 145.  Accordingly, and in light of the foregoing, Plaintiff's claim is with merit and Plaintiff is entitled to a trial on the merits.