Appendix C Exhibit 7 (Cont)



Notes

# Rule 52. Findings by the Court; Judgment on Partial Findings

Law About ...
Civil Procedure

## (a) Effect.

In all actions tried upon the facts without a jury or with an advisory jury, tł court shall find the facts specially and state separately its conclusions of la\ thereon, and judgment shall be entered pursuant to Rule 58; and in grantii refusing interlocutory injunctions the court shall similarly set forth the findi of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of whether based on oral or documentary evidence, shall not be set aside unl clearly erroneous, and due regard shall be given to the opportunity of the t court to judge of the credibility of the witnesses. The findings of a master, the extent that the court adopts them, shall be considered as the findings c court. It will be sufficient if the findings of fact and conclusions of law are s orally and recorded in open court following the close of the evidence or app in an opinion or memorandum of decision filed by the court. Findings of fac conclusions of law are unnecessary on decisions of motions under Rule 12 ( or any other motion except as provided in subdivision (c) of this rule.

## (b) Amendment.

On a party's motion filed no later than 10 days after entry of judgment, the court may amend its findings -- or make additional findings -- and may am the judgment accordingly. The motion may accompany a motion for a new under Rule 59. When findings of fact are made in actions tried without a ju the sufficiency of the evidence supporting the findings may be later questio whether or not in the district court the party raising the question objected t the findings, moved to amend them, or moved for partial findings.

## (c) Judgment on Partial Findings

If during a trial without a jury a party has been fully heard on an issue and court finds against the party on that issue, the court may enter judgment a matter of law against that party with respect to a claim or defense that car under the controlling law be maintained or defeated without a favorable fin on that issue, or the court may decline to render any judgment until the clc of all the evidence. Such a judgment shall be supported by findings of fact conclusions of law as required by subdivision (a) of this rule.

## NOTES TO RULE 52

### HISTORY: (Amended Mar. 19, 1948; Aug 1, 1983; Aug 1, 1985; Dec. 1, 1993; Dec. 1, 1995)

### 1937 Adoption

See [former] Equity Rule 70 1/2 , as amended Nov. 25, 1935, (Findings of Fact and Conclusions of Law) and U.S.C.A., Title 28, [former] § 764 (Opinion, findings, and conclusions in action against United States) which are substantially continued in this rule. The provisions of U.S.C.A., Title 28, [former] §§ 773 (Trial of issues of fact; by court) and [former] 875 (Review in cases tried without a jury) are superseded in so far as they provide a different method of finding facts and a different method of appellate review. The rule stated in the third sentence of Subdivision (a) accords with the decisions on the scope of the review in modern federal equity practice. It is applicable to all classes of findings in cases tried without a jury whether the finding is of a fact concerning which there was conflict of testimony, or of a fact deduced or inferred from uncontradicted testimony. See Silver King Coalition Mines Co. v. Silver King Consolidated Mining Co., C.C.A.8, 1913, 204 F. 166, certiorari denied 33 S.Ct. 1051, 229 U.S. 624, 57 L.Ed. 1356; Warren v. Keep, 1894, 15 S.Ct. 83, 155 U.S. 265, 39 L.Ed. 144; Furrer v. Ferris, 1892, 12 S.Ct. 821, 145 U.S. 132, 36 L.Ed. 649; Tilghman v. Proctor, 1888, 8 S.Ct. 894, 125 U.S. 136, 149, 31 L.Ed. 664; Kimberly v. Arms, 1889, 9 S.Ct. 355, 129 U.S. 512, 524, 32 L.Ed. 764. Compare Kaeser & Blair Inc. v. Merchants' Ass'n, C.C.A.6, 1933, 64 F.2d 575, 576; Dunn v. Trefry, C.C.A.1, 1919, 260 F. 147.

In the following states findings of fact are required in all cases tried without a jury (waiver by the parties being permitted as indicated at the end of the listing): Arkansas, Civ.Code (Crawford, 1934) § 364; California, Code Civ.Proc. (Deering, 1937) ss 632, 634; Colorado, 1 Stat.Ann. (1935) Code Civ.Proc. §§ 232, 291 (in actions before referees or for possession of and damages to land); Connecticut, Gen.Stats. §§ 5660, 5664; Idaho, 1 Code Ann. (1932) §§ 7-302 through 7-305; Massachusetts (equity cases), 2 Gen.Laws (Ter.Ed., 1932) ch. 214, § 23; Minnesota, 2 Stat. (Mason, 1927) § 9311; Nevada, 4 Comp.Laws (Hillyer, 1929) §§ 8783-8784; New Jersey, Sup.Ct.Rule 113, 2 N.J.Misc. 1197, 1239 (1924); New Mexico, Stat.Ann. (Courtright, 1929) §§ 105-813; North Carolina, Code (1935) § 569; North Dakota, 2 Comp.Laws Ann. (1913) § 7641; Oregon, 2 Code Ann. (1930) §§ 2-502; South Carolina, Code (Michie, 1932) § 649; South Dakota, 1 Comp.Laws (1929) §§ 2525-2526; Utah, Rev.Stat.Ann. (1933) §§ 104-26-2, 104-26-3; Vermont (where jury trial waived), Pub.Laws (1933) § 2069; Washington, 2 Rev.Stat.Ann. (Remington, 1932) § 367; Wisconsin, Stat. (1935) § 270.33. The parties may waive this requirement for findings in California, Idaho, North Dakota, Nevada, New Mexico, Utah, and South Dakota.

In the following states the review of findings of fact in all non-jury cases, including jury waived cases, is assimilated to the equity review: Alabama, Code Ann. (Michie, 1928) §§ 9498, 8599; California, Code Civ.Proc. (Derring, 1937) § 956a; but see 20 Calif.Law Rev. 171 (1932); Colorado, Johnson v. Kountze, 1895, 43 P. 445, 21 Colo. 486, semble; Illinois, Baker v. Hinricks, 1934, 194 N.E. 284, 359 Ill. 138; Weininger v. Metropolitan Fire Ins. Co., 1935, 195 N.E. 420, 359 Ill. 584, 98 A.L.R. 169; Minnesota, State Bank of Gibbon v. Walter, 1926, 208 N.W. 423, 167 Minn. 37; Waldron v. Page, 1934, 253 N.W. 894, 191 Minn. 302; New Jersey N.J.S.A. 2:27-241, 2:27-363, as interpreted in Bussy v. Hatch, 1920, 111 A. 546, 95 N.J.L. 56; New York, York Mortgage

denied 1942, 62 S.Ct. 1293, 316 U.S. 694, 86 L.Ed. 1764. These findings should represent the judge's own determination and not the long, often argumentative statements of successful counsel. United States v. Forness, supra; United States v. Crescent Amusement Co., 1944, 1945, 65 S.Ct. 254, 323 U.S. 173, 89 L.Ed. 160. Consequently, they should be a part of the judge's opinion and decision, either stated therein or stated separately. Matton Oil Transfer Corp. v. The Dynamic, supra. But the judge need only make brief, definite, pertinent findings and conclusions upon the contested matters; there is no necessity for over-elaboration of detail or particularization of facts. United States v. Forness, supra; United States v. Crescent Amusement Co., supra. See also Petterson Lighterage & Towing Corp. v. New York Central R. Co., C.C.A.2, 1942, 126 F.2d 992; Brown Paper Mill Co., Inc. v. Irwin, C.C.A.8, 1943, 134 F.2d 337; Allen Bradley Co. v. Local Union No. 3, I.B.E.W., C.C.A.2, 1944, 145 F.2d 215, reversed on other grounds 65 S.Ct. 1533, 325 U.S. 797; Young v. Murphy, Ohio 1946, 9 Fed.Rules Serv. 52a.11, Case 2.

The last sentence of Rule 52(a) as amended will remove any doubt that findings and conclusions are unnecessary upon decision of a motion, particularly one under Rule 12 or Rule 56, except as provided in amended Rule 41(b). As so holding, see Thomas v. Peyser, App.D.C.1941, 118 F.2d 369; Schad v. Twentieth Century-Fox Corp., C.C.A.3, 1943, 136 F.2d 991; Prudential Ins. Co. of America v. Goldstein, N.Y.1942, 43 F.Supp. 767; Somers Coal Co. v. United States, N.D.Ohio 1942, 2 F.R.D. 532, 6 Fed.Rules Serv. 52a.1, Case 1; Pen-Ken Oil & Gas Corp. v. Warfield Natural Gas Co., E.D.Ky.1942, 2 F.R.D. 355, 5 Fed. Rules Serv. 52a.1, Case 3; also Commentary, Necessity of Findings of Fact, 1941, 4 Fed. Rules Serv. 936.

**1963 Amendment**

This amendment conforms to the amendment of Rule 58. See the Advisory Committee's Note to Rule 58, as amended.

**1983 Amendment**

Rule 52(a) has been amended to revise its penultimate sentence to provide explicitly that the district judge may make the findings of fact and conclusions of law required in nonjury cases orally. Nothing in the prior text of the rule forbids this practice, which is widely utilized by district judges. See Christensen, A Modest Proposal for Immeasurable Improvement, 64 A.B.A.J. 693 (1978). The objective is to lighten the burden on the trial court in preparing findings in nonjury cases. In addition, the amendment should reduce the number of published district court opinions that embrace written findings.

**1985 Amendment**

Rule 52(a) has been amended (1) to avoid continued confusion and conflicts among the circuits as to the standard of appellate review of findings of fact by the court, (2) to eliminate the disparity between the standard of review as literally stated in Rule 52(a) and the practice of some courts of appeals, and (3) to promote nationwide uniformity. See Note, Rule 52(a): Appellate Review of Findings of Fact Based on Documentary or Undisputed Evidence, 49 Va.L.Rev. 506, 536 (1963).

Some courts of appeal have stated that when a trial court's findings do not rest on demeanor evidence and evaluation of a witness' credibility, there is no reason to defer to

mitting forged certificate of service to court in attempt to demonstrate that habeas petition should not be dismissed based on his failure to petition Illinois Supreme Court for leave to appeal; no sanction less than dismissal with prejudice could be adequate for petitioner's fraud, which was criminal in character and would, if undetected, have destroyed legitimate and dispositive defense to habeas petition. 28 U.S.C.A. § 2254.

---

Kenneth Oliver (submitted), Galesburg, IL, for Petitioner-Appellant Pro Se.

William L. Browers (submitted), Office of the Attorney General, Chicago, IL, for Respondent-Appellee.

Before POSNER, Chief Judge, BAUER and CUDAHY, Circuit Judges.

POSNER, Chief Judge.

The district judge dismissed Oliver's petition for habeas corpus (28 U.S.C. § 2254) with prejudice (compare *Demarest v. Price*, 130 F.3d 922, 939 (10th Cir.1997)), on the ground that he had committed a fraud on the court, and denied Oliver's request for a certificate of appealability, and he renews the request with us.

When the state sought to dismiss Oliver's petition for habeas corpus on the ground that he had failed to petition the Supreme Court of Illinois for leave to appeal, he came back with an affidavit swearing that he had given prison officials the petition to file, and he also submitted what appeared to be a certificate of service. The district judge thought the certificate a forgery and the affidavit perjurious, and Oliver, while denying that he intended to commit perjury or deceive the court, does not deny that the certificate was forged (by Oliver's father) and the affidavit false.

[1-3] Although dismissal with prejudice is a permissible judicial sanction for fraud on the court, *Kovilic Construction Co. v. Missbrenner*, 106 F.3d 768, 773 (7th Cir.1997); *Peerless Industrial Paint Coatings Co. v. Canam Steel Corp.*, 979 F.2d 685 (8th Cir.1992) (per curiam); *Nichols v. Klein Tools, Inc.*, 949 F.2d 1047 (8th Cir. 1991); *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1122 (1st Cir.1989); *Wyle v. R.J. Reynolds Industries, Inc.*, 709 F.2d 585, 589 (9th Cir.1983), the general rule is that before dismissing a suit with prejudice as a sanction for misconduct a court should consider the adequacy of a less severe sanction, *Ball v. City of Chicago*, 2 F.3d 752, 758 (7th Cir.1993); *English v. Cowell*, 969 F.2d 465, 473 (7th Cir.1992); *Aoude v. Mobil Oil Corp., supra*, 892 F.2d at 1118; see also *Kapco Mfg. Co. v. C&O Enterprises, Inc.*, 886 F.2d 1485, 1496 (7th Cir.1989), and there is no indication that the district court did that here. But we do not think that such consideration is necessary in a case in which the plaintiff's fraud is criminal in character and would if undetected destroy a legitimate and dispositive defense. Cf. *Wyle v. R.J. Reynolds Industries, Inc., supra*, 709 F.2d at 591. Such behavior is so egregious, inexcusable, and destructive that no lesser sanction than dismissal with prejudice could be adequate. See *Nichols v. Klein Tools, Inc., supra*, 949 F.2d at 1049; *Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 396 (1st Cir.1990); *Aoude v. Mobil Oil Corp., supra*, 892 F.2d at 1122; *Brockton Savings Bank v. Peat, Marwick, Mitchell & Co.*, 771 F.2d 5, 11-12 (1st Cir.1985); cf. *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1209 (7th Cir. 1984).

The request for a certificate for appealability is therefore

DENIED.



Appendix F

Bruce K. CABLE, as Debtor in Possession,* Plaintiff-Appellant,

v.

IVY TECH STATE COLLEGE,** Defendant-Appellee.

No. 98-3802.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 21, 1999

Decided Dec. 28, 1999

After filing for Chapter 7 bankruptcy, debtor, a former instructor at state technical college, brought claim against college for discrimination and retaliation under Americans with Disabilities Act (ADA). Subsequently, case was converted to Chapter 13. The United States District Court for the Southern District of Indiana, John D. Tinder, J., entered summary judgment against Chapter 7 trustee, who had remained nominally the party plaintiff. Debtor appealed. The Court of Appeals, Kanne, Circuit Judge, held that: (1) Chapter 13 debtor-in-possession can bring claim in his own name on behalf of bankruptcy estate; (2) debtor had standing to appeal even though pre-conversion Chapter 7 trustee was incorrectly listed as the named party plaintiff when judgment was entered; (3) retaliation claim was within scope of Equal Employment Opportunity Commission (EEOC) charge; (4) error in dismissing retaliation claim for failure to exhaust administrative remedy was harmless, as evidence did not support finding that debtor was fired in retaliation for demanding better treatment of and facilities for handicapped people; and (5) debtor failed to show that his dismissal as part of reduction in force was pretextual, thus defeating ADA discrimination claim.

Affirmed.

1. Bankruptcy ⇐2154.1

Chapter 13 debtor-in-possession can bring claim in his own name on behalf of bankruptcy estate. Bankr.Code, 11 U.S.C.A. §§ 1302, 1303, 1306(b); Fed. Rules Bankr.Proc.Rule 6009, 11 U.S.C.A.

2. Bankruptcy ⇐2154.1

In Chapter 7 liquidation proceedings, only the trustee has standing to prosecute or defend a claim belonging to the estate. Bankr.Code, 11 U.S.C.A. §§ 541(a)(1), 704(1).

3. Bankruptcy ⇐2553

As used in statutory definition of estate property, phrase "legal or equitable interests in property" includes choses in action and other legal claims that could be prosecuted for benefit of the estate. Bankr.Code, 11 U.S.C.A. § 541(a)(1).

See publication Words and Phrases for other judicial constructions and definitions.

4. Bankruptcy ⇐2154.1, 2553

Debtor had standing to appeal adverse judgment in employment discrimination claim initially brought against debtor's former employer before debtor's bankruptcy case had been converted from Chapter 7 to Chapter 13, even though preconversion Chapter 7 trustee was incorrectly listed as the named party plaintiff when judgment was entered; Chapter 7 trustee automatically dropped out of the discrimination case when conversion order was entered, and property of the estate, including the lawsuit, returned to debtor, who, as debtor-in-possession, became the real party in interest to prosecute the case on behalf of the estate, despite the oversight in changing the names of the bank-

* Party substituted for Robert A. Brothers, Trustee in Bankruptcy for Bruce K. Cable, pursuant to this opinion.

** Formerly known as Indiana Vocational Technical College.

ruptcy trustees. Bankr.Code, 11 U.S.C.A. §§ 348(d), 1302, 1306.

5. Bankruptcy ⇐2154.1, 3717

At the moment the bankruptcy court granted debtor's motion to convert from Chapter 7 to Chapter 13, the Chapter 7 trustee lost jurisdiction over pending discrimination case against debtor's former employer; in effect, trustee became just another creditor with standing to recover fees from the estate, but without standing to act on behalf of the estate, either to challenge the conversion or for any other purpose, including prosecuting or defending tort actions that belonged to the estate. Bankr.Code, 11 U.S.C.A. § 348(d).

6. Master and Servant ⇐39(1)

Although former employee's Equal Employment Opportunity Commission (EEOC) charge itself was insufficient to allege ADA retaliation claim in addition to claim of disability discrimination, affidavit forwarded to EEOC sufficiently pled retaliation as a cause of employee's dismissal, by stating that employee "fought for handicap rights" and tried to help bring employer "up to code," and stating that "I really believe that and because of my disability I was let go." Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

7. Civil Rights ⇐362.1

Employment discrimination plaintiff may not bring claims in a lawsuit that were not included in Equal Employment Opportunity Commission (EEOC) charge; this requirement serves to enhance the administrative enforcement process by ensuring that EEOC can conduct a full investigation while also providing employer with advance notice of claim and an opportunity to resolve the dispute.

8. Civil Rights ⇐362.1

Claim falls within scope of Equal Employment Opportunity Commission (EEOC) complaint if it is like or reasonably related to the charges in the EEOC complaint and if it reasonably could have developed from EEOC's investigation of the charges before it.

9. Civil Rights ⇐362.1

To be reasonably like or related to Equal Employment Opportunity Commission (EEOC) charge, the charge in employment discrimination lawsuit must describe the same conduct and implicate the same individuals as charge in the EEOC complaint.

10. Master and Servant ⇐36

Affidavit filed with Equal Employment Opportunity Commission (EEOC) to supplement former employee's bare EEOC charge form should have been considered by district court in determining whether employee's retaliation claim was within scope of EEOC charge, where date stamp and cover letter demonstrated conclusively that EEOC received the affidavit contemporaneously with employee's filing of agency discrimination charge form.

11. Civil Rights ⇐343, 375

Requirement that plaintiff have filed an Equal Employment Opportunity Commission (EEOC) charge before filing suit in court is not intended to erect elaborate pleading requirements or let the form of the purported charge prevail over its substance. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

12. Colleges and Universities ⇐8.1(3)

Former technical college instructor's letter discussing handicapped accessibility problems, and evidence of school administrators' comments demonstrating callousness about handicapped people and the issues that affected them, did not support finding that instructor was fired in retaliation for demanding better treatment of and facilities for handicapped people, thus defeating retaliation claim, where letter was sent five years earlier, and there was uncontradicted evidence showing that decision to lay off instructor was motivated by decline in enrollment, the need to reduce staff, and objective criteria used in lay off decisions. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

13. Master and Servant ⇐30(6.10)

To prevail on retaliation claim, employment discrimination plaintiff must produce evidence that (1) he was engaged in protected expression; (2) he suffered an adverse employment action; and (3) a causal link existed between the two.

14. Civil Rights ⇐173.1

Under ADA, prima facie case of employment discrimination requires showing adequate to create inference that employment decision was based on an illegal discriminatory criterion. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

15. Civil Rights ⇐173.1

In context of a reduction in force (RIF), where employees are laid off and not replaced, ADA plaintiff must establish that: (1) he is a member of a protected class; (2) he was adequately performing his job; (3) he was laid off in a reduction in force; and (4) employees outside the protected class were treated more favorably. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

16. Civil Rights ⇐173.1

Employer may rebut ADA plaintiff's prima facie case by offering legitimate, nondiscriminatory reason for its decision, which plaintiff must then show to be pretextual by preponderance of the evidence. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

17. Civil Rights ⇐173.1

Technical college carried its burden in coming forward with legitimate non-discriminatory reason for disabled instructor's dismissal, and instructor failed to show that this reason was pretextual, thus defeating instructor's ADA claim, where instructor's contract was not renewed as part of systemwide reduction in force (RIF) caused by declining enrollment, and there was no evidence that college deviated in any way from even-handed application of objective criteria in its layoff decisions, nor evidence that school made an exception from the objective criteria to retain a non-handicapped person. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

18. Civil Rights ⇐173.1

Evidence of technical college's subsequent job posting for an electronics instructor, after plaintiff electronic instructor was terminated as part of reduction in force (RIF), did not support finding of pretext for purposes of plaintiff's ADA claim, given uncontradicted evidence showing that the posting related to position currently held by an immigrant from Africa, in order to comply with immigration regulations, and that the job description, hours, and pay matched the immigrant instructor's job, not plaintiff's former job. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

---

Gregory A. Stowers, Stowers, Weddle & Henn, Indianapolis, IN, Robert A. Brothers (argued), Indianapolis, IN, for Plaintiff Robert A. Brothers.

Richard A. Smikle, Paul H. Sinclair (argued), Ice, Miller, Donadio & Ryan, Indianapolis, IN, James G. Clark, Indianapolis, IN, for Defendant–Appellee Indiana Vocational Technical College.

Bruce K. Cable, Selma, IN, Appellant Pro Se.

Before EASTERBROOK, KANNE and EVANS, Circuit Judges.

KANNE, Circuit Judge.

This case concerns a Chapter 13 debtor's right to file, prosecute and appeal a claim for relief that belongs to the bankrupt's estate. After filing for Chapter 7 bankruptcy, Bruce K. Cable ("Cable" or "debtor") sued his former employer under the Americans with Disabilities Act ("ADA") for alleged injuries that occurred

before his bankruptcy. Cable subsequently converted his case from Chapter 7 to Chapter 13 and prosecuted the case on his own for the benefit of the estate while the Chapter 7 trustee, Wayne J. Lennington ("Lennington" or "Chapter 7 trustee"), remained nominally as the party plaintiff. The trial court granted summary judgment against the Chapter 7 trustee, and the debtor appealed. The defendant, Ivy Tech State College ("Ivy Tech"), opposed the appeal on jurisdictional grounds, arguing that only Lennington as the named defendant had standing to appeal the ruling. We disagree and hold that a debtor-in-possession has standing to file, prosecute and appeal a chose in action belonging to the estate under Chapter 13. However, we affirm summary judgment for the defendant on the discrimination and retaliation claims.

## I. History

Bruce Cable began teaching as an electronics instructor at Ivy Tech's Muncie, Indiana, campus in the fall of 1989. He had been employed by Ivy Tech through a series of one-year contracts, the last of which expired in May 1994 and was not renewed. Ivy Tech claims that the decision not to renew was necessitated by a "reduction in force" and contends that it used neutral, objective criteria to determine which instructors would be laid off. Cable, who is paralyzed from the waist down and uses a wheelchair, counters that the decision resulted from illegal discrimination against people with physical handicaps and constituted retaliation against him for demanding improved working and learning environments for handicapped students and faculty.

Cable's evidence of discrimination attempts to establish two separate facts: that he was an advocate for the rights of handicapped people and that certain administrators disliked handicapped people. First, at the request of an Ivy Tech administrator in 1989, Cable prepared a list of concerns about handicapped accessibility on the Muncie campus, identifying changes in parking, accessibility and bathroom facilities needed to comply with the ADA. Cable also participated in a handicapped awareness group and was a vocal advocate for issues affecting handicapped people. The group, with Cable's participation but not necessarily under his leadership, advocated improvements in handicapped accessibility on the Muncie campus. It disbanded in 1992 or 1993, at least a year before Cable's termination. At the time of his firing, Cable alleges that the Muncie campus still was not fully in compliance with the ADA.

Second, Cable alleges that statements by a school administrator indicate an insensitivity or prejudice toward handicapped people. According to Cable, Executive Dean Thomas Henry referred to handicapped people as "cripples," considered Cable a "pain in the ass" and thought the awareness group was a drain on the school's resources.

By 1994, enrollment at the Ivy Tech campuses had dropped more than 10 percent. Henry requested an enrollment study of various programs offered on each of the campuses in Region Six, which included the Muncie campus. The study showed that enrollment had dropped most dramatically in four programs, including electronics. Henry decided to lay off one instructor from each program and redirect the money to more sought after programs, such as the physical therapy assistant, occupational assistant and general education programs. To decide who would be laid off, Ivy Tech had three objective goals: (1) retain program chairs; (2) retain instructors with the highest educational credentials; and (3) reward seniority. Applying these criteria to the Muncie electronics program, which had four instructors, the college decided to lay off Cable, who was not a program chair, did not have a master's degree and had (by one month) the least seniority. Cable was informed in March 1994 that his contract would not be renewed. The same criteria were applied



to the other programs and the other campuses.

In May 1994, after Cable had been laid off, Ivy Tech posted an "opening" with the Indiana Department of Workforce Development ("IDWD") for an electronics instructor in Region 6. The position was not actually "open," but was at the time filled by Obrin Griffin, an immigrant from Africa. Griffin, who was one of the three instructors retained in Cable's department, was ultimately retained in the position. Ivy Tech contends that the IDWD requested Griffin's position be posted as a formality so that the IDWD could comply with an immigration regulation. The job description, hours and pay matched Griffin's job, not Cable's former job.

Cable and his wife filed a joint petition for bankruptcy under Chapter 7 of the Bankruptcy Code after the 1994 school year, and Lennington was appointed as trustee. At about the same time, Cable filed a complaint with the Equal Employment Opportunity Commission and, in February 1996, received a "right to sue" letter. Cable filed a complaint on May 22, 1996, in the United States District Court for the Southern District of Indiana, and an amended complaint on August 1, 1996, accusing Ivy Tech of several constitutional violations along with discrimination and retaliation under the ADA.

The district court granted summary judgment on the constitutional claims in February 1998. The dismissal of these claims was not appealed. In April 1998, the Chapter 7 trustee was substituted as the proper party, and soon thereafter Cable, unhappy with Lennington's proposed settlement of the suit, exercised his statutory right to convert from Chapter 7 to Chapter 13 bankruptcy. Bankruptcy Judge Frank J. Otte granted the motion to convert on April 30, 1998, causing Lennington to lose standing as trustee. The bankruptcy court appointed Robert A. Brothers, the standing trustee for Chapter 13 in the Southern District of Indiana, as trustee. On July 30, 1998, Judge Otte approved the confirmation order in Cable's Chapter 13 bankruptcy and ordered that Cable turnover the "net proceeds from their pending chose in action ... to effect 100 percent payment to all creditors."

However, Brothers was not made a party to the ADA suit. For reasons that are unclear, the court and possibly the defense remained unaware that the bankruptcy action had been converted. Cable, who was prosecuting the suit through retained counsel approved by the bankruptcy court, apparently did not notify the district court of the conversion. Despite Lennington's lack of standing in the case, the district court granted summary judgment on the ADA claims against Lennington on September 30, 1998. Brothers was formally substituted as party to the ADA action by this Court on December 2, 1998.

Cable appealed, *pro se*, the grant of summary judgment. The defendant opposed on substantive grounds and also challenged the debtor's standing to bring an appeal in his own name. Although neither the Chapter 7 or Chapter 13 trustee filed notices of appeal, this court asked Brothers and Ivy Tech to brief the issue of standing. Brothers strongly supported on both legal and policy grounds the right of debtors to prosecute and appeal their own choses in action. Brothers noted that as a practical matter, the standing trustee manages about 6,000 active estates involving hundreds of suits that potentially could benefit the creditors.

Because an appellant's standing is foundational to our ability to hear an appeal, we asked the bankruptcy trustee and defendant to brief this issue in addition to the substantive challenge to the summary judgment order, which was briefed by plaintiff Bruce Cable and defendant Ivy Tech.

## II. Analysis

We first address the issue of whether a debtor has standing to appeal an adverse judgment in a claim for relief owned by

the bankrupt estate in which the pre-conversion Chapter 7 trustee was incorrectly listed as the named party plaintiff. Ivy Tech would answer that question negatively on two grounds. First, it contends that only the Chapter 13 trustee can bring a claim for the benefit of the estate and second, because the Chapter 7 trustee was listed (incorrectly) as the plaintiff, only the Chapter 7 trustee can appeal.

*A. Debtor Standing*

[1] Both parties marshal some support for the question of whether a Chapter 13 debtor can bring a claim on behalf of the estate. Admittedly, the decisions of the lower courts are not uniform. Brothers contends that Chapter 13 establishes the debtor-in-possession as a proper party to bring legal claims, which facilitates the prompt and efficient payment of creditors. Ivy Tech uses the decisions of some bankruptcy courts to argue that the trustee must act as the sole legal representative of the estate who alone can sue and be sued over its debts.

Ivy Tech mistakes a fundamental difference between Chapter 7 and Chapter 13. Chapter 7 establishes a much more radical solution to indebtedness, requiring the liquidation of the debtor's property, to which end Congress granted the trustee broad powers without interference from the debtor. The trustee has sole authority to dispose of property, including managing litigation related to the estate. *See* 11 U.S.C. §§ 541(a)(1), 704(1). Chapter 13, on the other hand, encourages the debtor to pay his debts over time by establishing a court-approved payment plan but leaving the debtor in possession of the estate. *See* 11 U.S.C. § 1303 (debtor-in-possession has substantially same powers as the trustee in other chapters); § 1306(b) (debtor retains possession of estate except as limited by plan). The trustee acts as an adviser and administrator to facilitate the repayment of debts according to the plan. *See id.* § 1302.

[2] In liquidation proceedings, *only* the trustee has standing to prosecute or defend a claim belonging to the estate. *See In re New Era, Inc.*, 135 F.3d 1206, 1209 (7th Cir.1998) (holding that Chapter 7 trustee has exclusive right to represent debtor in court); *see also Lambert v. Fuller Co.*, 122 B.R. 243, 245 (E.D.Pa.1990); *Gulley v. Winnebago County Forest Preserve Dist.*, No. 91–C20231, 1992 WL 185088 (N.D.Ill. May 7, 1992); *In re Davis*, 158 B.R. 1000, 1002 (Bankr.N.D.Ind.1993). The same cannot be said for trustees under the reorganization chapters. In those regimes, the debtor has express authority to sue and be sued. Bankruptcy Rule 6009, which applies to Chapters 7, 11 and 13, directs that "[w]ith or without court approval, the *trustee or debtor in possession* may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal." Fed.R.Bankr.P. 6009 (emphasis added); *see also Chapman v. Currie Motors, Inc.*, 65 F.3d 78, 81 (7th Cir. 1995) (holding that federal courts have jurisdiction to hear state law claims brought by Chapter 13 debtor-in-possession); *In re Katner*, 3 B.R. 422, 426 (Bankr.N.D.Tex. 1980) (stating that Chapter 13 debtor has standing to sue and be sued). Furthermore, the Chapter 13 debtor has been considered analogous to Chapter 11, *see e.g., Chapman*, 65 F.3d at 79, which grants the debtor full authority as representative of the estate typical of a trustee. *See* 11 U.S.C. § 1107; *Ford Motor Credit Co. v. Weaver*, 680 F.2d 451, 461 (6th Cir.1982); *In re Halux, Inc.*, 665 F.2d 213, 216 (8th Cir.1981).

[3] Chapter 13 grants the debtor possession of the estate's property, 11 U.S.C. § 1306(b), which is defined by § 541 to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The phrase "legal or equitable interests ... in property" includes



choses in action and other legal claims that could be prosecuted for benefit of the estate. *See In re Smith*, 640 F.2d 888 (7th Cir.1981) ("All causes of action become property of the estate under section 541."); *see also Bauer v. Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir.1988); *In re FBN Food Serv., Inc.*, 185 B.R. 265, 273 (N.D.Ill.1995); *In re U.S. Marketing Concepts, Inc.*, 113 B.R. 487, 490 (Bankr. N.D.Ind.1990). The chose in action, here a discrimination case, belongs to the estate and was being prosecuted for the benefit of its creditors. It would frustrate the essential purpose of § 1306 to grant the debtor possession of the chose in action yet prohibit him from pursuing it for the benefit the estate. Significantly, the Second and Third Circuits have agreed that Chapter 13 debtors can bring claims in their own name. *See Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513, 515 (2d Cir.1998); *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1209 n. 2 (3d Cir.1992); *see also Donato v. Metropolitan Life Insurance Co.*, 230 B.R. 418, 425 (N.D. Cal.1999); *In re Wirmel*, 134 B.R. 258, 260 (Bankr. S.D. Ohio 1991).

Ivy Tech misreads *In re Heath*, 115 F.3d 521 (7th Cir.1997), for the proposition that only a trustee can assert claims on behalf of the estate. Rather, *Heath* holds that the trustee may bring actions *only for the benefit* of the estate, rather than for the benefit of the debtor. *Id.* at 523–24. In *Heath*, the estate and its creditors would not have benefitted at all if the trustee succeeded in its claim because the creditors were already receiving full satisfaction under the plan. The potential recovery would have benefitted only the debtor. Here, the plan specifically directs that the potential proceeds from Cable's Title VII claim benefit the estate and its creditors.

*Heath* stands for the second proposition that § 323 vests the trustee in bankruptcy, as the representative of the estate, with exclusive authority to sue and be sued. *Id.* at 523 and cases cited therein; 11 U.S.C. § 323(a)–(b). We do not question that principle, but only note that *Heath* and the cases cited therein do not concern the authority of debtors-in-possession under Chapter 11 or 13. The several cases cited in *Heath* concern the exclusive right of trustees to bring suits under Chapter 7, which, in contrast to Chapters 11 and 13, does not recognize the legal entity debtor-in-possession. *See In re Perkins*, 902 F.2d 1254 (7th Cir.1990) (Chapter 7 case); *Vega v. Gasper*, 36 F.3d 417 (5th Cir.1994) (Chapter 7); *In re Eisen*, 31 F.3d 1447 (9th Cir.1994) (Chapter 7); *Bauer v. Commerce Union Bank*, 859 F.2d 438 (6th Cir.1988) (Chapter 7). Therefore, those cases cannot mean that a debtor-in-possession under Chapter 13 does not have the power to sue on behalf of the estate.

*Heath* itself deals with Chapter 13, but not specifically with a debtor-in-possession. While this Court stated that the trustee exercises exclusive authority to sue and be sued, *see Heath*, 115 F.3d at 523, we did not address the situation presented when a debtor-in-possession acts, pursuant to its statutory command, in the role of trustee. Under the reorganization chapters, the debtor-in-possession steps into the role of trustee and exercises concurrent authority to sue and be sued on behalf of the estate. *See* Fed. R. Bankr.P. 6009. To say that the trustee has "exclusive authority" does not mean that the debtor-in-possession cannot act as a trustee and therefore enjoy that same authority. Ruling otherwise would conflict with the explicit language of Rule 6009 that the "trustee or debtor in possession may ... prosecute any action or proceeding in behalf of the estate before any tribunal." *Id.*

Similarly, *Richardson v. United Parcel Service*, 195 B.R. 737 (E.D.Mo.1996), concerned whether a debtor could bring a claim, not as debtor-in-possession for the benefit of creditors, but in his own name and apparently for his separate benefit. The court held that because the chose in action remained estate property and had not been abandoned pursuant to § 554, it had to be pursued for the benefit of the

estate. *See id.* at 739. *Richardson* did not discuss whether the district court thought a debtor-in-possession could bring the action for the benefit of the estate. *See id.*

Finally, defendant cited *In re Gardner*, 218 B.R. 338 (Bankr.E.D.Pa.1998), but that case concerns the trustee's avoidance power under § 548(a) of the Bankruptcy Code, 11 U.S.C. § 548(a). Section 548 unequivocally limits the avoidance power to the trustee, and for good reason: Its aim is to prevent the debtor from transferring property with the intent to "hinder, delay, or defraud" creditors. *Id.* It would invite abuse to allow debtors to avoid transfers that the debtor knew at the time of transfer would work to the detriment of the creditors. Such is not the case here where the debtor is attempting to recover damages in a suit that, under § 541, should benefit creditors.

The court in *Gardner* also dismissed the debtor's state law claims, but that dismissal appeared to rest on the claims' insufficient evidentiary basis. *Gardner*, 218 B.R. at 348–49. To the extent *Gardner* could be read to prohibit choses in action brought by a debtor-in-possession, it conflicts directly with Rule 6009 and the authority cited above and has not been followed by the only court outside of that district that considered the *Gardner* reasoning. *See Donato*, 230 B.R. at 425. The proper practice for creditors and trustees is to allow the debtor-in-possession to exercise the powers assigned by §§ 1306(b) and 541, and sue in his own name for the estate.

### B. Substitution

[4] The Chapter 13 debtor has standing to bring claims that benefit the estate. However, the record in this case shows that the district court erroneously entered judgment against the Chapter 7 trustee, Lennington, rather than against the debtor-in-possession or Chapter 13 trustee. Ivy Tech asserts that this error prevents anyone—trustee or debtor—from appealing the action since neither are named parties. The convenience of this rule for the defendant is obvious: It allows the defendant to secure a judgment against a party without standing and then use that mistake to prevent the real parties in interest from appealing. We do not believe such a result, with its attendant harm to creditors, was intended by Congress or required by the Bankruptcy Code.

On April 30, 1998, Lennington ceased to have any authority to act or appear on behalf of the bankrupt estate. The discrimination case continued, however, prosecuted by Cable with counsel approved by the bankruptcy court, although nominally in the name of Lennington. No one doubted that the proceeds of the action would be the property of the estate and turned over for the benefit of its creditors. The defendant rests on the thin formalism that because the case remained titled in the name of the former trustee, then the debtor-in-possession could not appeal. Based on the facts of this case, we disagree.

[5] Conversions from Chapter 7 to another chapter are permitted by § 706 and governed by § 348, which provides that "[c]onversion of a case under section 706, 1112, 1208, or 1307 of this title terminates the service of any trustee or examiner that is serving in the case before such a conversion." 11 U.S.C. § 348(e). The effect of that conversion is clear. At the moment the bankruptcy court granted Cable's motion to convert, the Chapter 7 trustee lost jurisdiction over the case. *See id.* § 348(d); *In re Grossot*, 205 B.R. 341, 343 (Bankr.M.D. Fla.1997); *In re Rakosi*, 99 B.R. 47, 50 (Bankr.S.D.Cal.1989); *In re Wells*, 87 B.R. 732, 736 (Bankr.N.D. Ga.1988). In effect, the trustee became just another creditor with standing to recover fees from the estate, but without standing to act on behalf of the estate, either to challenge the conversion or for any other purpose, including prosecuting or defending tort actions that belonged to the estate. *Wells*, 87 B.R. at 736.



An analogous situation arose in *Grossot* when the Chapter 7 trustee putatively authorized a settlement of an employment discrimination case on behalf of the bankrupt estate after the debtor had converted to Chapter 13. *Grossot*, 205 B.R. at 343. The bankruptcy court approved the settlement of the discrimination cases on request of the Chapter 7 trustee, but "correct[ed] its own mistake" by vacating the order approving the compromise. *Id.* The court held that the trustee "no longer has standing to continue matters that had been commenced before conversion . . . or any other activities." *Id.*

There appears to be no rule directly determining how substitution of parties should take place in choses of action owned by a bankrupt estate when the bankrupt converts from one chapter to another. A motion to substitute the debtor-in-possession or Chapter 13 trustee for the former Chapter 7 trustee would certainly lend clarity to the ongoing litigation. Yet it is unnecessary because the substitution for a Chapter 7 trustee occurs by operation of law. The Bankruptcy Code strongly favors a seamless transition from one chapter to another that will best serve the interests of the creditors and the estate by, among other things, carrying over the filing dates, commencement date and order for relief from one chapter to another. *See, e.g.*, 11 U.S.C. § 348. Bankruptcy Rule 2012(b) provides for automatic substitution of a successor trustee when a trustee ceases to hold office "in any pending action, proceeding or matter." Fed. R.Bankr.P. 2012. Rule 25 of the Federal Rules of Civil Procedure, which applies to bankruptcy proceedings, also provides for automatic substitution of public officers who sue in their official capacity. Fed. R.Civ.P. 25(d). The rule expressly directs that any misnomer of the parties that does not affect their substantive rights shall be disregarded even without a motion or order for substitution. *Id.*

Paragraph (c) of the same rule directs that substitution be accomplished by motion, but applies only to transfers in interest during the pendency of the lawsuit. The transfer in interest brings into doubt the ability of the court to enforce a judgment against a proper party, a potential difficulty resolved by requiring a motion to substitute. Here, conversion from one bankruptcy chapter to another does not affect the ownership interest as a Paragraph (c) transfer in interest would; regardless of the chapter, the property belongs to the estate. *See* 11 U.S.C. § 541.

When the conversion order was entered, the Chapter 7 trustee automatically dropped out of the discrimination case, and the property of the estate, including the lawsuit, returned to the debtor under the guidance of the Chapter 13 trustee. *See* 11 U.S.C. §§ 1302, 1306. At that point, Cable as debtor-in-possession became the real party in interest to prosecute the case on behalf of the estate. The oversight in changing the names of the bankruptcy trustees cannot frustrate the purposes of the Code and the interests of the creditors.

Defendant Ivy Tech's position is confusing and contradictory. While Ivy Tech correctly asserts that non-parties may not appeal judgments, *see Marino v. Ortiz*, 484 U.S. 301, 304, 108 S.Ct. 586, 98 L.Ed.2d 629 (1988); *In re VMS Ltd. Partnership Sec. Litig.*, 976 F.2d 362, 366 (7th Cir. 1992), it claims that "only [the Chapter 7 trustee] had the standing to pursue an appeal" because the "parties in the District Court at the time judgment was entered were Ivy Tech and Wayne J. Lennington, Chapter 7 Trustee in Bankruptcy." Ivy Tech argues contradictorily that Brothers as Chapter 13 trustee—and not the debtor—could have brought the appeal, apparently overlooking its own position that named parties alone can bring appeals. In the defendant's view, the *only* party capable of bringing an appeal was the one who most clearly had no standing even to appear in court on behalf of the estate: the Chapter 7 trustee.

Defendant's citations to the statute defining the property of the estate, 11 U.S.C.

§ 541, and to several cases brought under Chapter 7, *e.g.*, *Davis*, 158 B.R. 1000; *In re Goins*, 181 B.R. 45 (Bankr.S.D.Ohio 1994); *Harris v. St. Louis Univ.*, 114 B.R. 647 (E.D.Mo.1990), are irrelevant to the issue of whether a Chapter 13 trustee or debtor has standing to bring an appeal. Chapter 7 requires that the debtor turnover possession of the estate's assets to the trustee and does not recognize the debtor-in-possession as an entity. Therefore, whether a Chapter 7 debtor can bring a case in his own name sheds no light on whether a Chapter 13 debtor may.

Here, the real parties in interest were the debtor-in-possession and Chapter 13 trustee, so there can be no claim that the appeal was brought by other than a real party as required by Rule 17 of the Federal Rules of Civil Procedure. Furthermore, the case was prosecuted before and after the conversion for the benefit of the estate and by its representative. This is not a case of a non-party arriving late in the game. In contrast, *Moy v. Cowen*, 958 F.2d 168, 170 (7th Cir.1992), involved an appeal brought by a person who did not have standing at the trial court and therefore could not bring an appeal. As we determined above, Cable had standing at the trial court on behalf of the estate and thus could bring an appeal. *Cf. Moy*, 958 F.2d at 170 ("[Intervenor] has not established standing, and Article III of the Constitution does not permit us to adjudicate her appeal."). Similarly, the other cases cited by defendant held that non-parties could not appeal, but the debtor-in-possession and trustee under Chapter 13 are the real parties in interest despite the oversight in substituting the new trustee for Lennington when the bankruptcy case was converted.

### C. *Summary Judgment*

Reaching the merits of Cable's appeal, the district court granted Ivy Tech's motion for summary judgment on three independent grounds. First, the court held that Cable failed to include the retaliation allegation in his complaint to the EEOC, which effectively waived that claim. Second, Cable failed to produce evidence to satisfy the *prima facie* case of retaliation. Third, Cable failed to make a *prima facie* case of discrimination and failed to rebut Ivy Tech's legitimate explanation for his dismissal.

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We review the district court's order of summary judgment *de novo*; *see Haefling v. United Parcel Serv.*, 169 F.3d 494, 497 (7th Cir.1999), and take as true all facts in favor of the non-moving party and all reasonable inferences that can be drawn from them. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). While we apply special scrutiny to summary judgment in employment discrimination cases, we emphasize here that a genuine issue of fact "exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole." *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir.1999) (citation omitted).

#### 1. *The EEOC Charge*

[6–8] The district court dismissed Cable's retaliation claim because it fell outside the scope of his July 1994 EEOC complaint. A plaintiff may not bring claims in a lawsuit that were not included in the EEOC charge. *See Alexander v. Gardner-Denver C*[illegible] 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.[illegible]2d 147 (1974); *Cheek v. Peabody C*[illegible] *Co.*, 97 F.3d 200, 202 (7th Cir.1996) [illegible]is requirement serves to enhance t[illegible] administrative enforcement process [illegible] ensuring that the EEOC can conduct a full investigation while also providing the employer with advance notice of the claim and an opportunity to resolve the dispute. *See Harper v. Godfrey Co.*, 45 F.3d 143, 148 (7th Cir.1995). As such, it is a procedural requirement that we take seriously. A claim falls within the scope of the EEOC complaint if it is "like or reasonably related to" the charges in the EEOC complaint and if it "reasonably could have developed from the EEOC's investigation of the charges before it." *Cheek*, 97 F.3d at 202.



[9] Cable alleged in his EEOC complaint, filed on July 12, 1994, that he had been fired because the standards used to make the termination decision had a discriminatory effect. He checked the "other" box and wrote in "disability" as the reason for his termination but failed to check the "retaliation" box. More significant than this technical defect, the body of his complaint fails even to hint at retaliation, much less develop a factual basis for such a claim. The main body of the complaint contained only three sentences:

> I. I was hired by the Respondent on September 5, 1989. I was terminated on May 7, 1994.
>
> II. Management stated because of budget cuts.
>
> III. I feel I have been discriminated against on the basis of my disability, in that, they utilize standards, criteria and methods of administration that had the effect of discrimination.

To be reasonably like or related, the charge in the lawsuit must describe the *same conduct* and implicate the *same individuals* as the charge in the EEOC complaint. *See id.* at 202–03. Viewed in the most favorable light for Cable, this statement of discrimination suggests that the method used to determine who would be laid off had the effect of discrimination, but does not implicate in any of the behavior alleged to have occurred over the previous five years that forms the basis for the retaliation claim. Based on this statement alone, the EEOC could not have known to look beyond the criteria used for the reduction in force as a source of discrimination.

[10] To supplement his bare EEOC charge form, Cable produced an affidavit dated June 16, 1994, which describes in great detail the discrimination and retaliation that he allegedly suffered at Ivy Tech. An investigator with the City of Muncie Human Rights Commission helped Cable prepare the affidavit and notarized his sworn signature. The city investigator forwarded the affidavit to the EEOC Indianapolis District Office on June 20, 1994, and a date stamp indicates that the EEOC received the affidavit on June 21.

The district court refused to consider the affidavit as part of the complaint because "there was no showing that the document was filed with the EEOC charge. Therefore, Mr. Cable has not shown that this document was part of his EEOC charge." Cable does not develop this issue on appeal as skillfully as we might expect an attorney to do, but bearing in mind that we liberally construe the pleadings of *pro se* litigants, *see Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Woods v. Thieret*, 903 F.2d 1080, 1082(7th Cir.1990), Cable adequately raises the issue for appellate review. Consequently, we review *de novo* Judge Tinder's conclusion that Cable made "no showing" that the affidavit was filed with the EEOC.

[11] The EEOC charge-filing requirement is not intended to erect "elaborate pleading requirements" or "let the form of the purported charge prevail over its substance." *Downes v. Volkswagen of America, Inc.*, 41 F.3d 1132, 1138 (7th Cir.1994). Courts have allowed varied types of filings to satisfy the requirement, including sworn affidavits attached to the charge itself. *See, e.g., Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 502 (7th Cir. 1994); *see also Taylor v. Virginia Union Univ.*, 193 F.3d 219, 239 (4th Cir.1999). The date stamp and cover letter (also date stamped when received by the EEOC Indianapolis office) from the Muncie Human

Rights Commission demonstrate conclusively that the EEOC received the affidavit contemporaneously with Cable's filing of the agency discrimination charge form. There can be no question that the affidavit sufficiently pleads retaliation as a cause of his dismissal: "I fought for handicap rights. I tried to help bring Ivy Tech up to code. I really believe that and because of my disability I was let go." Because the affidavit along with the EEOC form sufficiently provide notice of the charge, the dismissal of Cable's retaliation charge for failure to exhaust the administrative remedy was error, but ultimately a harmless one as the following section makes clear.

*2. Retaliation*

[12, 13] Cable failed to present any competent evidence that he was fired in retaliation for demanding better treatment of and facilities for handicapped people. To prevail on a retaliation claim, a plaintiff must produce evidence that (1) he was engaged in protected expression; (2) he suffered an adverse employment action; and (3) a causal link existed between the two. *See Talanda v. KFC Nat'l Mgmt. Co.*, 140 F.3d 1090, 1095 (7th Cir.1998). Cable's retaliation complaint fails on the third prong of this test. Other than his own affidavit, which is insufficient as a matter of law to withstand summary judgment, *see Shank v. William R. Hague, Inc.*, 192 F.3d 675, 682 (7th Cir.1999), Cable produced no evidence of protected expression related to his dismissal. The only evidence, other than his own testimony, was a letter discussing handicapped accessibility problems that Cable sent in 1989. In *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir.1998), we held that five months was too long between the filing of an EEOC charge and an employee's supposedly retaliatory dismissal. It invites disbelief to suggest Ivy Tech waited five years to retaliate against him for this rather tepid foray into civil disobedience.

Cable contends that other untoward comments by various administrators about handicapped people satisfy the causal link. It cannot be determined from the record when any of these comments were made in relation to the decision not to renew Cable's contract. Even if actually said, these comments demonstrate callousness about handicapped people and the issues that affect them but are insufficient to provide evidence of a causal link behind Cable's protected expression and his dismissal. Uncontradicted evidence shows that the decision to lay off Cable was motivated by the decline in enrollment, the need to reduce the staff and the objective criteria used to select the faculty member to lay off. The district court correctly decided the retaliation claim.

*3. Discrimination*

[14–16] Under the ADA, a *prima facie* case of employment discrimination requires a showing "'adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion.'" *Leffel v. Valley Fin. Servs.*, 113 F.3d 787, 792 (7th Cir.1997) (citation omitted). In the context of a reduction in force, where employees are laid off and not replaced, a plaintiff must establish that: (1) he is a member of a protected class; (2) he was adequately performing his job; (3) he was laid off in a reduction in force; and (4) employees outside the protected class were treated more favorably. *See DeLuca v. Winer Indus. Inc.*, 53 F.3d 793, 797 (7th Cir.1995); *Oxman v. WLS–TV*, 846 F.2d 448, 455 (7th Cir.1988). An employer may rebut the *prima facie* case by offering a legitimate, non-discriminatory reason for its decision, which the plaintiff must then show to be pretextual by a preponderance of the evidence. *See Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1039 (7th Cir. 1993).

[17, 18] No evidence suggests Ivy Tech deviated in any way from the even-handed application of the objective criteria. The record shows no proof nor even an allegation that the school made an exception from the objective criteria to retain a non-handicapped person. Cable cannot show that similarly situated employees outside the protected class were treated more favorably. Furthermore, Ivy Tech has carried its burden in coming forward with a legitimate non-discriminatory reason for Cable's dismissal, which Cable has utterly failed to prove was pretextual. Evidence of the subsequent job posting in May 1994 cannot support a finding of pretext because all uncontradicted evidence shows that posting related to Griffin's position, not Cable's. Therefore, it does not provide evidence of pretext sufficient to show that the proffered reason for Cable's dismissal was not the real reason. *See James v. Sheahan*, 137 F.3d 1003, 1007 (7th Cir. 1998). He has, in short, failed to raise a question of fact sufficient to merit a trial.

It bears noting that the district court analyzed Cable's discrimination claim under the *prima facie* standard announced in *Leffel*, which requires a plaintiff to show that the adverse job action was taken because of the plaintiff's disability. *Leffel*, 113 F.3d at 793. While technically the court should have applied the standard for RIF cases since Cable's termination was part of a larger, system wide restructuring, Cable's case fails under the *Leffel* framework as well. Cable did not establish causality because he brought no evidence of discrimination related to the decision to fire him. The comments allegedly made by Henry did not relate at all to Cable's termination, as no evidence suggests when, where or in what context those comments were made. Cable asserts that his advocacy for the rights of handicapped people led to his dismissal, but the only evidence presented was that Cable was an advocate and that he was fired. It is only Cable's conclusion that the one action caused the other. Simply put, in the three years this case progressed toward summary judgment, Cable managed to find only the thinnest evidence that anyone held animosity toward handicapped people in general, or Cable specifically. None of that meager evidence related at all—in time or substance—to Cable's termination.

Even if all Cable's proffered evidence is believed, he has failed to raise a genuine issue of material fact upon which a reasonable jury could find in his favor. The district court properly found in favor of Ivy Tech on the discrimination claim.

III. Conclusion

Because a Chapter 13 debtor-in-possession has standing to sue on behalf of the estate, we hold that Cable can appeal the denial of summary judgment in his own name. In accordance with this decision, we direct that Bruce K. Cable as Debtor–In–Possession be substituted as the plaintiff-appellant. The district court's grant of summary judgment on behalf of Ivy Tech is Affirmed.





**BANKRUPTCY ESTATE OF LAKE GENEVA SUGAR SHACK, INCORPORATED, a Wisconsin corporation, and Bankruptcy Estate of Dana Montana, Plaintiffs–Appellants,**

v.

**GENERAL STAR INDEMNITY COMPANY, Defendant–Appellee.**

No. 99–1321.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 4, 1999

Decided Jan. 11, 2000

Insured and its principal sued fire insurer for bad faith denial of coverage. In-

bation based upon the 1973 conviction is sufficient to establish that such a conviction existed. Defendant then had the burden of proving by a preponderance of the evidence that the conviction was constitutionally invalid, *see United States v. Day*, 949 F.2d 973, 982 (8th Cir.1991); *Ruo*, 943 F.2d at 1276; he failed to carry that burden.

Although the penalty in this case may seem harsh, the federal courts must enforce the mandates enacted by Congress.

AFFIRMED.



In re J. Richard CALDER, Debtor.

J. Richard CALDER, Appellant,

v.

Reta JOB; Douglas Payne; John J. Borsos; Peter H. Waldo; Fabian & Clendenin; J. Dennis Frederick, Judge; Roger G. Segal, in his individual capacity and his official capacity as the original Chapter 7 trustee; Julie A. Bryan, in her individual capacity and her official capacity as attorney for the original Chapter 7 trustee; Stephen W. Rupp, in his individual capacity and his official capacity as the current Chapter 7 trustee; and Mona Lyman, in her individual capacity and her official capacity as attorney for the current Chapter 7 trustee, Appellees.

Nos. 91-4145, 91-4168.

United States Court of Appeals, Tenth Circuit.

Aug. 25, 1992.

Motions and adversary proceedings were resolved against Chapter 7 debtor, in the United States District Court for the District of Utah, Clarence A. Brimmer, Jr., J., and debtor appealed. The Court of Appeals, Logan, Circuit Judge, held that: (1) upon reconversion of case from Chapter 13 to Chapter 7, all property in Chapter 13 estate, including after-acquired property, became part of postconversion Chapter 7 estate; (2) conversion from Chapter 7 to Chapter 13 became effective only upon entry of conversion order by court; (3) sufficient showing of bad faith and/or prejudice to creditors supported denial of debtor's proposed amendment to his schedule to claim additional exemptions; and (4) district court did not abuse its discretion in imposing sanctions enjoining debtor from litigating issues related to those decided in its order.

Affirmed.

1. Bankruptcy ⟹3773

Debtor's notice of appeal, which was filed before district court ruled on debtor's timely motion for new trial, was premature and of no effect. F.R.A.P.Rule 4(a)(4), 28 U.S.C.A.

2. Bankruptcy ⟹3717

Upon reconversion of case from Chapter 13 to Chapter 7, all property of Chapter 13 estate, including after-acquired property that was included in Chapter 13 estate pursuant to Bankruptcy Code, became part of postconversion Chapter 7 estate. Bankr. Code, 11 U.S.C.A. §§ 348, 541(a)(7), 1306.

3. Bankruptcy ⟹2332

Conversion from Chapter 7 to Chapter 13 becomes effective only upon entry of conversion order by court. Bankr.Code, 11 U.S.C.A. § 706(a); Fed.Rules Bankr.Proc. Rules 1017(d), 9013, 11 U.S.C.A.

4. Bankruptcy ⟹2331, 2332

Bankruptcy Rules cannot override absolute statutory right to convert to another chapter of Bankruptcy Code. Bankr.Code, 11 U.S.C.A. § 706(a).

5. Bankruptcy ⟹2332, 2404

Creditor was not barred from executing on judgment, even though debtor had filed motion to convert from Chapter 7 to Chapter 13, where conversion to Chapter 13 had not yet become effective, Chapter 7 automatic stay had been lifted because of denial of discharge, and debtor had not requested continuation of Chapter 7 stay. Bankr.Code, 11 U.S.C.A. §§ 362(c)(2)(C), 706(a).

6. Bankruptcy ⟹2325

Amendment to schedules may be denied if there is bad faith by debtor or prejudice to creditors. Fed.Rules Bankr.Proc.Rule 1009(a), 11 U.S.C.A.

7. Bankruptcy ⟹2325

Sufficient showing of bad faith and/or prejudice to creditors supported denial of debtor's proposed amendment to his schedule in order to claim additional exemptions, where debtor was experienced bankruptcy attorney, debtor attempted to amend exemptions more than four years after filing original Chapter 7 petition and more than one year after order converting case to Chapter 13, and trustee had been engaged in extensive litigation regarding funds in which debtor sought to claim exemption. Fed.Rules Bankr.Proc.Rule 1009(a), 11 U.S.C.A.

8. Constitutional Law ⟹306(4)

District court did not deny bankruptcy debtor due process in management of hearing, even though debtor was not permitted to present witnesses and was limited to five minutes of argument per issue; debtor was permitted to file briefs, hearing was necessary only to clarify issues, there was no indication that debtor ever asked to present witnesses, and debtor did not explain what information not already in record would have been provided by his witnesses. U.S.C.A. Const.Amends. 5, 14.

9. Injunction ⟹26(1)

District court may enjoin party to prevent misuse of litigation.

10. Bankruptcy ⟹2187

District court properly imposed sanctions enjoining Chapter 7 debtor from litigating issues relating to those decided in its order; district court stated that debtor had attempted to frustrate creditors and the trustees' efforts to close estate.

---

J. Richard Calder, pro se.

Douglas B. Cannon of Fabian & Clendenin, Salt Lake City, Utah, for appellees Fabian & Clendenin and Douglas J. Payne.

R. Paul Van Dam, Utah Atty. Gen., and Brent A. Burnett, Asst. Atty. Gen., Salt Lake City, Utah, for appellee Judge J. Dennis Frederick.

Mona Lyman of McKay Burton & Thurman, Salt Lake City, Utah, for appellees Trustee Stephen W. Rupp and Mona Lyman.

John T. Morgan of Cohne, Rappaport & Segal, Salt Lake City, Utah, for appellees Trustee Roger G. Segal and Julie A. Bryan.

Before LOGAN and EBEL, Circuit Judges, and SAFFELS,* Senior District Judge.

LOGAN, Circuit Judge.

[1] J. Richard Calder, an experienced bankruptcy attorney who has been disbarred, *see In re Calder*, 795 P.2d 656 (Utah 1990), appeals from an order of the district court resolving various motions and adversarial proceedings relating to his personal bankruptcy action.[1]

Calder makes essentially six arguments on appeal, as follows: (1) assets of the bankruptcy estate should be determined as of the date of Calder's original Chapter 7 filing, not the date of conversion to Chapter 13; (2) the effective date of the conversion to Chapter 13 should be the date Calder filed his motion to convert, not the date of the court's conversion order; (3) Calder is entitled to amend his claimed exemptions on his schedule B-4; (4) adversary proceedings against Frederick, Job, Fabian & Clendenin, Waldo, Borsos, Segal, Bryan,

* The Honorable Dale E. Saffels, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

1. Calder filed two notices of appeal from this order. No. 91-4145 was filed before the district court ruled on Calder's timely motion for a new trial and therefore is premature and of no effect. *See* Fed.R.App.P. 4(a)(4). Appeal No. 91-4145 is dismissed. Appellees' motions for an extension of time in which to file briefs in No. 91-4145 are denied as moot.



Appendix E.

Lyman, and Rupp should not be dismissed; (5) Calder was not afforded due process in a hearing held May 3, 1991; and (6) sanctions against Calder were inappropriate.[2]

I

Numerous adversarial actions were pending before the district court at the time Calder moved to withdraw reference of his motion to disqualify the bankruptcy court judges. The district court withdrew reference of the entire action, consolidated the pending proceedings, and resolved all issues against Calder. We will discuss the facts underlying this action only as needed to address Calder's arguments on appeal.

Calder filed a petition for relief under Chapter 7 on August 19, 1986. Because the bankruptcy court found that he made a false oath on certain documents in the case, Calder was denied a discharge pursuant to 11 U.S.C. § 727(a)(4)(A) in September 1988. *Job v. Calder (In re Calder)*, 93 B.R. 734, 735, 739 (Bankr.D.Utah 1988), *aff'd*, 907 F.2d 953 (10th Cir.1990). After the denial of discharge, on October 11, 1988, Calder filed a motion to convert to Chapter 13. About two weeks later, in an effort to collect on a state court judgment obtained earlier against Calder, Reta Job served a writ of garnishment on a garnishee holding funds allegedly belonging to Calder. The bankruptcy court denied Calder's motion to convert on November 18, 1988. *In re Calder*, 93 B.R. 739 (Bankr.D.Utah 1988), *rev'd, Calder v. Segal (In re Calder)*, Civ. No. C-89-59W (D.Utah Nov. 14, 1989). In September 1989, Job executed on the writ of garnishment and obtained approximately $15,000. Later, on November 14, 1989, the district court reversed the bankruptcy court and held that Calder had a right to convert to Chapter 13. Shortly thereafter, apparently on December 12, 1989, the bankruptcy court entered an order[3] converting the case to Chapter 13. A few months later, in February 1990, Calder reconverted the case to Chapter 7.

II

[2] The first issue requires that we decide a question on which the courts are split, involving the interplay of several sections of the Bankruptcy Code. As he has done throughout these proceedings, Calder continues to assert that certain funds—which he alleges total approximately $60,000—payable to him after the date he filed the original Chapter 7 petition are not property of the bankruptcy estate but instead are his own postpetition earnings. In his opening brief, he argues that the property of the current Chapter 7 bankruptcy estate should be determined as of August 19, 1986, the date of his original Chapter 7 petition. In his reply brief, however, Calder concedes that pursuant to 11 U.S.C. § 1306 the disputed $60,000 was included in his Chapter 13 bankruptcy estate. *See* Reply Brief to Brief of Rupp, Lyman, Segal, and Bryan at 16–17. This concession is consistent with our reading of the statute, which provides that the Chapter 13 estate includes property acquired or earnings from services performed "after the commencement of the case but before the case is closed, dismissed, or converted." 11 U.S.C. § 1306(a). Thus, because the disputed funds were part of the Chapter 13 estate,[4] the only remaining issue as to them is whether they became part of the current Chapter 7 estate when Calder reconverted from Chapter 13 to Chapter 7.

The courts of appeals addressing this issue have held that upon conversion from Chapter 13 to Chapter 7 all property of the Chapter 13 estate—including after-acquired property that is part of the Chapter 13 estate pursuant to § 1306(a)—is included in the Chapter 7 estate. *See In re Lybrook*, 951 F.2d 136, 138 (7th Cir.1991) (holding that "the Chapter 13 estate passes unaltered into Chapter 7 upon conversion"); *Armstrong v. Lindberg (In re Lindberg)*, 735 F.2d 1087, 1090 (8th Cir.) (stating that "[t]he bankruptcy courts are in general agreement that in a case converted from chapter 13 to chapter 7, the property of the estate consists of all property in which the debtor has an interest on the date of conversion"), *cert. denied*, 469 U.S. 1073, 105 S.Ct. 566, 83 L.Ed.2d 507 (1984); *Winchester v. Watson (In re Winchester)*, 46 B.R. 492, 495 (Bankr. 9th Cir.1984) (stating that "logic dictates that the date of conversion [from Chapter 13 to Chapter 7] is the controlling date on which to determine ... property of the Chapter 7 estate"). *But cf. Bobroff v. Continental Bank (In re Bobroff)*, 766 F.2d 797, 803 (3d Cir.1985) (suggesting in dicta that after-acquired property should not be part of the postconversion Chapter 7 estate).

The bankruptcy courts, however, are split on this issue. Some agree with *Lybrook*, *Lindberg*, and *Winchester*. *See, e.g.*, *In re Marcus*, 128 B.R. 294, 296 (Bankr.D.Colo.1991), *aff'd, In re Marcus*, 140 B.R. 803 (Bankr.D.Colo.1992); *In re Schmeltz*, 114 B.R. 607, 610 (Bankr.N.D.Ind.1990); *In re Tworek*, 107 B.R. 666, 667 (Bankr.D.Neb.1989); *In re Wanderlich*, 36 B.R. 710, 715 (Bankr.W.D.N.Y. 1984). Others have reached the opposite conclusion. *See, e.g.*, *In re Horton*, 130 B.R. 326, 328 (Bankr.D.Colo.1991); *In re Gorski*, 85 B.R. 155, 156–57 (Bankr.M.D.Fla.1988); *Blood v. Winsburg (In re Marshall)*, 79 B.R. 147, 150 (Bankr.N.D.N.Y.1987); *In re Lepper*, 58 B.R. 896, 898 (Bankr.D.Md.1986); *see also Lepper*, 58 B.R. at 899 & n. 3 (finding an even split in authority and stating that the courts are no longer, as stated in *Lindberg*, in "general agreement" on the issue); 5 *Collier on Bankruptcy* ¶ 1307.01[8] (Lawrence P. King ed., 15th ed. 1992) (stating that "most courts" have decided that property acquired after the Chapter 13 filing and before conversion to Chapter 7 does *not* become part of the Chapter 7 estate).

This issue requires an analysis of the interplay between 11 U.S.C. §§ 541, 1306, and 348. As stated by the bankruptcy court in *Lybrook*:

> Section 541 provides that the bankruptcy estate is created upon the commencement of a case. It then identifies what becomes property of the estate and what is excluded from it. Section 1306 expands the Chapter 13 estate beyond its composition as described by § 541. It includes not only the property that would otherwise become property of the estate under § 541 but also essentially all property the debtor acquires after the commencement of the case, until it is closed, dismissed or converted. In describing the effects of conversion, § 348 does not directly address the composition of the bankruptcy estate. It states only that, with certain exceptions, conversion "does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief." 11 U.S.C. § 348(a).

2. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cases are therefore ordered submitted without oral argument.

3. The record apparently does not include this order. However, the date of December 12, 1989, is consistent with the briefs of the parties. *See* Brief of Respondents Fabian & Clendenin and Douglas J. Payne at 9; Brief of Appellant at 7. The statement by the district court that the conversion became effective on November 14, 1989, *see* I R. doc. 67 at 6, appears mistaken. The district court apparently confused the date of the district court's reversal of the bankruptcy court's denial of conversion, which was dated November 14, 1989, with the bankruptcy court's subsequent conversion order.

4. The trustees and their counsel argue that *Calder v. Segal (In re Calder)*, 94 B.R. 200 (Bankr.D.Utah 1988), *aff'd, Calder v. Rupp (In re Calder)*, 912 F.2d 454 (10th Cir.1990), decided that the disputed funds were part of the bankruptcy estate, and thus the doctrines of res judicata and collateral estoppel bar Calder from relitigating this issue. The bankruptcy court opinion is somewhat ambiguous, but we read it as deciding the legal issue that whatever funds were earned from prepetition services are part of the bankruptcy estate. We note that the bankruptcy court opinion expressly stated that an accounting was required "to distinguish between services which were performed pre-petition and those performed post-petition." 94 B.R. at 203. The trustee appears to have agreed that such an accounting was necessary, *see, e.g.*, II R. doc. 38, ex. Q at 8–9 (transcript of October 11, 1989 hearing before district court), and the record suggests that some attempt was made to separate the funds in question into prepetition and postpetition amounts. In any event, Calder's concession that the disputed funds were part of the Chapter 13 estate makes an accounting unnecessary and we need not decide the extent to which the prior court rulings preclude relitigating this issue.

*Robb v. Lybrook (In re Lybrook)*, 107 B.R. 611, 612 (Bankr.N.D.Ind.1989), *aff'd, Lybrook v. Robb*, 135 B.R. 321 (N.D.Ind.1990), *aff'd, In re Lybrook*, 951 F.2d 136 (7th Cir.1991).

We agree with the *Lybrook* court's analysis that "[a] proper reading of § 348 indicates that it is not a source of disruption but, instead, preserves the continuity of the bankruptcy proceedings." 107 B.R. at 613. Furthermore, we agree that

> [w]hen § 348 is viewed as a source of continuity, the plain language of § 541 easily becomes susceptible to the conclusion that the bankruptcy estate, following conversion from Chapter 13 to Chapter 7, is the Chapter 13 bankruptcy estate. The estate was created upon the commencement of the case. 11 U.S.C. § 541(a). At the moment of creation, it essentially consisted of all of the property in which debtor had an interest. 11 U.S.C. § 541(a)(1). The estate does not, however, remain static. It also includes "any interest in property that the *estate* acquires after the commencement of the case." 11 U.S.C. § 541(a)(7) (emphasis added).
>
> Through § 1306, the estate acquires an interest in the property debtor acquires between the date of the petition and the date of conversion. By its terms, § 541(a)(7) is broad enough to include this post-petition property in the Chapter 7 bankruptcy estate, following conversion from Chapter 13. It is able to do so through a simple reading of its plain language, without resorting to strained or contorted interpretations of the consequences of conversion. Instead, it is merely a recognition that § 348 "does not purport to alter or modify the provisions or applicability of sections 541 and 1306." *In re Wanderlich, supra*, 36 B.R. at 714.

*Id.* We also agree with the conclusion of the bankruptcy judge, *see id.* at 614, and Judge Posner, who wrote on appeal for the Seventh Circuit, that "a rule of once in, always in is necessary to discourage strategic, opportunistic behavior that hurts creditors without advancing any legitimate interest of debtors." 951 F.2d at 137.

In reaching the opposite conclusion, some courts have relied on the fact that § 103(h) makes § 1306 applicable only in Chapter 13. *See, e.g., Lepper*, 58 B.R. at 898. These courts reason that upon conversion, with § 1306 inapplicable, property of the estate is defined solely by § 541. *See, e.g., id.* The flaw in this reasoning is that it ignores the effect of § 541(a)(7). During the pendency of the case in Chapter 13—when § 1306 applies—§ 1306 includes in "[p]roperty of the estate" after-acquired property and postpetition earnings from services performed by the debtor. 11 U.S.C. § 1306(a). Upon conversion to Chapter 7, § 541(a)(7) includes in the Chapter 7 estate "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7). Reading these two provisions together, we hold that all property in plaintiff's Chapter 13 estate—including any funds included pursuant to § 1306—are part of the postconversion Chapter 7 estate.[5]

## III

[3] Calder also argues that the date he filed his motion to convert—October 11, 1988—should be the effective date of his conversion, not the date of the bankruptcy court's order granting the motion, which was December 12, 1989. After Calder had been denied a discharge and after he filed the motion to convert to Chapter 13, but before the court order granting the conversion, Job executed on a valid state court judgment. Calder argues that he had an absolute right to convert pursuant to § 706(a)[6] and that the Chapter 13 automatic stay was imposed on the date of his motion. Therefore, he asserts, Job could not execute on her judgment.

Bankruptcy Rules 1017(d) and 9013 are relevant to when a conversion from Chapter 7 to Chapter 13 becomes effective. Rule 1017(d) provides that conversion pursuant to § 706(a) "shall be on motion filed and served as required by Rule 9013." Rule 9013 provides inter alia that "*[a] request for an order* ... shall be by written motion." (emphasis added). These provisions indicate that a *motion* to convert pursuant to § 706(a) is not effective in and of itself, but rather is a request for a court *order* of conversion. This conclusion is bolstered by Rule 1017(d)'s different treatment of conversions from Chapters 12 or 13, which "shall be converted *without court order* on the filing by the debtor of a notice of conversion." Bankr. Rule 1017(d) (emphasis added). "The rule makers certainly intended that conversion of a chapter 7 case be accomplished by the entry of an order, not the mere service of notice of intent to request such an order." *In re Dipalma*, 94 B.R. 546, 549 (Bankr.N.D.Ill. 1988).

[4] We agree with Calder's statement that the Bankruptcy Rules cannot override the absolute statutory right to convert pursuant to § 706(a). However, the Rules do not purport to overrule the right to convert; rather, they simply lay out the procedures to be followed to implement a conversion. We perceive no conflict between § 706(a) and Rules 1017(d) and 9013.

[5] For the foregoing reasons, we hold that a conversion from Chapter 7 to Chapter 13 pursuant to § 706(a) becomes effective only upon the entry of a conversion order by the court. Thus, the effective date of plaintiff's conversion from Chapter 7 to Chapter 13 was December 12, 1989. Because the conversion to Chapter 13 had not yet become effective at the time Job executed on her judgment, there was no Chapter 13 stay in effect. At the time of the execution the Chapter 7 automatic stay had been lifted because of the denial of discharge, *see* 11 U.S.C. § 362(c)(2)(C); *Watson v. City Nat'l Bank (In re Watson)*, 78 B.R. 267, 270 (Bankr.C.D.Cal. 1987), and Calder had not requested a continuation of the Chapter 7 stay. Absent a stay, there was no bar to Job's execution.

## IV

[6] Calder argues that he is entitled to claim additional exemptions listed in his proposed amendment to his B-4 schedule. Generally, schedules in a bankruptcy case "may be amended by the debtor as a matter of course at any time before the case is closed." Bankr. Rule 1009(a); *see also, e.g., Redmond v. Tuttle*, 698 F.2d 414, 416 (10th Cir.1983) (addressing similar predecessor rule);[7] *In re Blaise*, 116 B.R. 398, 400 (Bankr.D.Vt.1990). An amendment may be denied, however, if there is bad faith by the debtor or prejudice to creditors. *See Stinson v. Williamson (In re Williamson)*, 804 F.2d 1355, 1358 (5th Cir. 1986); *Doan v. Hudgins (In re Doan)*, 672 F.2d 831, 833 (11th Cir.1982).

Calder apparently attempted to amend his exemptions in February 1991, more than four years after filing his original Chapter 7 petition and more than one year after the order converting the case to Chapter 13. The district court denied the amendment as untimely. The court did not expressly state that it found bad faith or prejudice to creditors. We construe the

5. Our decision regarding the composition of a Chapter 7 estate upon conversion from Chapter 13 is not inconsistent with this court's recent decision in *Patrick A. Casey, P.A. v. Hochman*, 963 F.2d 1347 (10th Cir.1992). In *Hochman*, this court held that when a *Chapter 11* case is converted to Chapter 7, the date of filing the original Chapter 11 petition determines what property constitutes the Chapter 7 estate. *Id.* at 1350. Thus, property acquired *after* the filing of a Chapter 11 petition—which is *not* part of the Chapter 11 estate—continues *not* to be part of the bankruptcy estate upon conversion to Chapter 7. We agree with the Fifth Circuit that a conversion from Chapter 13 to Chapter 7 is distinguishable from a conversion from Chapter 11 to Chapter 7. *See Stinson v. Williamson (In re Williamson)*, 804 F.2d 1355, 1359–62 (5th Cir.1986). The most important distinguishing factor is that in Chapter 11 there is no provision akin to § 1306(a). *See Williamson*, 804 F.2d at 1360.

6. The district court decided that Calder had the right to convert his original Chapter 7 case to Chapter 13 when it reversed the bankruptcy court's order denying conversion. Thus, at this point it is undisputed that Calder had the right to convert.

7. The district court quoted language from *Redmond* that an amendment to claim an exemption in *newly-found property* should be allowed as a matter of course. That was the precise issue in *Redmond*. But there is no suggestion in *Redmond* that amendments for other reasons are governed by a different standard.

Case 1:00-cv-00180 Document 124-12 Filed in TXSD on 01/09/2006 Page 14 of 17



district court's order, however, as a finding of bad faith and/or prejudice to creditors.

At the May 3, 1991 hearing the trustee expressly argued that the amendment was made in bad faith. The trustee also argued at the hearing and on appeal that the trustees have been engaged in extensive litigation regarding the funds in which Calder now seeks to claim an exemption. We construe the latter argument as an assertion of prejudice to creditors. *See Williamson,* 804 F.2d at 1358 (stating that prejudice involves "harm to the creditor's litigating posture because of some detrimental reliance on the debtor's initial position").

[7] Under the circumstances of this case, particularly the fact that the debtor was an experienced bankruptcy attorney, there is a sufficient showing of bad faith and/or prejudice to creditors to support the denial of the amendment. Although Calder asserts that he could not have claimed any exemption in the disputed funds at the same time he was taking a position that none of the funds were property of the estate, he must bear some responsibility for not making his alternative position clearer. If Calder had timely amended his schedule of exemptions this would have affected the ongoing litigation.

Furthermore, on the date of the motion to convert to Chapter 13, or at least by the date of the conversion order, Calder knew or should have known that the disputed funds were then property of the Chapter 13 estate and would be subject to any available exemptions. Nevertheless, he delayed offering the amendment for over two years after the motion to convert and approximately thirteen months after the conversion order. During these time periods the trustee on behalf of creditors was litigating inter alia the question whether the funds were property of the estate and was relying on Calder's stated position that the funds were not property of the estate at all. Thus, we conclude that the district court did not abuse its discretion in denying the amendment.[8]

## V

Next, Calder argues that adversarial proceedings against appellees should not have been dismissed. Calder brought various charges relating to each of these parties' contact with the disputed funds. These allegations are without merit. We affirm the district court's judgment for substantially the reasons given by that court.

## VI

[8] Calder argues he was not afforded due process at a hearing held May 3, 1991, because he was not permitted to present witnesses and was limited in the time he was permitted to argue. The district court limited each party to five minutes per issue. The court has the inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936). Calder was permitted to file briefs in which he explained his position on the issues considered at the hearing. The hearing was necessary only to clarify issues, not to present the entire substance of each argument. We have reviewed the entire transcript of the May 3, 1991 hearing, and find no indication that Calder even asked to present witnesses. Even if he did make such a request, he has not explained what information not already in the record would have been provided by his witnesses. Thus, the court did not deny Calder due process in its management of the hearing.

## VII

[9, 10] The district court imposed sanctions enjoining Calder from litigating issues relating to those decided in its order. Calder argues that the district court erred in stating that he had attempted to frustrate creditors and the trustees' efforts to close the estate. His brief also includes a one-sentence heading, but no argument or authorities, asserting that the issue of sanctions should be determined on the basis of the record. The district court may enjoin a party to prevent the misuse of litigation. *Span-Eng Assocs. v. Weidner,* 771 F.2d 464, 470 (10th Cir.1985). Our review of the record supports the district court's action. We review an award of sanctions for abuse of discretion, *see Dodd Ins. Servs., Inc. v. Royal Ins. Co.,* 935 F.2d 1152, 1155 (10th Cir.1991), and we find none in the instant case.

AFFIRMED.



8. Because of our disposition we need not reach the separate question, *see Redmond,* 698 F.2d at 417, whether the claimed exemption should be allowed on the merits. Thus, we need not reach the trustee's arguments that: (1) neither Utah Rule of Civil Procedure 64D nor Utah Code Ann. § 70C-7-103 provide Calder an exemption; and (2) the disputed funds are not listed as wages on his schedule of assets.



Michael PHILLIPS, Plaintiff-Appellee,

v.

DURO-LAST ROOFING, INC., Defendant-Appellant.

No. 91-8061.

United States Court of Appeals, Tenth Circuit.

Aug. 25, 1992.

Roof installer brought strict liability claim against manufacturer of roofing materials for injuries sustained in fall which allegedly resulted when materials tore. Judgment was entered in favor of installer in accordance with jury verdict and certified questions concerning contributory fault were submitted to the Wyoming Supreme Court by the United States District Court for the District of Wyoming, Clarence A. Brimmer, Jr., J. Manufacturer appealed. The Court of Appeals, Brorby, Circuit Judge, held that contributory fault jury instruction, which misstated Wyoming law, necessitated new trial.

Vacated and remanded.

1. Federal Courts ⇐630

Alleged errors in jury instructions are reviewed for plain error and prejudice when no specific objection has been made before submission of charge to jury.

2. Federal Civil Procedure ⇐2336

Erroneous comparative fault instruction necessitated new trial of strict liability action by installer injured in fall against manufacturer of roofing materials; comparative fault issue was certified to Wyoming Supreme Court after trial.

---

James E. Fitzgerald, Sharon A. Fitzgerald, and A.G. McClintock, Fitzgerald Law Offices, Cheyenne, Wyo., and J. Dudley Butler, Laramie, Wyo., for plaintiff-appellee.

Gary R. Scott, Hirst & Applegate, Cheyenne, Wyo., for defendant-appellant.

Before MOORE, TACHA, and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

This case arose out of Plaintiff's fall from a roof while he was installing roofing materials. Defendant manufactured the roofing materials which Plaintiff claims tore, thereby causing him to fall from the roof and sustain various injuries. Plaintiff brought this diversity action claiming negligence, strict liability, and breach of various warranties. The case was submitted to a jury with special interrogatories, and the jury returned a special verdict in favor of Plaintiff and assessed damages at $187,000. After the jury returned its verdict, the district court heard arguments from counsel regarding the apportionment of the damages. As a result of those arguments, the district court certified certain questions of Wyoming law to the Wyoming Supreme

*King Resources Stockholders' Protective Comm. v. Baer (In re King Resources Co.)*, 651 F.2d 1326, 1332 (10th Cir.1980) (footnote omitted); *accord Ohio v. Madeline Marie Nursing Homes Nos. 1 and 2*, 694 F.2d at 464.

The Supreme Court has also recognized that the possibility of a full return to the status quo ante is not necessary to defeat a claim of mootness. Where the Internal Revenue Service obtained tape recordings pursuant to an unlawful summons, the Court held that the possibility of ordering their return or destruction was sufficient to defeat the IRS's claim that an appeal of the summons enforcement order was moot.

> Even though it is now too late to prevent, or to provide a fully satisfactory remedy for, the invasion of privacy that occurred when the IRS obtained the information on the tapes, a court does have power to effectuate a partial remedy by ordering the Government to destroy or return any and all copies it may have in its possession. The availability of this possible remedy is sufficient to prevent this case from being moot.

*Church of Scientology of California v. United States*, 506 U.S. 9, 13, 113 S.Ct. 447, 450, 121 L.Ed.2d 313 (1992)(footnote omitted). Thus, it is enough to find that our decision could have *some* effect if the case is reversed and remanded. Since it is conceivable that the Appellants could improve their positions if remand should occur, the case is not moot.

[12] After ordering what amounts to a Chapter 7 distribution, the bankruptcy court dismissed the case. The Appellants contend the dismissal was improper because the bankruptcy court failed to give notice to all creditors of the hearing on the dismissal of the case. Federal Rule of Bankruptcy Procedure 2002(a)(4) states that "all creditors" must receive notice of the hearing on the dismissal of a case under Chapter 11.[3] The parties agree that the motion to dismiss was not served on all creditors, but only on counsel for the Committee of Unsecured Creditors, the secured creditors, the United States Trustee, and certain other creditors who had requested service. The Appellants, however, were among the creditors who received notice of the motion to dismiss. Thus, they lack standing to raise the notice issue on behalf of other creditors. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)(holding that a prerequisite to standing is a concrete and particularized injury that has affected the plaintiff in a personal and individual way); *Mascolo v. Merrill Lynch Pierce Fenner & Smith, Inc. (In re Scientific Control Corp.)*, 80 F.R.D. 237, 240 (S.D.N.Y.1978)(holding that person who received class notice lacks standing to complain that others did not). Nevertheless, the dismissal order must be reversed so that the bankruptcy court can conduct further proceedings in light of the reversal of its distribution order.

## V. CONCLUSION

Because we believe the bankruptcy court erred in ordering a distribution of assets before any plan had been proposed or confirmed, we **REVERSE** and **REMAND** the case to the bankruptcy court for further proceedings not inconsistent with this opinion.



3. Rule 2002(a) provides: "Except as provided in subdivisions (h), (i), and (*l*) of this rule, the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees at least 20 days' notice by mail of ... (4) in a chapter 7 liquidation, a chapter 11 reorganization case, or a chapter 12 family farmer debt adjustment case, the hearing on the dismissal of the case. ..."



Appendix 7.

**In re Kristopher Ryan PISCZEK and Jeris Danette Pisczek, Debtors.**

No. 00-31486.

United States Bankruptcy Court, E.D. Michigan, Southern Division–Flint.

May 22, 2001.

After debtors had filed "notice of conversion" of their Chapter 7 case to case under Chapter 13, Chapter 7 trustee moved to reconvert to case under Chapter 7, and debtors objected based on Chapter 7 trustee's alleged lack of standing. The Bankruptcy Court, Arthur J. Spector, Chief Judge, held that: (1) debtors' "notice of conversion" of their Chapter 7 case to case under Chapter 13 did not serve to effect immediate conversion, but would be treated as motion to convert, to which Chapter 7 trustee had standing to object until bankruptcy court ruled thereon; and (2) hearing had to be held, in connection with debtors' motion to convert, to determine whether developments causing debtors to reclassify unsecured debt from noncontingent to contingent had occurred pre- or postpetition, and whether debt should be counted in assessing debtors' eligibility for Chapter 13 relief.

So ordered.

**1. Bankruptcy ⇐2232**

Debtors' "notice of conversion" of their Chapter 7 case to case under Chapter 13 did not serve to effect immediate conversion, but would be treated as motion to convert, to which Chapter 7 trustee had standing to object until bankruptcy court ruled thereon. Bankr.Code, 11 U.S.C.A. § 706(a); Fed.Rules Bankr.Proc.Rule 1017(f)(2), 11 U.S.C.A.

**2. Bankruptcy ⇐2233(1)**

Debtors' eligibility for Chapter 13 had to be measured, for purposes of ruling on debtors' motion to convert, as of date petition was filed. Bankr.Code, 11 U.S.C.A. § 109(e).

**3. Bankruptcy ⇐2233(3)**

To determine whether the amount of debtors' noncontingent, liquidated, unsecured debt was such as to make debtors ineligible for Chapter 13 relief, bankruptcy court had only to conduct realistic assessment of debtors' state of affairs as it reasonably appeared on petition date. Bankr. Code, 11 U.S.C.A. § 109(e).

**4. Bankruptcy ⇐2232**

Hearing had to be held, in connection with debtors' motion to convert their Chapter 7 case to one under Chapter 13, to determine whether developments causing debtors to reclassify unsecured debt from noncontingent to contingent had occurred pre- or postpetition, and whether debt should be counted in deciding whether amount of debtors' noncontingent, liquidated, unsecured debt on petition date was such as to make them ineligible for Chapter 13 relief. Bankr.Code, 11 U.S.C.A. §§ 109(e), 706(a).

---

Mark Van Epps, Owosso, MI, for Debtors.

Samuel D. Sweet, Troy, MI, Chapter 7 Trustee.

Carl L. Bekofske, Flint, MI, Chapter 13 Trustee.

***OPINION REGARDING CHAPTER 7 TRUSTEE'S MOTION TO CONVERT***

ARTHUR J. SPECTOR, Chief Judge.

***Introduction***

Kristopher and Jeris Pisczek filed for chapter 7 bankruptcy relief on August 1,

2000. On November 6, 2000, the Debtors filed a "Notice of Conversion of Chapter 7 Case to Chapter 13 Case." (Docket # 27)

On November 14, 2000, the Court entered a "Notice of Conversion of Case from Chapter 7 to Chapter 13; and Order to Debtor to File Supplemental Matrix and Plan." (Docket # 30). This order, which bears a stamped signature of the undersigned judge, states: "NOTICE is hereby given that, pursuant to 11 U.S.C. section 706(a) ..., the Chapter 7 case was converted to a case under Chapter 13 by the debtor's [sic] filing of a notice of conversion of November 6, 2000." Order. The order requires the Debtors to file "a plan" and submit "an interim payment order" within 15 days. The Debtors complied with this order. *See* Docket # 34 (Chapter 13 Plan) & Docket # 35 (Payment Order). A "Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines" was served on the matrix, *see* Docket # 33, as was a copy of the plan. *See* Docket # 39. On April 3, 2001, the plan was confirmed. *See* Docket # 83.

On December 4, 2000, the chapter 7 trustee (*not* the chapter 13 trustee) filed a "Motion to Reconvert Case from Chapter 13 to Chapter 7." One of the grounds for "reconversion," according to the trustee, was his contention that the Debtors are ineligible for chapter 13 because they have unsecured debt in excess of the prescribed limit under 11 U.S.C. § 109(e). *See* Motion at ¶¶ 5 & 6 (Docket # 36). The Debtors objected to the motion, challenging the trustee's standing to seek conversion. *See* Answer to Motion at p. 4 (Docket # 40).

The Debtors also asserted that they are in fact eligible for chapter 13, explaining that they intended to "amend schedule D, which contains [a] ... $290,000 claim that might be made by one creditor, which [D]ebtors believe may in fact be now $0." *Id.* at p. 3. True to their word, the Debtors amended schedule D on January 10, 2001. *See* Docket # 53. Originally, schedule D listed "Newcourt Financial" as holding a $290,000 claim, with most of it ($280,040) being unsecured. (The collateral, described as "business property and A/R," is said to be worth only $9,960). As amended, Schedule D now reports that Newcourt holds no claim at all (or, more precisely, that the amount of Newcourt's claim is "0"). Contrary to the original schedule, Newcourt's claim is now described as "contingent."

A hearing on the trustee's motion was held January 17th, 2001. Counsel for the Debtors requested and was granted an adjournment, as bad weather had prevented his clients from appearing at the hearing. In the meantime, the Court reserved decision on the issue of standing.

## *Discussion*

[1] The Debtors' contention that the trustee lacks standing is premised on the seemingly sound assumption that this case was in fact converted to chapter 13. A review of the facts, however, leads the Court to reject this assumption.

As indicated, the Debtors filed something entitled "Notice of Conversion of Chapter 7 Case to Chapter 13 Case." While this pleading is styled as a notice, the Debtors ask that the "Court convert their chapter 7 case to a case under chapter 13." Notice of Conversion. Thus the Debtors' "notice" was actually a motion: They were asking that the Court convert the case.

That the Debtors were "asking" rather than "telling" is consistent with the Code. Conversion pursuant to § 706(a)—which states that "[t]he debtor may convert a [chapter 7] case ... to ... chapter ... 13," 11 U.S.C. § 706(a)—can only be by court order. *See* 11 U.S.C. § 706(c) ("The court may not convert a [chapter 7] case ... to ... chapter ... 13 ... unless the debtor requests such conversion."); 11 U.S.C. § 706(d) ("[A] case may not be converted to case under another chapter ... unless the debtor may be a debtor under such chapter."); *compare* F.R.Bankr.P. 1017(f)(2) ("Conversion ... under ... § 706(a) ... shall be on motion ....") *with* F.R.Bankr.P. 1017(f)(3) ("A chapter 12 or chapter 13 case shall be converted without court order when the debtor files a notice of conversion ...."). To effect a conversion, then, the Court had to grant the Debtors' motion to convert.

In this case, however, the Court never ruled on the motion. The Court's "Notice of Conversion" simply (and erroneously) advises parties in interest that conversion was brought about by virtue of the Debtors' notice. Since the Court has yet to rule on the conversion motion, this case remains a chapter 7 case. *See In re Calder*, 973 F.2d 862, 867 (10th Cir.1992) ("[A] conversion from Chapter 7 to Chapter 13 pursuant to § 706(a) becomes effective only upon the entry of a conversion order by the court."). Accordingly, the Court rejects the Debtors' contention that the (Chapter 7) trustee lacks standing to challenge their eligibility for chapter 13.

[2] Turning to the merits of this challenge, eligibility for chapter 13 is to be measured as of "the date of the filing of the petition." 11 U.S.C. § 109(e). *See also, e.g., In re Pearson*, 773 F.2d 751, 758 (6th Cir.1985) (Section 109(e) requires a determination as to "[w]hether the Pearsons owed on the date of the filing of their petition unsecured debts in an amount in excess of $100,000."). If, as in this case, the debtor seeks to convert from chapter 7 to chapter 13, the relevant date remains the date that the debtor filed for chapter 7 relief. *See* 11 U.S.C. § 348(a) (With exceptions not relevant here, "[c]onversion of a case from ... one chapter ... to ... another chapter ... does not effect a change in the date of the filing of the petition."); *In re Bush*, 120 B.R. 403, 405–06 (Bankr.E.D.Tex.1990).

[3] Section 109(e) "requires [no] more" than a "realistic[ ]" assessment of the debtor's "state of ... affairs as it reasonably appeared on the date of filing." *Pearson*, 773 F.2d at 758. In this case, then, the issue is whether there was a reasonable basis for scheduling the debt owed to Newcourt as non-existent (since it represents a claim of zero dollars) or contingent. *See* 11 U.S.C. § 109(e) (The debt limit applies to "noncontingent" debts.); *see Pearson*, 773 F.2d at 758 (indicating that a debtor's "claim of eligibility" for chapter 13, as evidenced by the petition and schedules, must be made "in good faith") *see also In re Mannor*, 175 B.R. 639, 641 (Bankr.E.D.Mich.1994) (A debtor's subjective belief as to the amount of a debt is irrelevant if it was "clear—legally certain" on the petition date that the belief was unfounded.).

[4] The Court at this point has only sparse information relating to this issue. The amended schedule D explains that the Debtors were "advised that [Newcourt] ... has been enjoined from collecting [its debt] ... by [a] Florida Court." It further states that the Debtors do "not know [the] particulars of th[is] alleged injunction." At the hearing, counsel for the Debtors also represented that his clients had been advised by a private investigator that Newcourt had decided that it would not attempt to collect the debt owed.

If the injunction and Newcourt's alleged decision not to pursue its rights represent post-petition developments, then *Pearson* strongly suggests that they are to be disregarded. *See Pearson*, 773 F.2d at 758 (dismissing as "relatively immaterial" post-

petition developments "that might render more certain the precise nature of the debt itself and the extent to which it is ultimately found to be secured"). The present record does not permit the Court to make a finding on this point.[1] Nor has the Court had the opportunity to assess the credibility of the Debtors regarding their professed belief that Newcourt's debt was contingent and/or extinguished. Accordingly, a hearing will be scheduled at which time the Debtors will have the opportunity to establish a fuller record regarding the foregoing issues.

For these reasons, an order will enter which (i) deems the Debtors' Notice of Conversion to be a motion for conversion; (ii) deems the trustee's motion for reconversion to be an objection to the conversion motion; and (iii) sets a hearing date on the Debtors' motion, at which time the parties may present additional evidence and arguments in support of their respective positions.[2]



1. This assumes that these considerations could be relevant under *any* circumstances—an issue which we do not decide today. Counsel for the Debtors cited no authority for the (rather shaky) proposition that a debt owed to a litigation-shy creditor is not a debt for § 109(e) purposes. And the significance of the mysterious injunction is hardly self-evident.

2. If the Debtors' motion to convert is ultimately granted, then it will of course be on a *nunc pro tunc* basis. But the mess that could be created if the motion is denied underscores the need—long expressed by this Court—for more care in the way that the pleadings in which the debtor purports to unilaterally convert his or her case from chapter 7 to chapter 13 are handled by the Court. Henceforth, any so-called "notice" of conversion from 7 to 13 will be treated as a motion for conversion. *See* F.R.Bank.P. 1017(f)(2).

**In re Robert E. BESSETTE and Kathryn Y. Bessette, Debtors.**

**Robert E. Bessette and Kathryn Y. Bessette, Plaintiffs,**

**v.**

**Bank One, Michigan, Defendant.**

**Bankruptcy No. 01–20637.**

**Adversary No. 01–2039.**

United States Bankruptcy Court, E.D. Michigan, Northern Division.

Oct. 30, 2001.

Chapter 7 debtors brought adversary proceeding to avoid mortgage lien, as wholly unsupported by any equity in mortgage property. On motion to dismiss debtors' complaint for failing to state cause of action, the Bankruptcy Court, Arthur J. Spector, Chief Judge, held that, even assuming that value of Chapter 7 debtor-mortgagors' residence was less than amount of first mortgage debt, debtors could not use bankruptcy statute dealing with determination of creditor's secured status in order to "strip off" mortgage lien of wholly unsecured junior mortgagee.

Motion granted.

**1. Bankruptcy ⟹2774**

First step in deciding whether Chapter 7 debtors were entitled to bankruptcy homestead exemption in their residential property was to determine whether debtors had any equity in property by deducting, from property's value, the amount of any liens on property that had not been avoided; only if there was equity remaining in property after this calculation could debtors exempt property from Chapter 7 estate up to the limit provided by bankruptcy statute. Bankr.Code, 11 U.S.C.A. § 522(d)(1).

**2. Bankruptcy ⟹2852**

Even assuming that value of Chapter 7 debtor-mortgagors' residence was less than amount of first mortgage debt, debtors could not use bankruptcy statute dealing with determination of creditor's secured status in order to "strip off" mortgage lien of wholly unsecured junior mortgagee. Bankr.Code, 11 U.S.C.A. § 506(d).

---

William A. Siebert, Gladwin, MI, for Plaintiffs.

George E. Pawlowski, Grand Rapids, MI, for Defendant.

***OPINION GRANTING DEFENDANT BANK ONE, MICHIGAN'S MOTION TO DISMISS***

ARTHUR J. SPECTOR, Chief Judge.

Defendant Bank One, Michigan ("Bank One") moves the Court to dismiss the Plaintiffs'/Debtors' adversary complaint to avoid its lien on the Debtors' residential property under 11 U.S.C. § 506(d).[1] The Court will grant Bank One's motion because even if the Court assumes that all the allegations of fact in the Debtors' complaint are true, neither § 506(d) nor any other provision of the Bankruptcy Code entitles the Debtors to the relief requested.

## I. *Facts*

The Debtors filed a voluntary petition for relief under chapter 7 on March 6, 2001. On Schedule A of the petition, the Debtors indicated that they were fee simple owners of real property commonly described as 367 Grove Street, Gladwin, Michigan with a current market value of $55,000.[2] On Schedule C, the Debtors claimed a $16,495.87 exemption in this property pursuant to § 522(d)(1). On Schedule D, the Debtors indicated that Bank One held two mortgages on this property and that there was a balance owing of $58,504.13 on the first mortgage,[3] and $14,339.15 on the second mortgage.[4] According to the Debtors, both mortgages were recorded in the records of Gladwin County. (Complaint, ¶¶ 7, 10.)

On May 10, 2001, the Debtors filed a complaint seeking to void Bank One's second mortgage on the property. According to the complaint, the fair market value

1. Unless otherwise specified, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

2. According to the Debtors, the legal description of this property is "Lots 1, 2, 3, and the North ½ of Lot 4 of Block 5 of Smallwood Shores Subdivision, according to the recorded Plat thereof in the office of the Register of Deeds for Gladwin County, Michigan, at Liber 1 of Plats, page 32." (Complaint, ¶ 4.)

3. According to the Debtors, they originally entered into the first mortgage on or about June 17, 1999 with Franklin Mortgage Funding, Inc., which later assigned the mortgage to Bank One. (Complaint, ¶¶ 7–8.)

4. According to the Debtors, they originally entered into the second mortgage on or about June 17, 1999 with Michigan Fidelity Acceptance Corporation, which later assigned the mortgage to Bank One. (Complaint, ¶¶ 10–11.)