*Exhibit 9*

United States District Court
Southern District of Texas
FILED

SEP 0 3 2003

Michael N. Milby
Clerk of Court

THE HONORABLE, ANDREW S  HANEN, U. S  DISTRICT JUDGE

PRETRIAL CONFERENCE

CIVIL ACTION NO. B-03-029 ___          DATE & TIME 9/3/03 @ 8:56 - 10:05 am

COUNSEL:

JUAN PEQUENO _____     §   RICHARD SCHELL _____
     debtor

- - - - - - - - - -

MICHAEL B. SCHMIDT, TRUSTEE __     §   MICHAEL SCHMIDT _____
     **trustee**

---

**Courtroom Deputy:** Irma Soto
**Law Clerk:**         Christian Southwick
**Court Reporter:**    Barbara Barnard
**CSO:**               Tony

---

Case called on the docket.  Richard Schell appeared in person and for debtor, Juan Pequeno.  Juan Pequeno, debtor, is present. Michael Schmidt, trustee, is present.

Court addresses 3 issues. First issue is whether Mr. Pequeno has automatic right to convert. Second issue is the character of funds. Third issue is whether Trustee has the right to settle.

After arguments of counsel, Court gives the parties until next Wednesday to submit any additional briefing. Court will take it under advisement and will submit a written opinion.

Court is adjourned.

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL 1 5 2004

Michael N. Milby
Clerk of Court

```
                                    )
JUAN PEQUENO, DEBTOR                 )
                                    )
                                    )  CIVIL ACTION NO.
AND                                 )  B-03-029
                                    )
MICHAEL B. SCHMIDT, TRUSTEE         )
                                    )
```

PRETRIAL CONFERENCE
BEFORE THE HONORABLE ANDREW S. HANEN
SEPTEMBER 3, 2003

APPEARANCES:

For the Debtor:            MR. RICHARD SCHELL
                           Fleuriet Schell Law Firm
                           621 East Tyler
                           Harlingen, Texas  78550


For the Trustee:           MR. MICHAEL SCHMIDT
                           555 North Carancahua
                           Suite 1550
                           Corpus Christi, Texas  78578

Transcribed by:            BARBARA BARNARD
                           Official Court Reporter
                           600 E. Harrison, Box 301
                           Brownsville, Texas  78520
                           (956)548-2591

# CERTIFIED
# COPY

1
IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
2
BROWNSVILLE DIVISION

3
————————————————————————————  )
JUAN PEQUENO, DEBTOR             )
4                                )
                                 ) CIVIL ACTION NO.
5  AND                           ) B-03-029
                                 )
6  MICHAEL B. SCHMIDT, TRUSTEE   )
————————————————————————————  )

7

8

9
PRETRIAL CONFERENCE
BEFORE THE HONORABLE ANDREW S. HANEN
SEPTEMBER 3, 2003
10

11

APPEARANCES:
12

For the Debtor:          MR. RICHARD SCHELL
13                        Fleuriet Schell Law Firm
                          621 East Tyler
14                        Harlingen, Texas  78550

15

16 For the Trustee:       MR. MICHAEL SCHMIDT
                          555 North Carancahua
17                        Suite 1550
                          Corpus Christi, Texas  78578

18

19 Transcribed by:        BARBARA BARNARD
                          Official Court Reporter
20                        600 E. Harrison, Box 301
                          Brownsville, Texas  78520
21                        (956)548-2591

22

23                    CERTIFIED

24                      COPY

25

1      THE COURT:  It's not quite 9:00 o'clock, but do we have

2   both sides here in Pequeno versus Schmidt?

3      MR. SCHMIDT:  Mike Schmidt, trustee, Your Honor.  I'm

4   present and ready.

5      THE COURT:  All right.  Is Mr. Schell here?

6      MR. SCHELL:  Yes, Your Honor.

7      THE COURT:  All right.  Why don't you go ahead and

8   approach.  All right.  Counsel, go ahead and be seated.

9      MR. SCHMIDT:  Thank you, Your Honor.

10      THE COURT:  Let me -- I'm going to start with

11   Mr. Schell, but I -- let me crystallize the issues in my own

12   mind.

13      The first issue I see is whether Mr. Pequeno has an

14   automatic right to convert, and that's the issue I'd like you to

15   address first.  The second issue I'd like you to address is the

16   character of the funds; you know, whether they're exempt

17   property or not.  And then the third issue -- and maybe there's

18   a fourth issue that goes along with it, but basically I

19   characterize the other complaints as was there a right to

20   settle.  I mean, did the bankruptcy judge have a right to give

21   the trustee the permission to settle the matter and pursue the

22   settlement?  That's my way of looking at the issues.

23      Am I missing another issue?  Now, I'm kind of lumping all

24   the settlement issues in that last category.

25      MR. SCHELL:  Your Honor, if I may -- and I guess I need

1    to approach the lectern here.  If I may, I think that those

2    really are the key issues, the first two, I think, being pretty

3    much dispositive of everything else that's before the Court.

4         THE COURT:  And that's the way I looked at it as well.

5    Before you start, Mr. Schmidt, do you agree with that

6    characterization?

7         MR. SCHMIDT:  Your Honor, Mike Schmidt.  I do, Your

8    Honor.  I think that's the correct issues in the case.

9         THE COURT:  Okay.  Well, Mr. Schell, if you don't mind,

10   if you could kind of start in that order.  Not that -- I guess I

11   could hear them in any order, but that's kind of the way I have

12   them on my notes.

13        MR. SCHELL:  Very well, Your Honor.  The issue of

14   whether or not a debtor can convert under Bankruptcy Code 706(a)

15   has really been crystallized in the *In re Porras* decision by

16   Judge Leif Clark.  And I think that within the 5th Circuit

17   jurisprudence, we now have a case which just really distills,

18   summarizes, carefully evaluates and analyzes what the rights of

19   conversion are under 706(a) and gives us what I believe to be

20   the correct response; and that is -- or the correct answer; and

21   that is, that a debtor does have an automatic, absolute right to

22   convert his case from Chapter 7 to Chapter 13.

23        And in the *In re Porras* case, the Court goes so far as to

24   say that the bankruptcy court cannot hear evidence, cannot have

25   a hearing to adjudicate the matter.  It's a non-adjudicatory

1    process in which the debtor simply says, "I want to convert by

2    filing a motion to convert," and the case shall be converted.

3    That's what the statute says.

4        Interestingly enough, the bankruptcy rules, Rule 1017(d),

5    says that a motion to convert is not a contested matter.  And

6    Judge Clark in the *Porras* decision, I think quite wisely, looked

7    at that provision and said, "Yes.  Because it is an automatic,

8    absolute right to convert, it does not need to be a contested

9    matter."  And, indeed, the statute and the rule are consistent.

10   And what happens is essentially a ministerial act which is the

11   conversion of the case.

12       In this particular instance, there is no other case within

13   the Southern District of Texas or even within the 5th Circuit

14   jurisdiction that really deals with this particular issue better

15   than the *Porras* case.  Judge -- or Trustee Schmidt relies upon

16   the decision in the *In re Martin* case, which is a 5th Circuit

17   decision, in which the 5th Circuit discusses how absolute the

18   right is; and yet in some dicta, the 5th Circuit refers to

19   another case from another circuit and talks about an extreme

20   circumstances test.

21       The Court does not apply an extreme circumstances case in *In*

22   *re Martin;* and, quite frankly, I don't think that the issue as

23   crystallized by Judge Clark in the *Porras* case has really been

24   analyzed and ultimately decided by the 5th Circuit.

25               THE COURT:  Let me stop you.  I want to ask you two

1    questions.  A practical question first, and then I want to come

2    back and ask you more legal questions.  What difference does it

3    make whether he's in 7 or 13?

4             MR. SCHELL:  Well, interestingly in a lot of cases, it

5    probably wouldn't make that big a difference.  Here the reason

6    that this battle started is because under Chapter 7, the

7    ownership of the cause of action against the City of

8    Brownsville, the judgment which was entered for $420,000, if it

9    is not exempt property, then it belongs to Trustee Schmidt, and

10   he can liquidate it and use it to pay creditors.

11        In a Chapter 13, the debtor remains the owner of his

12   property.  And so the debtor, Mr. Pequeno, would have a right to

13   prosecute or actually to defend the appeal of the judgment, to

14   negotiate his settlement of the judgment, if possible, and then

15   to realize the proceeds from such a settlement or such a payment

16   of the judgment in connection with his Chapter 13 plan.

17            THE COURT:  Wouldn't he still -- under the plan,

18   wouldn't he still have to pay his creditors?

19            MR. SCHELL:  Yes.

20            THE COURT:  Tell me the status of the settlement.  What

21   is the status right now of the settlement?

22            MR. SCHELL:  Well, the status of the 5th Circuit --

23            THE COURT:  -- or the lawsuit, either or.

24            MR. SCHELL:  Well, the status of the case is that it has

25   been dismissed by the 5th Circuit without prejudice so that it's

1  not languishing on the docket in New Orleans, and the idea being

2  that when this matter is resolved, then the parties can take the

3  appeal up again.  But at this point, the -- officially the case

4  is dismissed without prejudice.

5        THE COURT:  And is the -- is the status of the

6  settlement with the city is that if the trustee has the power to

7  do it, then they have a deal; and if he doesn't, then we have an

8  appeal?

9        MR. SCHELL:  Right.  There's an order approving the

10  settlement, which is contingent upon the trustee actually having

11  had the authority to enter into the settlement.  But if that's

12  the finding of the Court, then the case would be settled.

13        THE COURT:  Okay.  Now, in the 5th Circuit, you're not

14  going to be time barred or anything?

15        MR. SCHELL:  No.  And the 5th Circuit specifically

16  dismissed the case with prejudice -- I mean without prejudice so

17  that there would not be a problem with that.

18        THE COURT:  Well, they understand what the deal is too?

19        MR. SCHELL:  Exactly.

20        THE COURT:  Okay.  I've just always been so scared of

21  missing a 5th Circuit deadline.

22        MR. SCHELL:  I think it's rather unusual what they've

23  done in this case actually.

24        THE COURT:  I've never heard of it.  That's why I wanted

25  to be sure.

1        Now, let's jump back to my legal question, which is -- which

2   is this.  Obviously the 5th Circuit left themselves an out by

3   citing this case that had extraordinary circumstances in it, and

4   I think the bankruptcy court took that out, even though the 5th

5   Circuit hasn't.

6        MR. SCHELL:  Right.

7        THE COURT:  And so let's talk about what -- what

8   qualifies as extraordinary circumstances?

9        MR. SCHELL:  Well, extreme circumstances, I think, is

10  going to somehow, you know, mostly fall within the eyes of the

11  beholder.  And since this is an appeal from a bankruptcy judge's

12  decision, you know, his fact findings are going to stand unless

13  they're clearly erroneous.

14       It's our position, though, that if that is the standard that

15  applies and if extreme circumstances had to have been shown,

16  that they're just not present here.  And I think one of the

17  major attenuating factors with respect to all of the perceived

18  problems with the filing of documents and so forth is the fact

19  that we did have a pro se debtor that was completely

20  unsophisticated in the rules and procedures for filing a

21  bankruptcy.

22       But going back into the record, there's really no evidence

23  of an intent to deceive, an intent to conceal.  The trustee

24  was -- had knowledge of the Brownsville -- City of Brownsville

25  lawsuit from the very beginning.  The trustee hired counsel to

1  represent the trustee's interest in the lawsuit, so at no point

2  is there an asset that somehow or another has disappeared or

3  can't be accounted for.  And what we have, I think, is a lot of

4  procedural mishmash, based on the fact that the debtor just

5  really wasn't sure what to do.

6        THE COURT:  Let me -- let me ask you this.  You

7  mentioned the standard by which I'm supposed to judge the fact

8  findings, the clearly erroneous standard.  Can I find -- this

9  may be a bit of a softball to ask you, so maybe I really ought

10 to be asking Mr. Schmidt this.  But if I accept his factual

11 findings as not being clearly erroneous, can I still say, "All

12 right.  I believe everything you found factually, but this

13 doesn't amount to an extraordinary or extreme circumstance"?

14       MR. SCHELL:  I would -- I don't know that there's any

15 law specifically on that, Judge.  I would think that ultimately

16 the finding of extreme circumstances is probably a fact finding

17 and not necessarily a question of law that would be determined

18 de novo at this level.

19       THE COURT:  Right.  That's what I'm asking you.

20       MR. SCHELL:  So I don't have any authority that says

21 that that is a question of law.  Certainly you could have no

22 evidence; but if you have some evidence, I think it probably is

23 a question of law.

24    I think the interesting point, though, is that the clearly

25 erroneous standard does not necessarily apply if the factual

findings made by the judge below were made based on erroneous controlling legal principles.  And there is a 5th Circuit case on that which is not cited in my brief called *Delta Lines versus Avondale* at 747 F.2d 995.  And our argument has been that Judge Schmidt was applying an erroneous underlying legal principle in the fact that as he made his decision on whether or not to deny the conversion, he was looking at questions of equity, questions regarding fairness, and he stated these things on the record.  And that is really not the principle under which a finding of extreme circumstances is made.  He never once articulated the idea or the phrase "extreme circumstances."

And so it seems to me that given the facts as they were presented and the fact that Judge Schmidt was not necessarily applying the correct legal principle, that the clearly erroneous standard does not necessarily apply in your review of whether or not extreme circumstances existed.

THE COURT:  Okay.

MR. SCHELL:  The other thing I would point out with respect to conversion is that if the case is converted, it's not like Mr. Pequeno suddenly has carte blanche to do anything he wants.  There will be another trustee that will be appointed, a Chapter 13 trustee.  There will be the requirement of filing a plan, of complying with that plan.  He will remain completely under the jurisdiction of the bankruptcy court.  And so the danger of him doing something that would be untoward or improper

1    is still being or subject to being prevented by the bankruptcy

2    system.  So he does not get carte blanche over the lawsuit just

3    because it comes back under his control under Chapter 13.

4    Indeed, if he settled the lawsuit, that settlement would be

5    subject to approval of the bankruptcy court under Chapter 13.

6         So the underlying rationale for allowing an automatic

7    conversion, I think in part, assumes that controls will follow

8    the case from Chapter 7 to 13 so that the creditors are not left

9    completely unprotected in the event of a conversion.

10         THE COURT:  Is there a -- for lack of a better term --

11    let's say a rift between the two sides -- I guess this may be

12    obvious, but let me go ahead and ask it -- as to the value of

13    the lawsuit?

14         MR. SCHELL:  Yes.

15         THE COURT:  I mean, is there a question about if the

16    lawsuit was appealed by the City of Brownsville, whether they

17    could hang on -- whether Mr. Pequeno could hang on to the

18    lawsuit?  I mean, obviously -- I mean, when I look at this

19    without going into the merits of that other lawsuit, which I

20    haven't, I mean, it's clear to me that someone has doubts about

21    whether they can hold on to this on appeal or they wouldn't have

22    settled a $440,000 verdict for whatever it was, 140, 150.

23         MR. SCHELL:  140.

24         THE COURT:  So somebody has got a big question mark

25    about whether they can hang on to that.

1    MR. SCHELL:  That's correct, Your Honor, and I'm sure

2    that Trustee Schmidt could tell you that there are some

3    significant legal concerns that he had regarding the viability

4    of the judgment on appeal and whether or not it would be upheld

5    by the 5th Circuit.  It strikes me, though, that that is really

6    not particularly relevant, though, with respect to whether or

7    not he can convert.

8    THE COURT:  It was -- I mean, it's relevant to -- it's

9    relevant to me only to the extent of I'm trying to figure out

10    what would be the effect if -- let's say I agree with you that

11    you have a right to convert, but disagreed with you on the topic

12    we're about to talk about, which is the characterization of the

13    property.  I'm trying to figure out what happens.  That's what I

14    was -- that's why I asked it.

15    MR. SCHELL:  Well, I think the -- if you were to agree

16    that the case should be converted, then the exemption issue is

17    really not as important; because under Chapter 13, future

18    earnings are not exempt, and, therefore, have to be included

19    within the plan.  So if the case is converted and the case is

20    ultimately settled for some amount of money, then that amount of

21    money, less the attorney's fees and so forth, would have to be

22    dedicated towards repayment of creditors under the plan.

23    So in a sense, Mr. Pequeno may actually be better off, if

24    the Court were to hold that the entire judgment was exempt but

25    he cannot convert, so that he would obtain a discharge from all

1    his debts under Chapter 7 and keep the entire 400,000 or 200,000

2    or whatever the number ends up being.  So there's an interesting

3    juxtaposition there.

4         THE COURT:  Let's talk about that, about the exemption

5    issue.

6         MR. SCHELL:  With respect to the exemption, Your

7    Honor --

8         THE COURT:  I mean, clearly what the bankruptcy judge

9    went off on, at least from my review of the file, is, hey, yes,

10    lost future earnings may be exempt, but you filed stuff in Judge

11    Tagle's court that said black and you filed stuff in my court

12    that said white, and you can't have it both ways.

13         MR. SCHELL:  Correct, correct.  The actual statute

14    Section 522D11E says that a debtor may exempt, claim as exempt a

15    payment in compensation of loss of future earnings.  And the

16    argument then is that the entire amount of the judgment,

17    $400,000, not the attorney's fee portion, but the 400,000 was,

18    indeed, a payment in compensation for loss of future earnings.

19    Because there was no jury finding that designated or separated

20    between past earnings, future earnings, mental anguish, et

21    cetera, then the only persons that know how this number was

22    calculated, the only persons that know what they awarded are the

23    jury, the actual jurors.  And all of the evidence that was

24    presented to Judge Schmidt was evidence of what Mr. Pequeno

25    thought the jury was doing, but not evidence of what the jury

1    actually did.  And --

2         THE COURT:  But it was evidence he got from talking to

3    jurors, wasn't it?

4         MR. SCHELL:  It's evidence that he -- well, it's an

5    impression that he obtained after talking to jurors that they

6    might have awarded an additional amount.  But again, those

7    statements, what Mr. Pequeno says that a juror told him, is

8    hearsay, and I do not think that it meets any exception to the

9    hearsay rule.

10         THE COURT:  Why wouldn't it be information acted upon?

11         MR. SCHELL:  I guess to the extent that he --

12         THE COURT:  I mean, he had gotten that information and

13    immediately filed something with Judge Tagle's court.

14         MR. SCHELL:  Well, I think the fact that he acted in a

15    certain way is admissible, but the statements made by someone

16    out of court to -- and producing those to the Court or offering

17    those to the Court to prove that that's the truth of those

18    statements, that's hearsay, and that's not going to fall within

19    the exception to the hearsay rules.

20         THE COURT:  All right.

21         MR. SCHELL:  And so you basically end up in a situation

22    where the only evidence that Trustee Schmidt was able to produce

23    was what the debtor, Mr. Pequeno, might have been thinking

24    about, what the -- the nature of his award was.

25         THE COURT:  Well, let me ask you this.  If it's not --

1  and I'm just putting these labels on loosely but -- for the sake

2  of this argument.  I mean, isn't there some kind of argument

3  that, wait a minute.  He's estopped from taking contrary

4  positions or law of the case or whatever label you want to put

5  on it, that you can't take opposing positions on one side of the

6  hall and then walk over here on the other side of the hall and

7  take an opposite position?

8       MR. SCHELL:  Well, I can -- I can assure you that if it

9  was up to Mr. Pequeno, the award would have been much larger for

10  past damages, for future damages, plus an additional amount for

11  making him whole under the federal statute involved.  The fact

12  that he goes into the court before Judge Tagle and says that

13  there should be an additional award to make me whole under this

14  statute does not necessarily mean that there wasn't some

15  component of an award for future lost earnings in the original

16  judgment.

17       THE COURT:  Okay.  Let me stop you there.  Let's --

18  let's say I believe that.  Whose duty is it to segregate and can

19  you segregate, you know, one blank that's filled in?

20       MR. SCHELL:  Generally, it would be the -- it's the

21  Court's charge to the jury.  However, the plaintiff and

22  sometimes the defendant will require or request that there be a

23  segregation of the award or a separation of the award based on

24  the different elements of damages for varying reasons, including

25  maybe an anticipation of a problem similar to this.

1    Certainly --

2              THE COURT:  Well, here we don't have that, right?

3              MR. SCHELL:  We don't have that.

4              THE COURT:  We don't have special issues that say fill

5    in the blank for past earnings, fill in the blank for future,

6    fill in the blank --

7              MR. SCHELL:  We just don't have it.

8              THE COURT:  Okay.  So then we come over to bankruptcy

9    court.  You're going to claim it's exempt because it's payment

10   for lost future earnings.  How much of it is payment for lost

11   future earnings?  All of it?  Part of it?  And who's got the

12   burden on that?

13             MR. SCHELL:  Well, once the entire amount is claimed as

14   exempt, then the burden shifts to the objecting party to prove

15   that it's not exempt.  And the statute very clearly reads that

16   once claimed, it is exempt unless an objection is sustained to

17   the exemption.

18             THE COURT:  Well, doesn't he have -- doesn't the trustee

19   have to prove merely by the same way you've got to -- doesn't

20   he -- isn't his proof the same as your proof; that, hey, we

21   asked for damages on A, B, C, and D, and B, C, and D are not

22   exempt, just like your proof that A is exempt?  I mean,

23   doesn't -- doesn't he satisfy his burden by showing that?

24             MR. SCHELL:  Well, I think not, because -- and this is

25   the difficulty for the Court, is that it's virtually impossible,

1  I think, to prove what the actual award was, what it entailed,

2  of what elements of damages were in it so that no one can really

3  prove it one way or the other.  And so the -- the ultimate

4  finding on sustaining or not sustaining the objection is going

5  to fall on where the burden of proof lies.

6          THE COURT:  That's why I asked it.

7          MR. SCHELL:  And that's the problem the Court had in the

8  *Cramer* case that I cite in the appeal.  If they had a big award,

9  50 some thousand dollars, the Court went through all kind of

10  gyrations trying to figure out how to figure out what that was

11  and ultimately decided we're just speculating.  And if we're

12  just speculating, then there's no proof.  And if there's no

13  proof, then the objecting party did not meet their burden, and

14  that's -- that's where it comes down.

15          THE COURT:  Okay.  Let me ask you.  I lumped kind of a

16  third category here, and that's the right to settle.  If the

17  Court was correct on the first two issues, the failure to let

18  Mr. Pequeno convert and the exemption issue, does the trustee

19  have the right to settle the case?

20          MR. SCHELL:  Yes.

21          THE COURT:  Okay.  And if --

22          MR. SCHELL:  Subject to approval of the Court.

23          THE COURT:  Right.

24          MR. SCHELL:  Which the Court approved.

25          THE COURT:  No, I understand.  I understand.  And then

1   if the Court was wrong about the conversion issue, then the

2   trustee doesn't have the right to settle the case?

3           MR. SCHELL:  He simply has no authority.  He has no

4   ownership interest in the case at that point.

5           THE COURT:  And if he was right about the conversion but

6   wrong about the characterization, you don't care?  That's the

7   best of all worlds for you.

8           MR. SCHELL:  It's ours.

9           THE COURT:  It's your money.

10          MR. SCHELL:  It's ours.

11          THE COURT:  Well, you do care because -- then you do

12  care because you don't want him settling it for $140,000 because

13  your client thinks it's worth more.

14          MR. SCHELL:  Well, if it's ours, then he can't settle

15  it.  He doesn't own it.

16          THE COURT:  Yeah, okay.  All right.

17          MR. SCHELL:  Thank you, Your Honor.

18          THE COURT:  Thank you.

19      All right.  Mr. Schmidt, if I can get you to kind of follow

20  the same format here.

21          MR. SCHMIDT:  I'll be happy to.  Thank you.

22          THE COURT:  You've obviously heard the things that at

23  least I'm curious about.

24          MR. SCHMIDT:  I have, Your Honor.  With regard to the

25  automatic right to conversion, Your Honor, there has been a

1   dichotomy nationwide on that issue, whether or not -- when it

2   says absolute, is it absolute, or are there some limiting

3   factors?  And the first case that I'm aware of that says there

4   are limiting factors, the extreme circumstances, bad faith, is

5   the *In re Calder* case, which is the case that Judge King, chief

6   judge of the 5th Circuit now, who wrote *In re Martin,* wrote the

7   opinion in *In re Martin,* talks about -- in her opinion about

8   extreme circumstances prevent you from converting.  You have a

9   right to convert, and that's pretty much absolute, absent

10  extreme circumstances.  And she cites the *In re Calder* in her

11  opinion as the source of that opinion.  She goes on to talk

12  about the fact that in the case before them, the *Martin* case,

13  the trustee or the objecting party in that case had not really

14  raised any facts of extreme circumstances, so we really don't

15  have to decide that today.

16       With all due respect to Judge Leif Clark, he's a fine judge,

17  but he's just flat wrong because the 5th Circuit in *In re*

18  *Martin,* which is the authority, the highest authority in this

19  circuit absent the Supreme Court, has said extreme circumstances

20  is an exception.  I believe we have those extreme circumstances

21  here in this case, Your Honor, and the extreme circumstances

22  being Mr. Pequeno's conduct, which amounts to a deception.

23       Bankruptcy is a fast process.  It's intended by Congress to

24  be a fast process.  You file bankruptcy; you get relief from

25  your debts.  But in exchange, you've got to come to the Court in

1    all honesty, you got to list everything that you own, you ha

2    to list all of your assets, all of your debts and what you've

3    done with stuff before you filed bankruptcy.  That is the heart

4    of the system.  Without the honesty and the forthrightness of

5    the debtors, the system breaks down because you have debtors

6    getting away with property that they shouldn't get and that

7    ought to go to the benefit of the creditors.  That's what we

8    have an attempt at here by Mr. Pequeno.

9         THE COURT:  How much debt do we have?

10        MR. SCHMIDT:  We have $120,000 in debt, Your Honor.

11        THE COURT:  And we have $140,000 settlement that I

12   imagine some of that goes to attorney's fees.

13        MR. SCHMIDT:  A significant amount of it goes to

14   attorney fees.

15        MR. SCHELL:  About half.

16        MR. SCHMIDT:  It would be 50 percent.  But you also have

17   to understand, Judge, that there was a trade on attorney's fees.

18   The plaintiff's lawyers, who were hired as special counsel by

19   the trustee, had a 45 percent contingency fee in that judgment

20   and still have it.

21        THE COURT:  Now, are they the same attorneys that tried

22   the case?

23        MR. SCHMIDT:  The lawyers that tried the case.

24        THE COURT:  Mr. Castillo?

25        MR. SCHMIDT:  Frank Castillo and Alex Garcia were

1    Mr. Pequeno's trial lawyers.  The Court permitted me, as they

2    can under the bankruptcy code, to hire them as special counsel

3    to handle the appeal to the 5th Circuit.

4              THE COURT:  Okay.

5              MR. SCHMIDT:  And they traded that -- what I got them to

6    do is agree to a 50 percent fee for the trial and the appeal.

7    They already had a 45 percent and would.  If this all falls

8    apart, they still have that 45 percent in the event that we get

9    reversed here.

10       So there would be additional debt in the event that -- to

11   add on to that 119, $120,000 in debt.

12             THE COURT:  I'm not following you.  They get 50 percent?

13   What was the trade?

14             MR. SCHMIDT:  The trade -- they had a 45 percent

15   contingency fee.  I got them to agree that that 45 percent and

16   another 5 percent would be the total fee for the appeal.

17             THE COURT:  Oh, the 45 percent didn't cover appeal?

18             MR. SCHMIDT:  It did not.

19             THE COURT:  Okay.

20             MR. SCHMIDT:  So it's either additional debt, or that's

21   not property of the estate, would go straight to the lawyers,

22   depending on the outcome of the appeal to the 5th Circuit.

23             THE COURT:  So if everything stays the same, I affirm

24   the bankruptcy judge, the 5th Circuit affirms me, Supreme Court

25   affirms them, whatever, you've got basically about 50-cents on a