Exhibit 12

1

1            IN THE UNITED STATES BANKRUPTCY COURT
              SOUTHERN DISTRICT OF TEXAS
2                  BROWNSVILLE DIVISION        FEB -3 2005

3                                         Michael N. Milby, Clerk

    IN RE:                   *      BANKRUPTCY
4                          *
    JUAN PEQUENO,          *      NO. 01-24255
5                          *
       DEBTOR.             *      CORPUS CHRISTI, TEXAS
6                          *      AUGUST 4, 2004
                           *      10:38 A.M.
7   * * * * * * * * * * * * * * * * *

8

9                 TRANSCRIPT OF MOTION HEARING

10         BEFORE THE HONORABLE RICHARD S. SCHMIDT
               UNITED STATES BANKRUPTCY JUDGE

11

12   APPEARANCES:

13   FOR THE DEBTOR:          MR. JUAN PEQUENO, PRO SE
                         P. O. BOX 5692
14                          BROWNSVILLE, TEXAS 78523

15   FOR CHAPTER 7 TRUSTEE:     MR. MICHAEL B. SCHMIDT
                         MR. JOHN VARDEMAN
16                          LAW OFFICES OF MICHAEL B. SCHMIDT
                         712 AMERICAN BANK PLAZA
17                          CORPUS CHRISTI, TEXAS 78475

18   FOR CHAPTER 13 TRUSTEE:    MARY V. HOWER
                         ATTORNEY AT LAW
19                          15514 GYPSY ST
                         CORPUS CHRISTI, TEXAS 78418-6453
20

21   COURT RECORDER:          MS. FRANCES RODRIGUEZ

22

23      PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING
      TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE:
24           MOLLY CARTER, 2718 WIND ROCK
      CORPUS CHRISTI, TEXAS 78410 (361) 241-7850
25

1          (The proceedings began at 10:38 a.m.)

2          (Call to Order of the Court.)

3              THE COURT:  Juan Pequeno.

4              MR. VARDEMAN:  John Vardeman for Michael Schmidt, the

5      former Chapter 7 Trustee, Your Honor.

6              MR. SCHMIDT:  Mike Schmidt, former Chapter 7 Trustee.

7              MS. HOWER:  Mary Hower for the (indiscernible).

8              MR. PEQUENO:  Juan Pequeno for the Debtor, Your

9      Honor, and my wife.

10             THE COURT:  Okay.

11             MR. VARDEMAN:  Your Honor, this is a hearing on the

12     Trustee, Mike Schmidt's, motion to reconvert the case back to

13     Chapter 7.  As you will recall, Judge Andrew Hanen, the

14     District Judge, on April 1st --

15             THE COURT:  Okay.  This is one of those cases where

16     when you read the District Judge's opinion, you're thinking,

17     wait a minute, why didn't I think of that.  Did anybody bring

18     up the fact that the code, right in there, mandatorily requires

19     that Chapter 7s can be converted to 13 at any time?

20             MR. VARDEMAN:  Well, Your Honor --

21             THE COURT:  Nobody brought that up.  Now, I think you

22     should have brought it up, but y'all didn't point that out to

23     me either, did you?

24             MR. PEQUENO:  Your Honor, that it can be converted to

25     a 13 at any time?

1          THE COURT:  It was.

2          MR. PEQUENO:  It was.

3          THE COURT:  And so it's always --

4          MR. VARDEMAN:  Your Honor, for years, Trustees that

5    I've represented have operated under the assumption and under

6    valid case law that there is a bad faith exception to the right

7    to convert from 7 to 13, based on acts that the debtors took in

8    the bankruptcy case.  And we frequently have a debtor who, once

9    the Trustee finds out he has assets or has hidden assets, he

10   tries to convert to 13.  And we had some of those actions take

11   place in this case, although I'm sure Mr. Pequeno is going to

12   deny that.

13         MR. PEQUENO:  I deny that, Your Honor.

14         MR. VARDEMAN:  Yes, we understand that.

15         THE COURT:  Okay.  Go ahead.

16         MR. VARDEMAN:  But we did operate under the --

17         THE COURT:  Okay.  We're over that.  We've converted

18   to 13.  He's now in a 13.

19         MR. VARDEMAN:  Yes, Your Honor.

20         THE COURT:  Does he have a plan on file?

21         MR. PEQUENO:  Yes.

22         MR. VARDEMAN:  He does have a plan on file, Your

23   Honor.

24         MR. PEQUENO:  Yes, Your Honor.  And it's updated.

25   It's a 100 percent plan, Your Honor.  I plan to, as soon as the

```
 1     judgment is resolved, I plan --

 2              THE COURT:  Okay.  We have four exhibits on behalf of

 3     Mr. Schmidt.  Any objection to these?  First one is the docket

 4     sheet.  You have no objection to that, do you?

 5              MR. PEQUENO:  Just a second.  It's not so much an

 6     objection, Your Honor, it's just I just want to let the Court

 7     know that I did file -- there's two other motions there,

 8     documents, and let me --

 9              THE COURT:  Okay.  Well, I'll take judicial notice of

10     whatever the docket sheet says.  Is there some additional stuff

11     that's been filed since the 3rd?

12              MR. PEQUENO:  That particular date, it was yesterday,

13     Your Honor, that should have gotten in there.  I guess the

14     clerk didn't get to enter the other one, the other two, because

15     they were all on the same day.  And it's a motion to deny

16     admittance of exhibits that Your Honor had mentioned not to

17     enter for the Trustee, but the Trustee went ahead and entered

18     them anyway.  And a motion to revoke a discharge, if any

19     discharge did happen in this case.  My contention is that there

20     has been no discharge.  But under rule, Bankruptcy Rule 9024,

21     according to Judge Hanen, he said that a debtor like me can

22     motion to revoke any discharge so we can go ahead and proceed

23     with the Chapter 13, if any discharge did occur.  And that's

24     what I wanted to tell you about that specific one.

25              THE COURT:  Okay.  You filed a motion to revoke the
```

1  discharge?

2          MR. PEQUENO:  If it did happen.

3          THE COURT:  Has there been a discharge?

4          MR. PEQUENO:  I don't believe so, Your Honor.

5          MR. VARDEMAN:  Judge Hanen's opinion states that

6  there was a discharge on August the 14th, 2002, as an automatic

7  result of things that happened in this case.

8          MR. PEQUENO:  But, Your Honor, there was a motion to

9  convert orally on August the 7th.  Plus, there was no 341

10  meeting, not until November the 26th, after this case had

11  already been appealed.

12          THE COURT:  Okay.  So you want me to look at

13  something that's at the bottom of the docket sheet.

14          MR. PEQUENO:  I have a copy for you if it's not --

15          THE COURT:  Do I have this thing working?

16          MR. PEQUENO:  -- if it's not in there, Your Honor.

17          THE COURT:  It's in here.

18          MR. PEQUENO:  Okay.

19          THE COURT:  Okay.  The last item on the docket is the

20  Motion to Deny Admittance of Chapter 7 Trustee Exhibits, dated

21  July 7th, and a Motion to Vacate Discharge that's prior to

22  that, Docket Number 188.  So you filed a motion to vacate

23  discharge.  I'll take judicial notice of that, plus the motion

24  to deny admittance of your documents.  I don't know --

25          MR. PEQUENO:  That was --

1          THE COURT:  Are there any other objections to the

2  exhibits?

3          MR. PEQUENO:  Okay.  The exhibits I was talking

4  about, as far as now, were the last --

5          THE COURT:  Okay.  Let's take them one at a time.  Do

6  you object to the deposition exhibit?

7          MR. PEQUENO:  Your Honor, I never -- yes, I do,

8  because I never got a copy of it.  More than a --

9          THE COURT:  Okay.  It's your responsibility to get a

10  copy.

11          MR. PEQUENO:  Well, I asked Trustee for it more than

12  a year-and-a-half ago, and the --

13          THE COURT:  See, you have to buy it from -- the way

14  you get one is you buy it from the court reporter.

15          MR. PEQUENO:  Well --

16          THE COURT:  He doesn't have to give you a copy of

17  the -- now, you have a copy now, because you have a copy of the

18  exhibits.

19          MR. PEQUENO:  Well, they --

20          MR. VARDEMAN:  I have the original here in the

21  courtroom.

22          MR. PEQUENO:  They took a deposition --

23          THE COURT:  Did you give him a copy of these

24  exhibits?

25          MR. VARDEMAN:  Of these exhibits here today?

```
 1              THE COURT:  Yes.

 2              MR. VARDEMAN:  Yes, Your Honor.

 3              THE COURT:  So you have them.

 4              MR. PEQUENO:  Just this morning, Your Honor.

 5              THE COURT:  Okay.  Do you have any objection to

 6   Exhibit C?

 7              MR. PEQUENO:  No, Your Honor.

 8              THE COURT:  The plan.

 9              MR. PEQUENO:  No, Your Honor.

10              THE COURT:  Any objection to Exhibit D?

11              MR. PEQUENO:  No, Your Honor.

12              THE COURT:  Another plan.

13              MR. PEQUENO:  No, Your Honor.

14              THE COURT:  All right.  Any objections are overruled.

15   They're all admitted.  But I will take judicial notice of the

16   entire docket, not just Exhibit A.

17              All right.  Now, go ahead.  Do you have any exhibits,

18   Mr. Pequeno?

19              MR. PEQUENO:  No, Your Honor.

20              THE COURT:  All right.

21              MR. PEQUENO:  Just --

22              THE COURT:  Let's hear your argument first.

23              MR. VARDEMAN:  Argument --

24              THE COURT:  Are you going to call witnesses?

25              MR. VARDEMAN:  Yes, Your Honor.  I'm going to call
```

1   Mr. Pequeno and Mr. Schmidt.

2          THE COURT:  Okay.  Do you have any initial argument

3   you want to make?

4          MR. VARDEMAN:  I would just like to say that the

5   Trustee recommends reconversion back to Chapter 7, because we

6   believe that the Debtor has failed to file a feasible plan that

7   can meet the provisions of Chapter 13.  Because the Debtor has

8   already received a discharge, there are no debts to repay, and

9   because of bad faith in this case and abusive bankruptcy

10  process.  And we will provide evidence to that fact.

11         THE COURT:  All right.  Do you want to make any

12  statement before we start with the witnesses?

13         MR. PEQUENO:  Yes, Your Honor.  What I want to state

14  is that the facts of the record, of the case, speak for

15  themselves.  And basically, there has been no discharge.  If

16  you look at the record, there was an order granting on August

17  the 7th for me to convert to a 13.  And the debts supposedly

18  were discharged August the 14th.  That's a week later.  And we

19  had already had -- we had already been granted by Court relief

20  to go into a 13.  But then, because there was an objection by

21  the Trustee, it was set up again for a hearing, which was

22  ultimately denied on November the 7th.  And then that was

23  appealed to Judge Hanen's Court, which overruled all of that.

24         And also, another major issue was that the first 341

25  meeting was on June 14th, but it was adjourned.  Even the

1    attorney that was here can testify to that.  And the 341 that

2    was subsequently had was not until November the 26th.  And I

3    have proof of that.  And Trustee also sent out notices to the

4    creditors to file proof of claims, and there was no discharge.

5    The actual meeting wasn't till November 26th, after actually

6    this had already been appealed.

7            THE COURT:  Okay.  Wasn't there a lawsuit involved in

8    this whole business?

9            MR. PEQUENO:  Yes, Your Honor.  And right now,

10   it's -- we've already been converted to a 13.  I've asked the

11   Fifth Circuit, and I'm the party of interest, and both briefs

12   have been filed.  They're just waiting to decide.

13           THE COURT:  About what?  Filed on what?

14           MR. PEQUENO:  About the -- under the -- the briefs on

15   both --

16           THE COURT:  Mr. Vardeman, what's the issue in  this

17   lawsuit?  There's some lawsuit pending.

18           MR. VARDEMAN:  Your Honor, the Debtor had a lawsuit

19   pending against the City of Brownsville when he filed

20   bankruptcy.

21           THE COURT:  And it was settled?

22           MR. VARDEMAN:  It was taken to a judgment post-

23   petition, okay, and then Mr. Schmidt substituted in as the

24   party on appeal.  They went to the Fifth Circuit.  The Fifth

25   Circuit has a mediation process, and they offer one of their

```
 1    staff attorneys --

 2              THE COURT:  Right.

 3              MR. VARDEMAN:  -- as a mediator.  You gave the

 4    Trustee, Mr. Schmidt, the authority to mediate that case.  He

 5    mediated it.  They came to an agreement.  He came back to this

 6    Court and filed a formal motion to compromise to settle the

 7    case for $140,000, and you approved that settlement.  That has

 8    not been appealed, Your Honor.

 9              MR. PEQUENO:  Your Honor, the --

10              THE COURT:  Okay.  And then -- where's the money?

11              MR. VARDEMAN:  The City of Brownsville did not pay us

12    the money because the Debtor then came and filed his schedules,

13    which he did not have on file at the beginning, and he claimed

14    the entire lawsuit as exempt.  Now, we took that up to appeal

15    with Judge Hanen, and he has ruled that the judgment is not

16    exempt.

17              THE COURT:  Okay.  And what was the judgment for?

18    For future wages?

19              MR. PEQUENO:  It was for --

20              MR. VARDEMAN:  No.  Judge Hanen ruled that it was not

21    for future wages.  It was a wrongful termination suit, Your

22    Honor.

23              MR. PEQUENO:  Your Honor, that's being appealed at

24    the Fifth Circuit.

25              MR. VARDEMAN:  He's filed --
```

1          MR. PEQUENO:  Because, because it should be -- some

2     of it, the majority was future wages.

3          THE COURT:  Okay.

4          MR. PEQUENO:  And that's still being appealed.

5          THE COURT:  So if you're in 7 -- this is a funny

6     case, because if you're in 7 and it's future wages, the money

7     belongs to you.  If you're in 13, which you're now in, and it's

8     future wages, the money belongs to the Chapter 13 Trustee.  So

9     you're going to be -- you've got two issues here that you're

10    going to be -- I mean, you have won on your issue to be in 13,

11    but now if you win on your issue that it's exempt, I mean, that

12    it's not -- that it is future wages and thereby exempt, it's

13    now going to be property of the 13 estate.

14          So it's an interesting question, one way or the

15    other.  But if you're back in 13 and it turns out that you win

16    in the Fifth Circuit -- back in 7, and you win in the Fifth

17    Circuit on your, whether this is exempt or not, then you get

18    the money, but only if you're in 7.

19          MR. PEQUENO:  What --

20          THE COURT:  If you're in 13 and you win, that it's --

21    I mean, it's an interesting question.  But I don't think it

22    matters if you're in 13 and you win --

23          MR. PEQUENO:  I plan to --

24          THE COURT:  -- because you're going to have to -- it

25    will always be estate property.  I mean, it will either be

```
 1    estate property by virtue of the fact that you have to pay 100

 2    percent to the creditors --

 3                MR. PEQUENO:  Uh-huh.

 4                THE COURT:  -- or, and you get to keep it because

 5    it's exempt, or -- I don't know.  It's a complicated matter.

 6                MR. PEQUENO:  Your Honor --

 7                THE COURT:  This is complicated.

 8                MR. PEQUENO:  I'm plan to pay my creditors.  And one

 9    of the things I did want to tell the Court is that the

10    settlement was subject to me being in chapter -- whatever

11    chapter that I'm in.  If I'm in a Chapter 13, then I, you know,

12    the Debtor in charge has a, you know, to litigate it.

13                THE COURT:  Okay.  Well, that's --

14                MR. PEQUENO:  And since I was -- since --

15                THE COURT:  Okay.  Wait a minute.  That's another

16    issue.  You were in Chapter 7 at the time this case was

17    settled.

18                MR. PEQUENO:  No, Your Honor.

19                THE COURT:  And --

20                MR. PEQUENO:  Excuse me.  It was converted on August

21    the 7th.  And the mediator settled on September 16.

22                THE COURT:  Converted to what?

23                MR. PEQUENO:  Converted to a 13, by order of the

24    Court.

25                THE COURT:  Okay.  But the order converting this to
```

1   13 was signed like, what, 20 days ago?

2         MR. VARDEMAN:  Signed on the 20th of July, Your

3   Honor.

4         MR. PEQUENO:  Yes.

5         THE COURT:  20th of July.

6         MR. PEQUENO:  Yes, Your Honor.  But I have a

7   transcript where you, you motioned for me, orally granted, just

8   like you did July 7th --

9         THE COURT:  But then I reconsidered, didn't I?

10         MR. PEQUENO:  Not till November the 7th.

11         MR. VARDEMAN:  Actually, what happened, Your Honor --

12         MR. PEQUENO:  Not till November 7th.

13         MR. VARDEMAN:  -- is the Debtor had a motion to

14   reconsider a motion to lift stay on file, and he came in and

15   said, "I have a motion to convert on file," and you orally

16   said, "Okay, the case is converted," before the Trustee even

17   had a chance to file his objection to that motion to convert.

18         THE COURT:  Okay.  Well --

19         MR. VARDEMAN:  We did file the objection --

20         MR. PEQUENO:  No.

21         MR. VARDEMAN:  Then you had a --

22         MR. PEQUENO:  No, Mr. Vardeman.

23         MR. VARDEMAN:  We can argue about that later.  Okay.

24         THE COURT:  Okay.  All that doesn't really matter,

25   because there is a final order in the -- approving the

1    settlement, isn't there?

2            MR. SCHMIDT:  Yes, Your Honor.

3            MR. VARDEMAN:  Yes, sir.

4            MR. PEQUENO:  But --

5            THE COURT:  That never was appealed.  And even if --

6            MR. PEQUENO:  Yes, it was, Your Honor.  It was

7    appealed.  It was appealed.  And Judge Hanen said that it was

8    subject to what chapter you're in.

9            THE COURT:  Okay.  Well --

10            MR. PEQUENO:  Okay?

11            THE COURT:  In any event, that's not before me today.

12    The issue today is what?

13            MR. VARDEMAN:  The issue today is whether --

14            THE COURT:  Whether or not to reconvey.  So call your

15    first witness.

16            MR. VARDEMAN:  Juan Pequeno, Your Honor.

17            THE COURT:  All right.  Mr. Pequeno, raise your right

18    hand and be sworn.

19        (Witness sworn.)

20            MR. VARDEMAN:  Your Honor, may I approach the witness

21    stand and put a set of exhibits up there?

22            THE COURT:  You may.

23            JUAN PEQUENO, TRUSTEE'S WITNESS NO. 1, SWORN

24                         DIRECT EXAMINATION

25    BY MR. VARDEMAN:

Pequeno - Direct                                    15

1    Q.    Mr. Pequeno, please state your name.

2    A.    Juan Pequeno.

3    Q.    Okay.  Can you look at Exhibits C and D on the Trustee's

4    exhibit list?

5    A.    I'm looking at them.

6    Q.    Do you recognize and can you identify Exhibit C as the

7    Chapter 13 plan that you filed before this Court on July 23rd

8    of 2004?

9    A.    Yes.  I complied with the Court.

10   Q.    Okay.  And that is the plan that you filed.  Is that

11   correct?

12   A.    Yes, it is.

13   Q.    All right.  And then Exhibit D, can you identify that as

14   the Chapter 13 plan that you filed before this Court on

15   September 3rd of the year 2002?

16   A.    Yes.  That was pursuant to me being converted on August

17   the 7th.

18   Q.    Yes or no is fine, Mr. Pequeno.  Is that the plan?

19   A.    Yes, it is.

20   Q.    Okay.  And you filed for bankruptcy on December the 31st

21   of 2001.  Is that correct?

22   A.    Yes, it is.

23   Q.    Okay.  And you filed without a lawyer.  Is that correct?

24   A.    I filed pro se.  I looked for attorneys, but I wasn't able

25   to get one.

Pequeno - Direct                                        16

```
 1   Q.   Did you have a lawyer?

 2   A.   Not at the time.

 3   Q.   Okay.  Do you have a lawyer now?

 4   A.   No.

 5   Q.   All right.  And the reason you filed for bankruptcy was to

 6   stop the foreclosure on your house.  Is that correct?

 7   A.   Yes.  I have an exemption that --

 8   Q.   Well, wait.

 9   A.   It's in the --

10   Q.   Isn't it true that the reason you filed for Chapter 7

11   bankruptcy was to stop the foreclosure on your house?

12   A.   Yes.

13   Q.   All right.  And isn't it true that when you filed for

14   Chapter 7 bankruptcy, you were not living in that house?

15   A.   The house wasn't -- needed some repairs.

16   Q.   Did you live in it at the time you filed bankruptcy?

17   A.   I had my things in there.  I wasn't physically --

18            THE COURT:  Okay.  Hold it, hold it, hold it.  You're

19   going to get a chance to ask yourself, or make any statement

20   you want to.  But he gets to ask you pointed questions.  He

21   didn't ask you, "Do you have any of your things in the

22   property?"

23            THE WITNESS:  All right.

24            THE COURT:  He's asking you, "Do you live in it?"

25   It's very simple.  So don't answer questions that he's not
```

1   asking.  Only answer the questions that he's asking.  You're

2   going to do yourself a -- because when you do, you convince the

3   Court that there's some reason you think you shouldn't answer

4   it.  Not every question that he asks is going to be the seminal

5   question in this lawsuit.  So don't be thinking that every

6   single question you've got to somehow limit the answer.  Just

7   answer truthfully every question that he asks, and not another

8   question, until it's your turn to ask yourself questions.

9           Go ahead.

10          THE WITNESS:  All right, Your Honor.

11  BY MR. VARDEMAN:

12  Q.   Mr. Pequeno, can you turn to Exhibit B?  And the excerpts

13  from the deposition have page numbers.  I'm on Page 69.

14          THE COURT:  Which page?

15          MR. VARDEMAN:  69, Your Honor.

16  BY MR. VARDEMAN:

17  Q.   It's up at the top right-hand corner.

18  A.   69?

19  Q.   Yes.  And I'm starting down at Line 18.  Now, Mr. Pequeno,

20  you recall when I took your deposition in September of 2002,

21  don't you?

22  A.   Okay.  Just -- yes, I do recall.

23  Q.   Okay.  Are you on Page 69 now?

24  A.   That's what I was finding.  Down there.

25  Q.   I'm going to start down at Line 18.  Now, Mr. Pequeno, you

Pequeno - Direct                                         18

1    knew that in order to stop a foreclosure, you had to file a

2    Chapter 13, didn't you?

3    A.    In order -- can you repeat the question?

4    Q.    In order to stop a foreclosure, you knew that you had to

5    file a Chapter 13 bankruptcy, didn't you?

6    A.    In order -- no.

7    Q.    Okay.

8    A.    My understanding --

9          THE COURT:  Well, that's not even true.  You can stop

10   foreclosure filing a Chapter 7.

11   BY MR. VARDEMAN:

12   Q.    And you did.

13   A.    My understanding was filing any --

14         THE COURT:  Okay.  Let's don't ask questions that

15   have wrong legal bases in them.  I mean, that's a misleading

16   question.  Filing Chapter 7 stops a foreclosure.  Doesn't stop

17   it for long, but it stops the foreclosure.  So don't ask him a

18   question that is incorrect legally.  It is true that to

19   reorganize debts and keep a house, that 13 is far more user-

20   friendly than 7.  But 7 can stop a foreclosure.  So go ahead

21   and ask your question.

22   BY MR. VARDEMAN:

23   Q.    Okay.  Well, then it's true that you knew that the

24   Chapter 7 would not reorganize the debt that you owed to your

25   mortgage company.  Isn't that true?

1   A.    I filed a Chapter 7 to stop a foreclosure, because I

2   wasn't working enough at the time.

3   Q.    Okay.  And you didn't have enough income at that time --

4   A.    At that --

5   Q.    -- to file Chapter 13.  Isn't that true?

6   A.    Right.  That's why I planned to convert to a 13, so I

7   could support a plan, which is what I did.

8   Q.    You basically were using the Chapter 7 automatic stay to

9   buy some time, weren't you?

10  A.    That's what the book said, the, you know, the legal book.

11  Q.    And then you filed a motion to dismiss your bankruptcy on

12  January 16th.  Isn't that correct?

13  A.    I did it based on the attorney that was handling my Fifth

14  Circuit appeal.

15  Q.    Well, isn't it true that your foreclosure sale was

16  scheduled for the first part of January in 2002?

17  A.    It was the new year.

18  Q.    It was on the new year?

19  A.    Yeah.

20  Q.    Okay.  And it was stayed, wasn't it?

21  A.    Because I filed the foreclosure (sic), yes.

22  Q.    And then immediately after you stopped the foreclosure,

23  you filed a motion to dismiss your bankruptcy case.  Isn't that

24  correct?

25  A.    That's what my attorney said.  And I didn't --

Pequeno - Direct                                           20

1   Q.   Which attorney was that?

2   A.   Frank Costilla.

3   Q.   And how was he representing you?

4   A.   He was representing me with the lawsuit against the city.

5   And I had asked him to help, that my house was being foreclosed

6   and that I needed some help.  And he said, you know, I'm sorry

7   you're going to lose your house.

8   Q.   So you filed Chapter 7 to stop the foreclosure on your

9   house.

10  A.   Yes, because the lawsuit hadn't occurred at that time, you

11  know, actually going to trial.  We didn't go till February

12  the 15th.  And so I was going to be left without a home.

13  Q.   So you had a lawsuit that was set for trial on February

14  15th of 2002.  Correct?

15  A.   Correct.

16  Q.   And you had a foreclosure that was set on the first week

17  of January 2002.  Isn't that correct?

18  A.   Right.  A month before, yes.

19  Q.   Okay.  And you didn't have enough income to file a

20  Chapter 13 case.  Isn't that correct?

21  A.   I filed a Chapter 7.

22  Q.   You filed a Chapter 7, and then --

23  A.   Because I was looking full time for work, but I hadn't

24  been able to get it.

25  Q.   Okay.  And you didn't have money to pay for the Chapter 13

Pequeno - Direct                                      21

1    payments.  Isn't that correct?

2    A.    According -- that's what the legal book said, yes.

3    Q.    And then you turned around, right after the stay prevented

4    the foreclosure, and you filed a motion to dismiss.  Isn't that

5    correct?

6    A.    Because my attorney said, "Well, you lost everything."

7    Q.    Because you wanted to protect the lawsuit.  Correct?

8    A.    Well, he said he wasn't going to help me with the lawsuit.

9    Q.    But he did in fact help you with that lawsuit and took it

10   to trial, didn't he?

11   A.    Yeah, I think because it was the ninth hour and he had to.

12   Q.    Mr. Pequeno, I was looking at your Chapter 13 plan, and

13   you were more than $12,000 behind to Aurora when you filed

14   bankruptcy.  That's on your mortgage company.  Isn't that

15   correct?

16   A.    I don't -- no, that included attorney fees and some, I

17   think it was about nine, nine months maybe, eight or nine

18   months.

19   Q.    So you were eight or nine months behind to Aurora, and you

20   owed them over $12,000 when you filed bankruptcy.  Isn't that

21   correct?

22   A.    In the bankruptcy, I included all the attorney fees.  So

23   it was like 4,000 more.  It was about 8,000 that I owed.

24   Q.    But that's --

25   A.    But a Chapter 13 allows me to pay the arrears.

1   Q.    I need you to answer the question.  Didn't you owe them

2   more than $12,000 when you filed bankruptcy?

3   A.    Total, yes.  Total, it was.

4   Q.    Okay.  Now, you haven't made any payments to the

5   Chapter 13 Trustee, have you?

6   A.    Say that again.

7   Q.    Have you made any payments to the Chapter 13 Trustee?

8   A.    No, because of all the objections from the other side.

9   They basically halted my conversion, not until Your Honor ruled

10  in July.  With this latest plan, I'm going to proceed with it.

11  Q.    Now, your plan, which is Exhibit C, said that you're going

12  to pay $500 a month for 36 months, beginning on September 4th

13  of this year.  Is that correct?

14  A.    That's correct.  I hope to get my house, though.  It's in

15  an adversary, and I hope to get my house in there.  Actually,

16  it's more right now, because I don't know how much the house is

17  going to be, not until that gets decided.

18  Q.    Now, your house has already been foreclosed on.  Correct?

19  A.    Yes.

20  Q.    All right.  And you're representing to the Court that you

21  have total monthly income of $2,000.  Is that correct?

22  A.    That's correct.

23  Q.    And that your monthly expenses are 1500.

24  A.    Right.

25  Q.    And that you're going to pay $500 a month, for a total of

1   36 months, to fund the plan.  Is that correct?

2   A.   Right.  I would actually have more months, but because

3   there's been more than two years of objection of me converting

4   to a 13, I would have had more months.  But I don't right now.

5   This is just a basic conversion case, but it's become something

6   else because of the judgment at the Fifth Circuit.

7   Q.   Now, you sued Aurora Mortgage Company and the Trustee,

8   Mike Schmidt, for wrongful foreclosure in this case, didn't

9   you?

10  A.   Well, Trustee Schmidt is already out, because there

11  isn't -- there is not a link strong enough for him with the

12  foreclosure.

13  Q.   Judge Isgur dismissed Mike Schmidt, didn't he?

14  A.   He dismissed Mike Schmidt, but not Aurora.

15         MR. VARDEMAN:  Okay.  Your Honor, I'll pass the

16  witness.

17         THE COURT:  All right.  Do you have any statement you

18  want to make at this time, under oath?

19         MR. PEQUENO:  No, Your Honor.

20         MR. SCHMIDT:  Your Honor, Ms. Hower is also --

21         THE COURT:  Oh, you want to ask questions, Ms. Hower?

22         MS. HOWER:  Yes, Your Honor.  Excuse me.  I will.

23                      CROSS-EXAMINATION

24  BY MS. HOWER:

25  Q.   Mr. Pequeno, you did not file any amended schedules when

Pequeno - Cross                                         24

1    you filed your plan.  The Trustee is therefore just looking at

2    the schedules as they were filed in 2002.  Have there been any

3    changes in the listing of the assets or debts since 2002?

4    A.    Yes.  Yes, there has, Ms. Hower.

5    Q.    Have there been --

6    A.    I filed an up -- excuse me -- I filed an updated, the

7    Court ordered that I file one.  On July the 7th, the Honorable

8    Court ruled to file a Chapter 13 plan by July 23rd.  And you

9    should have gotten a copy of that.

10   Q.    I have a copy of the plan.  I don't have a copy of any

11   amended schedules.  Did you file amended schedules?

12   A.    Amended -- oh, okay.  No, they're -- I filed changes in

13   the plan itself, but not in the schedules.  That stayed the

14   same.

15   Q.    Okay.  So all of your assets and debts listed in the

16   schedules are the same.  And what about in your budget?

17   A.    The budget, it's basically, I'm earning the same amount.

18   Right now I'm a teacher at the university.  I'm getting, you

19   know, what I stated there.  I could show you a W-2 if you want

20   to see it.

21           MS. HOWER:  I don't have any other questions, Judge.

22           THE COURT:  Okay.  Any statement now?  Anything under

23   oath you want to say?

24           MR. PEQUENO:  No, Your Honor.

25           THE COURT:  All right.  You can step down.  Call your

 1   next witness.

 2            MR. VARDEMAN:  Your Honor, I would call Michael

 3   Schmidt.

 4            THE COURT:  All right.  Raise your right hand and be

 5   sworn.

 6         MICHAEL SCHMIDT, TRUSTEE'S WITNESS NO. 2, SWORN

 7                    DIRECT EXAMINATION

 8   BY MR. VARDEMAN:

 9   Q.   Mr. Schmidt, state your name for the record, please.

10   A.   Michael B. Schmidt.

11   Q.   And what was your capacity in this bankruptcy case?

12   A.   I was the appointed Chapter 7 Trustee.

13   Q.   Okay.  And when you took over this case, were there any

14   schedules on file?

15   A.   No, there were not.

16   Q.   Did you have to file a motion to force the Debtor to file

17   his schedules in this case?

18   A.   Yes, I filed -- first I requested in writing, sent him a

19   letter requesting that he file his schedules.  And then I filed

20   a -- issued a subpoena to subpoena his records.  I filed a

21   motion to compel him to file his schedules, none of which he

22   did in compliance with those requests.

23   Q.   And is it true that you also had the Debtor forced to come

24   to a 341 meeting?

25   A.   I did.

1    Q.    Can you tell the Court why you believe the Debtor has

2    acted in bad faith or has otherwise abused the bankruptcy

3    process in his tenure as the Debtor in this case?

4    A.    Yes, sir.  He is a very uncooperative Debtor.  He would

5    not file his schedules.  He would not list his assets.  He

6    wouldn't provide any information that gave us enough

7    information on which to garner what his assets and his

8    liabilities were.  He showed up at the creditor's -- the first

9    creditor's meeting that he finally showed up at, he requested a

10   continuance because he visited with Mr. Eddie Rodriguez about

11   becoming his lawyer, and Mr. Rodriguez confirmed that they were

12   talking, had talked before the other creditor's meetings, and

13   requested a pass and that he was going to meet with the Debtor

14   and that they would attend the next creditor's meeting.  Well,

15   he never did hire Mr. Rodriguez, and he didn't attend the next

16   creditor's meetings.  But he did file -- he also filed at least

17   two motions to hold the creditor's meetings by telephonics that

18   I would not agree to and I opposed and this Court denied.  So

19   he was a very uncooperative Debtor.  He would not provide the

20   information that he was required by law to provide.

21   Q.    The Debtor filed on December 31st of 2001.  Is that

22   correct?

23   A.    That's correct.

24   Q.    And he didn't have any schedules on file for some time?

25   A.    Six to nine months after that is when they were finally

Schmidt - Direct                                                27

1   filed.

2   Q.    Okay.  And the docket reflects that he filed a motion to

3   dismiss the case on January the 16th of 2002.  Is that correct?

4   A.    Yes, sir.  And he didn't serve me with a copy of that.

5   But I was at the, appearing telephonically, I mean video from

6   Corpus, and that matter was called, and I opposed it, and the

7   Judge denied the motion to dismiss.

8   Q.    How did you find out about the Debtor's lawsuit against

9   the City of Brownsville?

10  A.    The Defendant's -- the City of Brownsville's lawyer

11  contacted my office about it.

12  Q.    Okay.  So it wasn't the Debtor that notified you, as

13  required by law under his schedules.  Is that correct?

14  A.    It was -- no, the Debtor did not notify me.

15  Q.    It's your understanding of Judge Hanen's order that the

16  Debtor did automatically receive a discharge on August the 14th

17  of 2002.  Is that correct?

18  A.    That's the Judge, Judge Hanen's ruling.

19  Q.    What debts does the Debtor have that were discharged?

20  A.    Well, he had $116,000 in basically credit card debt that

21  would have been discharged, and as well as the debt to the

22  mortgage company, because the stay had been lifted and the

23  property foreclosed on.  So there is no debt remaining to be

24  paid.

25  Q.    Do you feel that that would be a hindrance to any of the

1    creditors getting paid, even if he goes into Chapter 13?

2    A.    Oh, it's very much a hindrance, because Mr. Pequeno's goal

3    is to obtain control of the lawsuit and the appeal of the

4    judgment by the City of Brownsville, which there are

5    considerable risks in prosecuting -- defending an appeal of

6    that judgment.  There are significant risks that the judgment

7    will be reversed by the Fifth Circuit.

8    Q.    Now, what evidence was taken up to Judge Hanen concerning

9    the exemption or non-exemption of this lawsuit and whether

10   Debtor had any future wages included in that lawsuit?

11   A.    Well, the judgment was a lump sum judgment.  It recited it

12   was for pain and suffering, for past wages and for future

13   wages.  It had a lump sum.  And Mr. Pequeno polled the jury, or

14   some members of the jury afterwards, and they told him they had

15   not awarded him any future wages, that everything they had

16   given him was for past wages.  And he wrote me a letter telling

17   me about that, because he wanted to file a motion -- well, he

18   wanted his, Mr. Costilla's law firm to file a motion to reform

19   the judgment before Judge Tagle.  And Mr. Costilla would not do

20   that, because he said it wouldn't work.  And it was basically

21   an additur that would be denied.  And so Mr. Pequeno did that

22   himself.  And before he did -- after he did that, he requested

23   in writing, in a letter to me, that I not oppose that motion

24   that he was filing with Judge Tagle.  And he went on and

25   presented that to the Court on his own, to Judge Tagle, and it

Schmidt - Direct                                          29

1    was denied.

2    Q.    So --

3    A.    And in that motion, the essence of that motion for additur

4    is he wanted to add additional sum of a million dollars for

5    future lost wages that he had not received from the jury

6    verdict.

7    Q.    So at the time the Debtor filed his, finally filed his

8    schedule of exemptions, he was aware that the jurors had not

9    awarded him any future wages, wasn't he?

10   A.    Yes.  And in fact, he told me that orally, and he also

11   wrote me a letter.  And that was the evidence presented to this

12   Court on the exemption battle.

13   Q.    And are you asserting to the Court that the Debtor's claim

14   of exemption itself is in bad faith?

15   A.    Yes.  I mean, he knew from his visits with the jurors that

16   he was not awarded future lost wages, that what he was awarded

17   was past.  Past lost wages are not exempt under the federal

18   exemptions, only future lost wages.  After he read and

19   determined that future lost wages could be exempt is when he

20   amended his schedules to claim it.

21              MR. VARDEMAN:  Thank you, Mr. Schmidt.

22              THE WITNESS:  Yes, sir.

23              THE COURT:  Any questions of Mr. Schmidt, Ms. Hower?

24              MS. HOWER:  No, Your Honor.

25              THE COURT:  All right.  Mr. Pequeno, any questions?