*Exhibit 14* 1

```
1              IN THE UNITED STATES BANKRUPTCY COURT
                  SOUTHERN DISTRICT OF TEXAS
2                    BROWNSVILLE DIVISION
```

United States District Court
Southern District of Texas
FILED

MAR 1 1 2005

Michael N. Milby, Clerk

```
3

   IN RE:                      *    BANKRUPTCY
4                              *
   JUAN PEQUENO,               *    NO. 01-24255
5                              *
       DEBTOR.                 *    CORPUS CHRISTI, TEXAS
6                              *    DECEMBER 1, 2004
                               *    10:18 A.M.
7  * * * * * * * * * * * * * * * *

8

9                 TRANSCRIPT OF MOTION HEARING

10        BEFORE THE HONORABLE RICHARD S. SCHMIDT
               UNITED STATES BANKRUPTCY JUDGE

11

12  APPEARANCES:

13  FOR THE DEBTOR:         MR. JUAN PEQUENO, PRO SE
                            P. O. BOX 5692
14                          BROWNSVILLE, TEXAS 78523

15  FOR CHAPTER 7 TRUSTEE:  MR. MICHAEL B. SCHMIDT
                            LAW OFFICES OF MICHAEL B. SCHMIDT
16                          712 AMERICAN BANK PLAZA
                            CORPUS CHRISTI, TEXAS 78475
17

18  FOR CHAPTER 13 TRUSTEE: MARY V. HOWER
                            ATTORNEY AT LAW
                            15514 GYPSY ST
19                          CORPUS CHRISTI, TEXAS 78418-6453

20

    COURT RECORDER:         MS. LORI CAYCE
21

22

23     PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING
        TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE:
                MOLLY CARTER, 2718 WIND ROCK
24        CORPUS CHRISTI, TEXAS 78410 (361) 241-7850

25
```

```
 1          (The proceedings began at 10:18 a.m.)

 2          (Call to Order of the Court.)

 3               THE COURT:  Pequeno.  Juan Pequeno.  Come forward.

 4               MR. SCHMIDT:  Mike Schmidt, former Trustee and

 5     creditor.

 6               THE COURT:  You're the former Trustee?

 7               MR. SCHMIDT:  I am, Your Honor.

 8               THE COURT:  And you have a claim in this case?

 9               MR. SCHMIDT:  I do, Your Honor.

10               THE COURT:  And you're filing motion to convert to 7.

11     We have converted him to 13.  Have you filed a plan?

12               MR. PEQUENO:  Yes, Your Honor, I have.  I just filed

13     a modified plan also, Your Honor.

14               THE COURT:  Have we confirmed a plan in your case?

15               MR. PEQUENO:  It's in the process, Your Honor.  We

16     had a 341 meeting this month, the first week of this month --

17     well, not that -- excuse me -- November the 5th, and Ms. Hower

18     was there, and she stipulated some of the things that needed to

19     be done in the plan, like for 36 --

20               THE COURT:  Okay.  Have you seen his exhibits?

21               MR. SCHMIDT:  I have, Your Honor, and I have --

22               THE COURT:  Any objection?

23               MR. SCHMIDT:  I have no objection.

24               THE COURT:  They're admitted.  Have you seen

25     Mr. Schmidt's exhibits?
```

1          MR. PEQUENO:  Yes, I have, Your Honor.

2          THE COURT:  Any objection?

3          MR. PEQUENO:  No, Your Honor.

4          THE COURT:  They're admitted.  Ms. Hower, do you have

5     a position on this case?

6          MS. HOWER:  No exhibits, Your Honor.

7          THE COURT:  You what?

8          MR. SCHMIDT:  No exhibits.

9          MS. HOWER:  I have no exhibits.  Is that what you

10    were asking?  My ears are plugged, too.

11         THE COURT:  Okay.  Do you have a position?

12         MS. HOWER:  Well, at this time, I can tell the Court

13    that we have not been able to confirm a plan.  Mr. Pequeno is

14    correct that I did spend quite a bit of time with him at the

15    341 meeting instructing him on what I felt the law was with

16    regard to the time limits that he had to complete a plan, the

17    number of months that he had to pay in, the objections that

18    need to be raised if he didn't want us to pay certain claims.

19    And I went over all these things with him, and I understand

20    that just maybe yesterday he filed another plan, and that has

21    not been reviewed.  I can tell the Court that as of this date,

22    we have not received any payments under any plan from

23    Mr. Pequeno.

24         THE COURT:  All right.

25         MR. PEQUENO:  I have sent -- Your Honor, I have sent

1    a payment and -- with a new modified plan, and it's also --

2            THE COURT:  You have not received any payments?  Is

3    that what you said?

4            MS. HOWER:  Not as of yesterday.

5            THE COURT:  Was there a plan on file?

6            MS. HOWER:  Has there been a plan on file?

7            THE COURT:  Yeah.

8            MS. HOWER:  Yes, Your Honor.  There's been --

9            THE COURT:  And what did it require to be paid?

10           MS. HOWER:  There's been a plan on file since July of

11   '02, I think.

12           THE COURT:  Okay.  What did it require to be paid

13   month?

14           MS. HOWER:  $500 per month.

15           THE COURT:  And he never made any payments?

16           MS. HOWER:  No, Your Honor.

17           MR. PEQUENO:  There was a question, Your Honor, on

18   the amount, because I called the Trustee and they said that I

19   was in delinquency $16,000.  And they said, well, there's

20   something -- they didn't even have my file.

21           THE COURT:  Okay.  Hold on.  You filed the plan.  You

22   set the amount in the plan.  And then you didn't pay it?  And

23   you're trying to claim because they had some sort of a thing,

24   you didn't -- didn't you know how much your payments were?  You

25   set them.

1          MR. PEQUENO:  Your Honor, it was -- yes, Your Honor.

2  But they --

3          THE COURT:  So why didn't you pay them?

4          MR. PEQUENO:  Because I called them, and they said

5  that the 500 wasn't what they wanted.  They wanted 16,000.

6          THE COURT:  They may be entitled to 16,000, but you

7  set -- the law requires that you file a plan and begin payments

8  within 30 days.  I give that lecture every Chapter 13 day.

9  You've got 30 days to file your first payment.  And you make

10  the payment every month thereafter.

11          MR. PEQUENO:  Yes, Your Honor.

12          THE COURT:  So under your plan, whether it was

13  confirmable or not, they may have been taking a different

14  position that it wasn't confirmable because there wasn't enough

15  payments, but you set the $500 payment, and then you didn't

16  even make it.

17          MR. PEQUENO:  Your Honor, they didn't have even my

18  file in the Chapter 13.  I had to send these whole documents, I

19  even had to file a motion to Chapter 13 to fix the -- because

20  their records show that I'm behind 16,000.  And they say, well,

21  first fix that, he said, before you even start making payments,

22  because the 500 is not going to do anything.

23          MS. HOWER:  Your Honor, nobody told Mr. Pequeno not

24  to make payments.  Nobody told him not to make payments.

25          MR. PEQUENO:  I talked to --

```
 1              THE COURT:  Do the Trustee's records show that he's
 2   behind 15, $16,000?
 3              MS. HOWER:  Your Honor, our system, our system would
 4   start computing his payments from the date that he filed his
 5   petition, which was back in '01.  And I realize that, you know,
 6   there have been some intervening factors that need to be taken
 7   into consideration that would affect the delinquency amount.  I
 8   explained those to Mr. Pequeno at the 341.  In my opinion, he
 9   has to complete a plan no later than December of '06, because
10   that would be the end of his 60 months for being in bankruptcy.
11   And then he would have to pay in at least 36 months, which
12   would make the delinquency go back at least to December of '03
13   in order to give him 36 months of payments during this five
14   years.  And so I told him that at the very least, at the 341,
15   that he would have a delinquency of $6,000.  So, but still,
16   since then --
17              MR. PEQUENO:  Judge, the --
18              MS. HOWER:  -- we have not seen any payments or any
19   attempt to make up that delinquent amount.
20              MR. PEQUENO:  I've sent --
21              THE COURT:  Well, wait a minute.  Let's say you're --
22   okay.  Let's start over.  You have a Chapter 7.  It gets
23   converted to Chapter 13 after a year.
24              MS. HOWER:  Yes.
25              THE COURT:  And the Debtor files a plan that provides
```

1    that he pays $500 a month.

2         MS. HOWER:  Yes.

3         THE COURT:  Your plan already shows him behind by

4    $6,000 because he didn't pay from the beginning?

5         MS. HOWER:  Actually, our system is putting him

6    behind about 15.  That's the way our system is calculating,

7    because we calculate it from the petition date.

8         THE COURT:  Well, but the plan says that he begins

9    his payments on, say, if he files it on November 1st, beginning

10   December 1st, I pay $500 a month.  Why would your system show

11   that he's behind if he pays the $500?  Regardless of where he

12   started.  I mean, you can have a plan that says zero payments

13   for twelve months, and then $500 a month thereafter.

14        MS. HOWER:  Well, we wouldn't confirm -- we wouldn't

15   recommend confirmation on that.

16        THE COURT:  Well, I didn't say you would recommend

17   confirmation.

18        MS. HOWER:  I suppose theoretically --

19        THE COURT:  I didn't say you would recommend

20   confirmation.

21        MS. HOWER:  Right.

22        THE COURT:  That's a separate issue.

23        MS. HOWER:  Right.  And what his plan called for, a

24   delay in his plan.  Now, he filed one in July of '02, Your

25   Honor.  And then there were the intervening court proceedings

```
 1   about whether or not he could even be in 13.  So then he filed
 2   an amended plan after Judge Hanen's decision was entered.   I
 3   believe that was entered in April.  And he filed that formal
 4   order of conversion from you in July.  And he filed the plan to
 5   start payments in September for 36 months, which would put him
 6   beyond the five years of being in bankruptcy.
 7              THE COURT:  Okay.  Those are all confirmation issues.
 8              MS. HOWER:  Right.
 9              MR. PEQUENO:  I fixed the 36, which she recommended,
10   Your Honor.  I'm going to be using the --
11              THE COURT:  Okay.  Well, it's not 36.  You've got
12   five years to complete a plan when you file bankruptcy.
13              MR. PEQUENO:  Right.
14              THE COURT:  If you convert, you've still got five
15   years, but it's from the date you filed.
16              MR. PEQUENO:  In the latest plan --
17              THE COURT:  So I don't care whether it's -- three
18   years is not -- I mean, there is some issue in that if you wait
19   and convert after three years, for instance, that because the
20   Code provides you've got to pay in at least three years of
21   salary excess, if you've already passed up three years and
22   you've only got two years left, it may well be you can't ever
23   confirm a plan.  I don't know what you would do under those
24   circumstances.  That issue -- I don't know, is that an issue
25   today?
```

1          MR. SCHMIDT:  No, Your Honor.  The ability

2    (inaudible) is an issue, but the real issue today is what his

3    intent is.  And his intent is not to pay his creditors.  His

4    conduct shows that.

5          MR. PEQUENO:  That is not true, Your Honor.

6          MR. SCHMIDT:  He hasn't made a payment, Your Honor,

7    not one payment.

8          THE COURT:  Okay.  Well, the first big hurdle I have

9    is why, if you filed a plan that says you pay $500 a month,

10   regardless of what their records show --

11         MR. PEQUENO:  Your Honor --

12         THE COURT:  -- you know that the law requires that

13   you pay the 500 a month.  Why didn't you pay that?

14         MR. PEQUENO:  I called them, and they -- the

15   Chapter 13 Trustee --

16         THE COURT:  They told you not to pay it?

17         MR. PEQUENO:  They told me, "You owe 16,000.  That's

18   what you're delinquent."  And I said, "The records are wrong."

19         THE COURT:  And they told you they wouldn't accept

20   $500 a month?

21         MR. PEQUENO:  They said, "We don't know where you're

22   going to, you know, we don't want the -- you're behind 16,000.

23   And plus, we don't have your records."  So I submitted --

24         THE COURT:  If you were behind 16,000 a month, your

25   plan could say, "I'm going to pay 500 a month for three months,

1    and then I'm going to pay $16,000 a month in month four."  And

2    you still, you would pay your 500 a month, and then come to

3    month four, you pay your 16,000.

4         MR. PEQUENO:  I have another issue here, Your Honor,

5    that in the plan, the security, the main security was my home.

6    But my home is in litigation.  And I'm having to pay -- I was

7    going to pay something that -- there's not even a proof of

8    claim for it, because right now it's in litigation.  It's in an

9    adversary.  It's before Judge Isgur.  And so I had to modify

10   the plan.  After talking with Ms. Hower at the 341 meeting, I

11   needed to modify the plan to reflect that appropriate.  I'm

12   also working full time, you know, I'm working full time that I

13   can support this plan.  And I just want to be given time.

14   Trustee Schmidt is just, you know, I'm finally doing this.

15   I'm --

16        THE COURT:  Your plan now is to pay $100 a month?

17        MR. PEQUENO:  It's -- yes, Your Honor.  And I'm

18   already caught up.  I paid the $500 that I sent in, and she

19   should already have it in her office.  It's -- I'm paid up to

20   December.  And the majority of the monies is a 100, excuse me,

21   is a 100 percent plan, is going to be coming from the final

22   judgment.  I'm going to be paying all of the creditors 100

23   percent, with the exception of the Trustee, which he's being --

24   he's had a conflict of interest with the Estate from the

25   beginning that I can prove, and also one of the creditors, a

1    Mr. Tapiero, she filed as a secured creditor, when she's not.

2    So that's why I filed those objections, which I have -- I

3    brought up to Ms. Hower, and she said, "Well, you need to file

4    proper objections," which I did.  And I filed the payment.  And

5    tomorrow, tomorrow we're scheduled to go before you with

6    Ms. Hower about fixing the 16,000, which I think, you know,

7    that's what I thought.  I told her we didn't go all the way to

8    the beginning, you know.  We converted on June, you know, in

9    July.  Actually, this case has been -- there's been several

10   things going on.

11          MR. SCHMIDT:  Your Honor, may I address some of those

12   points?

13          THE COURT:  All right.

14          MR. SCHMIDT:  Your Honor, if you will look at

15   Mr. Pequeno's -- first of all, if you'll look at my Exhibit

16   Number 1, which is this Court's order that denied my previous

17   motion without prejudice to convert him back to 7, you gave him

18   a deadline to have a plan confirmed by October the 7th.  He has

19   not done that.

20          Secondly, Your Honor, on the eve of this hearing, he

21   files a modified plan that now provides for $100 a month

22   payment, and he shows his secured claims as $62,500.  His

23   proposed modified plan will not pay his secured creditors as

24   scheduled by him.

25          Mr. Pequeno, please, let me finish, and then --

```
 1              THE COURT:  Go ahead.  Finish, Mr. Schmidt.

 2              MR. SCHMIDT:  So he, on the face of it, his plan is

 3   not feasible.

 4              Secondly, it makes no payment towards the Chapter 7

 5   administrative expenses of mine, my administrative expenses.

 6              THE COURT:  How much are they?

 7              MR. SCHMIDT:  Which they're 41,000, I believe, Your

 8   Honor.  He objected to it.  You ruled denying his objection to

 9   my administrative claim.  He's taking that up on appeal.  He

10   makes no provision for that in his plan.

11              Your Honor, the facts show this is a case that was

12   filed in December of '01.  We are now in December of '04.  He's

13   never made a payment.  His plans are not feasible.

14              THE COURT:  Okay.  He filed in December of '01, 13 or

15   7?

16              MR. SCHMIDT:  He filed a 7.

17              MR. PEQUENO:  A 7, Your Honor.

18              THE COURT:  Then did he file -- when was his first

19   Chapter 13 plan proposed?

20              MR. PEQUENO:  September --

21              THE COURT:  Ms. Hower?

22              MR. SCHMIDT:  Your Honor, that --

23              MS. HOWER:  In July of '02, he filed a motion to

24   convert it to 13, and he proposed a plan to pay $500 a month.

25   And then that -- we never received a copy of any of that in our
```

```
 1   office.  We were not aware of any of this until after the
 2   issues were decided by Judge Hanen as to whether or not he
 3   could convert to Chapter 13.
 4           THE COURT:  Okay.  He filed a motion to convert and
 5   he had a plan that provided for $500 a month in July of '02.
 6           MR. PEQUENO:  Your Honor, that's when I had my --
 7           THE COURT:  I denied --
 8           MR. PEQUENO:  Okay.
 9           THE COURT:  -- the motion to convert.  Isn't that
10   correct?
11           MR. SCHMIDT:  Yes.
12           MS. HOWER:  Yes, Your Honor.
13           THE COURT:  When?  Anybody know?
14           MS. HOWER:  Your Honor, I don't have that date in
15   here.
16           MR. PEQUENO:  November the 7th, Your Honor.
17           THE COURT:  Of what?
18           MR. PEQUENO:  Because originally, you had --
19           THE COURT:  November of '02?
20           MR. SCHMIDT:  That sounds right, Your Honor.
21           THE COURT:  And then you appealed that to Judge
22   Hanen, and Judge Hanen granted your motion to convert, or told
23   me to grant it, on when?
24           MR. PEQUENO:  On April of this year.
25           THE COURT:  April of '04.
```

1    MR. PEQUENO:  And then you granted it on --

2    THE COURT:  For the appeal granted.  And it was

3    converted when?

4    MR. PEQUENO:  Converted, according to your order,

5    July 20th.  And you gave me three days to file a Chapter 13

6    plan.

7    THE COURT:  July 20th.

8    MR. PEQUENO:  Of this year.

9    THE COURT:  And I gave you how many?

10   MR. PEQUENO:  Three days, Your Honor.

11   THE COURT:  20th was --

12   MR. PEQUENO:  July the -- to July 23rd.

13   THE COURT:  -- converted.  And you filed it on what

14   date?

15   MR. SCHMIDT:  July 23rd.  That's exhibit --

16   MR. PEQUENO:  The same day --

17   THE COURT:  July 23rd.  And that provided for $500 a

18   month?

19   MR. PEQUENO:  Yes, Your Honor.  But I guess -- well,

20   my house is in litigation.  The majority of the secured was for

21   the house.

22   THE COURT:  All right.  And then no payments were

23   made until when?  When was the first payment made?

24   MR. PEQUENO:  The first payment was due April, excuse

25   me, September the 4th.  But I called, that's when I called --

1          THE COURT:  Well, the first payment, if you filed the

2     plan on the 23rd, the first payment was due 30 days later.

3     That would have been by August the 23rd.  Right?

4          MR. PEQUENO:  Right.

5          THE COURT:  Or did your plan provide you were going

6     to pay them starting a different date?

7          MR. PEQUENO:  No, that it would be within 30 days of

8     the --

9          THE COURT:  All right.  So --

10         MR. PEQUENO:  Which I have --

11         THE COURT:  And you did not pay August --

12         MR. PEQUENO:  I have now paid them, Your Honor.

13         THE COURT:  -- September, October or November.  Is

14    that correct?  When did you make a $500 payment?

15         MR. PEQUENO:  It's right there, Your Honor.  It's on

16    the exhibit list.

17         THE COURT:  What date?  Just tell me the date.

18         MR. PEQUENO:  Let's see.  Okay.  I believe it was

19    Monday, Your Honor.

20         THE COURT:  Monday?

21         MR. PEQUENO:  December -- November 29th.

22         THE COURT:  November the 29th?

23         MR. PEQUENO:  Yes, Your Honor.

24         THE COURT:  Okay.  So then on November 29th, you made

25    a $500 payment.

1    MR. PEQUENO:  I also stipulated, if I may add, Your

2  Honor, all creditors with proof of claims, with the exception

3  of successful objections, will be paid 100 percent from

4  Debtor's final judgment that's before the Fifth Circuit.

5    THE COURT:  Okay.  Then you filed a new plan when?

6    MR. PEQUENO:  On Tuesday.  Well --

7    THE COURT:  Tuesday.  That would have been the 30th?

8    MR. PEQUENO:  No.  The same day, the 29th.

9    THE COURT:  Okay.  So on the 29th --

10    MR. PEQUENO:  It's on file.  It's on the docket.

11    THE COURT:  -- of November, new plan.

12    MR. PEQUENO:  We were waiting -- after Ms. Hower gets

13  it, then we were going to go into confirmation.

14    THE COURT:  And that's $100 a month?

15    MR. PEQUENO:  Yes, Your Honor.

16    THE COURT:  All right.  Now, the claims you have on

17  file include Mr. Schmidt for 41,000.  What else?

18    MR. PEQUENO:  He's an objection right now.  And the

19  other ones are mainly creditors, unsecured creditors.

20    MR. SCHMIDT:  $116,000 in credit card debt.

21    THE COURT:  Are all of them objected to?

22    MR. PEQUENO:  No, Your Honor.

23    THE COURT:  Which ones are not -- how much are

24  unobjected to?

25    MR. PEQUENO:  The majority -- it's only to Pelos

```
 1    (phonetic), because they listed themselves as --

 2              THE COURT:  Okay.  So the majority of the 116, so

 3    that would be -- is there 116 over and above Mr. Schmidt's

 4    claim, or including Mr. Schmidt's claim?

 5              MR. PEQUENO:  That's not including his.

 6              THE COURT:  So there's basically $150,000 in claims?

 7              MR. PEQUENO:  If you would, yes, if you would include

 8    his.

 9              THE COURT:  What about -- are those all unsecured?

10              MR. PEQUENO:  Yes, Your Honor.

11              THE COURT:  Okay.  Do you also have Aurora Loan

12    Services for 15,000?

13              MR. PEQUENO:  That's the one I'm telling you that

14    they foreclosed that house, and I'm in an adversary, and I'm

15    trying to get it back.  Once I get it back, I can schedule it

16    into the plan.  Or if a judgment comes in from the Fifth

17    Circuit, I will pay it with that.  But I'm trying to get my

18    house back in adversary.

19              THE COURT:  Okay.  So that claim is not due right

20    now, because you don't have the house.

21              MR. PEQUENO:  That's correct, Your Honor.  They

22    didn't even file --

23              THE COURT:  Do you have a car loan still?

24              MR. PEQUENO:  I have -- yes, I do.

25              THE COURT:  And is it being paid through the plan or
```

1   not through the plan?

2         MR. PEQUENO:  No.  I'm going to pay it outside the

3   plan.

4         THE COURT:  Okay.  And your plan now provides for

5   $100 a month for 48 months?

6         MR. SCHMIDT:  36 months.

7         MR. PEQUENO:  36 months, under the law, Your Honor.

8         THE COURT:  36 months at $100 a month?

9         MR. PEQUENO:  Yes, Your Honor.

10        THE COURT:  Okay.  And what's set tomorrow?

11        MR. PEQUENO:  Tomorrow is the issue of that Trustee,

12  Chapter 13 Trustee fix the delinquency not to have my record

13  reflect that I owe 16,000, because they're moving it all the

14  way to the beginning.

15        THE COURT:  A motion to fix the delinquency.

16        MR. PEQUENO:  Well, I didn't --

17        MR. SCHMIDT:  Motion to compel.  He filed a motion to

18  compel them --

19        THE COURT:  To compel the Trustee --

20        MR. SCHMIDT:  -- to correct their records.

21        THE COURT:  -- to have her records indicate that

22  you're only, what, zero behind?

23        MR. PEQUENO:  No, that -- to reflect where I properly

24  start, and where I converted.

25        THE COURT:  Okay.

1    MR. PEQUENO:  Because they're showing a

2  delinquency --

3         THE COURT:  Okay.  Ms. Hower --

4         MS. HOWER:  Yes, Your Honor.

5         THE COURT:  -- if the plan provides for 36 --

6         MS. HOWER:  Pardon me?

7         THE COURT:  If the plan provides for 36 months at

8  $100 a month, is there any way that it's confirmable?

9         MS. HOWER:  Well, if we're just paying unsecured debt

10 and if the plan provides for a lump sum payment in a reasonable

11 period of time, as he says he's going to pay in a certain

12 amount over -- that's going to pay all of the debts at 100

13 percent, we might consider confirmation of such a plan, if

14 there was a reasonable expectancy that that amount, that lump

15 sum payment is going to be paid in.  We normally would expect

16 any lump sum payment to be paid in within 24 months.  And

17 Mr. Pequeno's running very short on time to get that done,

18 because of the amount that, or the time limit on his plan.

19         So I think that we would probably leave that to Your

20 Honor's call, as to whether or not that would be a confirmable

21 plan.  I would be reluctant to approve it.

22         MR. PEQUENO:  As far --

23         THE COURT:  Okay.  Well, Mr. Schmidt, your claim is

24 a --

25         MR. SCHMIDT:  Priority administrative --

```
 1              THE COURT:  -- priority claim.  Okay.  So you filed
 2    an objection to Mr. Schmidt's claim?
 3              MR. PEQUENO:  Yes, Your Honor.
 4              THE COURT:  And you filed a claim for $41,000?
 5              MR. SCHMIDT:  I did, Your Honor.
 6              THE COURT:  So it seems to me that if your plan, if
 7    your claim is of a value of more than $3600, this plan is not
 8    confirmable.
 9              MR. SCHMIDT:  That's correct, Your Honor.
10              THE COURT:  So it seems to me that the issue needs to
11    be decided in the context of your claim.  So when are you going
12    to be ready to litigate Mr. Schmidt's claim?
13              MR. SCHMIDT:  We've already litigated it, Your Honor.
14              MR. PEQUENO:  Well --
15              MR. SCHMIDT:  You've denied his objection.  He's
16    appealed it to the District Court.
17              MR. PEQUENO:  Your Honor, when we came before the
18    Court, you said it was premature to file a motion.  I found out
19    that he knew he allowed the creditors to be discharged,
20    originally in the Chapter 7, while he was negotiating the
21    settlement of the final judgment.  And that's the main, the
22    main thing.  And he objected on filing, for me going to a
23    Chapter 13.
24              THE COURT:  Okay.  Did we litigate the issue?  I
25    don't remember litigating his claim.
```

1           MR. PEQUENO:  We really didn't litigate it, Your

2  Honor.  We just talked about it --

3           MR. SCHMIDT:  We have.

4           MR. PEQUENO:  -- right before you.  We didn't have

5  like to show you --

6           THE COURT:  Do you have a copy of your claim there?

7           MR. PEQUENO:  I did show you the exhibits, Your

8  Honor, but we had an issue about admitting them.  And then you

9  said that the --

10          THE COURT:  You don't?

11          MR. SCHMIDT:  I do not.  Your Honor, there's an order

12  entered.  You signed -- we had a hearing.  You overruled --

13          THE COURT:  It's been appealed.

14          MR. PEQUENO:  It's been appealed.  It's been

15  appealed, Your Honor.

16          MR. SCHMIDT:  If he'll look at his Exhibit Number 2,

17  he tells you all of that.  He tells you that it's -- the date,

18  and certainly it's on the docket.  The Court could take

19  judicial notice of it.

20          MR. PEQUENO:  When I talked to Chapter 13 Trustee,

21  Your Honor, she told me to file a formal objection to the

22  claim, which I did, to confirm, you know, to -- according with

23  the -- I told her that I had already filed a motion to deny

24  those administrative fees also.  And --

25          MR. SCHMIDT:  In Paragraph 2, Your Honor, he says,

1   "Debtor has filed a motion to deny administrative and all

2   recovery fees to Chapter 7 Trustee Michael Schmidt and

3   (indiscernible) firm."  And then he says, "This same motion is

4   now on appeal, Number 04-74, to the U.S. District Court."

5           THE COURT:  I mean, have we looked at your expenses

6   and your fees and decided that they were all reasonable?

7           MR. SCHMIDT:  They were --

8           MR. PEQUENO:  No, Your Honor.

9           MR. SCHMIDT:  Your Honor, yes.  They were attached to

10  my proof of claim, which were --

11          THE COURT:  Do we have a claims objection to your

12  proof of claim?

13          MR. SCHMIDT:  He filed it.

14          MR. PEQUENO:  I filed a motion and a --

15          THE COURT:  Okay.  We had a hearing over that.  And

16  when was that hearing?

17          MR. SCHMIDT:  We had a hearing, and Your Honor

18  entered an order denying it.  And that was a couple of months

19  ago, Your Honor.

20          MR. PEQUENO:  I believe, Your Honor, you didn't look

21  at the detail as far as -- you just looked, you know --

22          THE COURT:  Did what?

23          MR. PEQUENO:  I believe you didn't really look at the

24  detail, but you just said that you were going to have to deal

25  with administrative expenses.  But you know --

1    THE COURT:  I did say that you would have to deal

2  with administrative expenses, but I don't remember -- I mean,

3  there's no question that if your case is converted from 7 --

4    MR. SCHMIDT:  To 13.

5    THE COURT:  -- to 13, you have to deal with the 7

6  expenses.

7    MR. PEQUENO:  These were attorney services, though,

8  Your Honor.  And I don't know, it was just as a Chapter 7,

9  these were attorney services that he's charging from his firm,

10  because he hired his own firm, attorney John Vardeman.

11    THE COURT:  Okay.  And the Code specifically allows

12  Chapter 7 Trustees to hire their own firm as --

13    MR. PEQUENO:  No.

14    THE COURT:  Because it's usually cheaper.

15    MR. SCHMIDT:  And Your Honor authorized that

16  employment by order.

17    THE COURT:  There's nothing unusual about that.  I

18  mean, you know, that happens everywhere.

19    MR. PEQUENO:  Right.

20    THE COURT:  I mean, it's not like -- now, if there's

21  some indication that --

22    MR. PEQUENO:  Well --

23    THE COURT:  -- the Trustee hiring his own firm

24  expends more money rather than less money, then that's

25  certainly something we need to hear about and find out about

```
 1    it.  But normally, it costs less because --
 2              MR. PEQUENO:  Uh-huh.
 3              THE COURT:  Because --
 4              MR. PEQUENO:  Well, in this case -- excuse me, Your
 5    Honor.  It's costing a lot of money that I think that was
 6    unnecessary.  But the other issue, I did bring up to you that I
 7    did have -- there was a conflict of interest that was, that
 8    Mr. Trustee Schmidt had, and I did inform the Court, and I did
 9    give you the evidence.  And --
10              THE COURT:  And what conflict of interest is that?
11              MR. PEQUENO:  He was aware the creditors were told,
12    originally in the Chapter 7, they were told that they were not
13    to file proof of claim.  During this time period that they were
14    told, because they had to file a proof of claim by August 13,
15    2002, after the first creditors' meeting, which was in June
16    14th.  Well, in May, May 21, the notice was sent to all the
17    creditors and the Debtor and the Trustee that the -- not to
18    file a proof of claim, because there was no asset.  This was a
19    no-asset case.  And the facts are that it was not -- that the
20    opposite was true.  Trustee Schmidt was negotiating for the
21    settlement of the judgment.  In fact, he didn't communicate to
22    them until after October --
23              THE COURT:  Okay.  I'm not sure what that has to do
24    with this conflict of interest.
25              MR. PEQUENO:  Well, Your Honor --
```

1    THE COURT:  The Clerk's Office sends out the Notice

2  of No Asset, based on what you file.  You file a -- you file

3  your bankruptcy, which was a Chapter 7.

4    MR. PEQUENO:  Right.

5    THE COURT:  You listed what the assets were --

6    MR. PEQUENO:  Right.

7    THE COURT:  -- which you listed as zero.  The Clerk's

8  Office takes that and notices out that you don't need to file a

9  claim because it's a no-asset case --

10    MR. PEQUENO:  Your Honor --

11    THE COURT:  -- and appoints a Trustee.

12    MR. PEQUENO:  Right.

13    THE COURT:  The Trustee, if he finds something, then

14  he has the obligation to then notice all the creditors that

15  there's assets and that they can file a claim.

16    MR. PEQUENO:  Okay.

17    THE COURT:  But the mere fact --

18    MR. PEQUENO:  The Trustee --

19    THE COURT:  -- that a no-asset case went out happens

20  all the time.

21    MR. PEQUENO:  The Trustee had a responsibility to

22  tell the creditors that he was negotiating for a judgment, and

23  for them to file a proof of claim.  Because one of the big

24  issues that came on later was all your creditors have been

25  discharged, Mr. Pequeno.  Why do you want to go to a 13?

1   There's no creditors.  All of them have been discharged.  But

2   the reason, Your Honor, that they were discharged was because,

3   even Trustee's on record that he didn't object because it

4   wasn't expedient to do.  That's what he said before Judge

5   Hanen's Court.

6           THE COURT:  Didn't object to what?

7           MR. PEQUENO:  To discharge, to opposing to the

8   discharge of -- because he was negotiating -- it's on record by

9   his own admission --

10          THE COURT:  Okay.  This is a case where a Chapter 7

11  discharge was granted, and then it was converted to 13.

12          MR. SCHMIDT:  And he came back and revoked his

13  discharge so it could stay in 13.

14          THE COURT:  Okay.  You revoked your own discharge.

15  Okay.

16          MR. PEQUENO:  Because that's what the Court wanted in

17  order for me to show a good faith that I'm going into a 13 and

18  I'm going to -- I'm planning to get my house back, Your Honor.

19          THE COURT:  Okay.  And we went out of our way to try

20  to give you time to file a Chapter 13 plan, because you won on

21  appeal.

22          MR. PEQUENO:  Your Honor, I don't have -- I don't

23  control the confirmation dates and the times and the hearings.

24          THE COURT:  Doesn't have anything to do with that.

25  You filed a plan that provided for $500 a month, and then you

1   didn't make any payments, until now.

2          MR. PEQUENO:  There is a --

3          THE COURT:  And now you filed another plan that's

4   $100 a month, which $100 a month won't pay off any of the

5   administrative expenses.

6          MR. PEQUENO:  This is a --

7          THE COURT:  I mean, it will pay off just a small

8   amount of them.

9          MR. PEQUENO:  This is a 100 percent plan, Your Honor,

10  that I will --

11         THE COURT:  Well, you've got -- other than

12  Mr. Schmidt, you've got $100,000 in debt.

13         MR. PEQUENO:  Right.

14         THE COURT:  How are you going to pay $100,000 in debt

15  at $100 a month?

16         MR. PEQUENO:  I won a 400,000 judgment, Your Honor,

17  that is probably going to be more now because of all the damage

18  that they've done to me already.  And it's just waiting to --

19  in fact, Trustee already told them that they can go ahead and

20  proceed with a decision up there, because supposedly, he was

21  holding up the decision at the Fifth Circuit, because he said,

22  well, we're converting Mr. Pequeno back to a 7 over here.

23         THE COURT:  Okay.

24         MR. PEQUENO:  And you ruled, Your Honor, you ruled

25  no.

1   THE COURT:  Okay.  Well, I'll need to review my, the

2   record of the hearing on Mr. Schmidt's fees.  And I'll take

3   this matter under advisement.  Thank you, Mr. Pequeno.

4   MR. SCHMIDT:  Thank you, Your Honor.

5   (Proceedings concluded at 10:46 a.m.)

6

7

8

9

10  I, court approved transcriber, certify that the foregoing is a
    correct transcript from the official electronic sound recording
11  of the proceedings in the above-entitled matter.

12

13  _____    _____
    Molly Carter                 Date
14

15

16

17

18

19

20

21

22

23

24

25