1   not, no, Your Honor.  When it was settled, I was in a Chapter

2   13.  The trustee is trying to use a settlement that's not valid,

3   that is void, and --

4        THE COURT:  I thought -- let me back you up for a

5   minute.  I thought it had settled prior to it ever -- the appeal

6   ever getting to me on the first issue.  The settlement hadn't

7   been consummated, as I understand it, but I thought the

8   settlement was agreed to basically but for bankruptcy court

9   approval.

10       MR. PEQUENO:  It was approved.  I objected.  It got

11   reversed on appeal, Your Honor.  It got reversed on appeal.

12       THE COURT:  Mr. Schmidt, what's the status of that?

13       MR. SCHMIDT:  Your Honor, the settlement was approved by

14   the bankruptcy court, and it was part of the original appeal to

15   Your Honor.  And when Your Honor ruled, you ruled that the --

16   the settlement issue, the correctness or incorrectness of the

17   approval of the settlement really hinged on whether or not he

18   was in 13 or seven.

19       THE COURT:  Right, because it depended on who got to say

20   okay.

21       MR. SCHMIDT:  Exactly, Your Honor.  And so now that the

22   case has been reconverted to seven, Mr. Pequeno filed a motion

23   with the bankruptcy court to vacate that settlement, which was

24   denied, which was what he was mentioning earlier is on its way

25   up here.

1    THE COURT:  Okay.  All right.  Well, what is -- from the

2    trustee's standpoint, what is left to do in the bankruptcy?

3    MR. SCHMIDT:  Your Honor, we're in the process of trying

4    to close the case from an administrative standpoint, so I think

5    the case is pretty much over.

6    THE COURT:  Here's what I'm -- I'm working up just to

7    one thing even just procedurally.  I'm trying to figure out why

8    I'm ruling on these things piecemeal; why I just don't do it all

9    at once.  And if I have three more appeals coming on three more

10   issues -- and I'm setting aside the 135 case for a minute, and

11   I'll get to y'all in a minute on that.

12   MR. SCHMIDT:  And the 169 case, because I think it is --

13   THE COURT:  Well, the 169 case, I don't -- one way or

14   the other, I don't think I have jurisdiction.

15   MR. SCHMIDT:  I don't think you do either, Your Honor.

16   I have a letter from the court of appeals dated September 28th

17   that says that there are -- there were two appeals, and I assume

18   those are the two that he's talking about.  Both of these have

19   been dismissed on behalf of --

20   THE COURT:  I don't have that letter.

21   MR. PEQUENO:  I can show you the live one.

22   MR. SCHMIDT:  There may be a third appeal he's talking

23   about.

24   MR. PEQUENO:  The one he's talking is a duplicate that

25   they set up a number and then dismissed it.

1        THE COURT:  Okay.  So there's yet a third appeal?

2        MR. PEQUENO:  Well, the third is the August 15, Your

3   Honor.  The first two are one and the same.

4        THE COURT:  Okay.  All right.  But, Mr. Pequeno, whether

5   Mr. Schmidt's right and all the appeals have been dismissed or

6   whether you're right and there's still the third appeal, the 5th

7   Circuit has that, I mean, you'll both agree that either way --

8   regardless of who's right, I don't have jurisdiction.

9        MR. SCHMIDT:  I don't think you do, Your Honor.

10       MR. PEQUENO:  Yeah.  I just want to reiterate that it's

11  in the docket.

12       THE COURT:  All right.  So let's set 169 aside for a

13  minute.

14     Procedurally, is there any reason I can't consolidate these

15  all into one case, like put them all into B-05-70?

16       MR. SCHMIDT:  None that I know of, Your Honor.

17       THE COURT:  So we can't -- we don't have to be filing

18  everything under a separate number and I don't have to try to

19  figure out which case we're talking about?

20       MR. PEQUENO:  Well, Your Honor, is that similar or

21  separate issues?  Is that -- you know.

22       THE COURT:  Well, yeah, but this way I'll just write one

23  opinion.  I can write an opinion that covers a variety of

24  things.  It makes it easier for you-all and easier for the

25  clerk's office.

```
 1        MR. SCHMIDT:  I agree, Your Honor.

 2        THE COURT:  Mr. Pequeno, if you object to that, I'm not

 3   hung up on this.  I'm trying just to make the bookkeeping

 4   easier.

 5        MR. PEQUENO:  If it's easier for the court, Your Honor,

 6   I'm for that too.

 7        THE COURT:  All right.  Here's what I'm going to --

 8   Cristi, how hard is this -- is the clerk's office going to go

 9   into apoplexy if I do this?

10        MR. SCHMIDT:  Your Honor, if I could for a moment.  70

11   has -- before the court dismissed it, Mr. Pequeno had filed a

12   brief and I had filed a response brief, so you got briefs in

13   that matter already before you.  I think he's even filed a reply

14   brief to my response brief.  So that may cause confusion if

15   we're going to file -- have to file other briefs.

16        MR. PEQUENO:  There's a -- on all the first four, Your

17   Honor, briefs have been filed.  Everything except 169.

18        THE COURT:  Okay.  Is everything fully briefed on the

19   first four, Mr. Pequeno, from your standpoint?

20        MR. PEQUENO:  I just need some reply on -- I need some

21   reply briefs, Your Honor, to do on Negrin's, on 135, and on 71

22   and 104.

23        THE COURT:  All right.  I'll tell you what.  I'm just

24   going to leave them separate.  I'm going to leave them separate.

25   But, Mr. Pequeno, it would be easier and it would be cheaper for
```

1    you if you have more appeals that I'm going to see, if you'd put

2    them all in the same appeal.

3        MR. PEQUENO:  Well, Your Honor, can I -- well, can I do

4    that?  Because they're coming at different stages in

5    different --

6        THE COURT:  Well, I don't want to tell you you can do

7    that or not do that because I hate to tell you that.  I don't

8    know the time deadlines you're going to be under, so if you have

9    to do them this way, do them this way.

10       MR. PEQUENO:  That's the way -- they've been coming this

11   way, Your Honor.

12       MR. SCHMIDT:  Your Honor, as a possible solution, I

13   would be happy, if -- to respond to all of those with one brief.

14       THE COURT:  Well, no.  It's almost easier now if I keep

15   them separate.  Let's do them separately.

16       All right.  I think I understand, Mr. Pequeno, your position

17   on these things; and, Mr. Schmidt, I think I probably understand

18   yours.  Let me talk to Mr. Negrin.  Is it Negrin or Negrin?

19       MR. NEGRIN:  Negrin.

20       THE COURT:  Let me talk to Mr. Negrin and Mr. Robertson,

21   and tell me about y'all's position on this and give me your

22   version of the history of this.

23       MR. NEGRIN:  Rob Negrin again, Judge, for Aurora.  At

24   the time that Judge Schmidt lifted the automatic stay, the

25   motion that was before him was a motion filed under 362 and

```
1     under 4001 of the Federal Rules of Bankruptcy Procedure and the

2     local rule which require a response by Mr. Pequeno.  Mr. Pequeno

3     is a debtor in a Chapter 7 case at that time, did not object to

4     the motion for relief, and it was routinely granted under a

5     default order.

6         Subsequent to that, Mr. Pequeno filed a motion for

7     reconsideration which came to Judge Schmidt, and Judge Schmidt

8     said, "Yeah, I'll take a look at it again."  Mr. Pequeno thought

9     at that position -- or at that point that the stay was

10    reinstated.  It wasn't.  Aurora went ahead and foreclosed and

11    sold to my co-defendants, which are represented here by the

12    gentleman seated at the table.

13        The house was sold to a third party purchaser.

14    Mr. Pequeno's position was that --

15            THE COURT:  Mr. Robertson, Mr. De La Fuente is the buyer

16    of the property?

17            MR. ROBERTSON:  He was one of the buyers, yes, Your

18    Honor.

19            THE COURT:  All right.

20            MR. NEGRIN:  The automatic stay was lifted at the time

21    that the foreclosure occurred.  You know, right, wrong or

22    indifferent, the stay was lifted, and it's been Aurora's

23    position that's supported by a multitude of case law that says

24    when the stay is lifted, the stay is lifted.

25        It was not reinstated, as Mr. Pequeno has argued and has
```

1   briefed, and Judge Isgur agreed with the position of Aurora and

2   granted Aurora's 12B6 motion when the adversary proceeding was

3   filed by Mr. Pequeno.

4        THE COURT:  Did Judge Schmidt ever rule on the motion to

5   reinstate the stay?

6        MR. NEGRIN:  No, Your Honor.  The only thing that he

7   stated was what was briefed and what was stated on the record,

8   "I'll consider it.  I'll reconsider it."  No order was ever

9   entered subsequent to that one, which was the basis of Judge

10  Isgur's opinion in the case, which I think Your Honor has, or I

11  have a copy if you'd like to see another one.

12       THE COURT:  Okay.

13       MR. NEGRIN:  His position was essentially, you know,

14  we've got to rely on written orders.  We can't -- you know, this

15  is something that has to be reduced to writing.  And it wasn't,

16  so the only order in effect at the time of Aurora's foreclosure

17  was the default order lifting the automatic stay.

18      Mr. Pequeno, I believe, Your Honor, is operating throughout

19  the case under the assumption that if the case had simply been

20  converted to a Chapter 13, that the automatic stay would have

21  been reaffected, and that's not what case law reads.  The effect

22  is the case -- once the stay is lifted, regardless of whether

23  the case is converted, the stay has to be reinstated if that's

24  the relief that a particular debtor is seeking.

25       THE COURT:  Well, wasn't the house foreclosed upon

```
 1   before I ruled on his right to convert?

 2        MR. NEGRIN:  Yes, Your Honor.  But my point is it

 3   wouldn't have had any effect is right.

 4        THE COURT:  I guess what I'm asking is you're saying it

 5   wouldn't have any legal effect.  I'm saying or asking, wasn't it

 6   a done deal before he was ever granted permission to convert?

 7        MR. NEGRIN:  It was a done deal, and that's an important

 8   distinction, because Chapter 13 allows a deacceleration of a

 9   mortgage and to pay them out over the terms of a confirmed plan

10   if, at the point of the filing or confirmation of the plan, the

11   house has not been foreclosed.  So by virtue of the fact that it

12   had been, it wouldn't have gone back into the Chapter 13 estate

13   anyway.

14      So that's Aurora's position.  I've briefed, Your Honor.  I

15   filed last week on the 12th, and Mr. Pequeno, I believe, has a

16   deadline for replying of next Monday, and the case will be ripe

17   for a decision.

18        THE COURT:  Mr. Robertson, do you want to add anything

19   to that?

20        MR. ROBERTSON:  No, Your Honor.

21        THE COURT:  Mr. Pequeno, why don't you tell me -- now

22   I'm asking you something substantively, not procedurally.  I

23   mean, what -- what did Aurora do wrong?

24        MR. PEQUENO:  The --

25        THE COURT:  I mean, I assume this is a wrongful
```

1   foreclosure claim.

2       MR. PEQUENO:  It is, Your Honor.

3       THE COURT:  For there to be wrongful foreclosure, there,

4   by definition, has to be something wrong.

5       MR. PEQUENO:  On June the -- it's not me.  He claims

6   that I'm saying it.  It's the court on June the 5th.  I filed a

7   motion to reconsider the lifting of the stay because they lacked

8   cause, Your Honor.

9       THE COURT:  Right.  On June the 5th --

10      MR. PEQUENO:  On June the 5th --

11      THE COURT:  -- of what year?

12      MR. PEQUENO:  -- of 2002.

13      THE COURT:  Okay.

14      MR. PEQUENO:  But they lifted the stay because I got --

15  I got confused with the hearing date, and they went ahead and

16  ruled unopposed.  They got an unopposed order, but --

17      THE COURT:  Okay.  All right.  Hold on.  Let's take it

18  there.  They've got an unopposed order now.  The stay is lifted.

19  So, I mean, they could run out and foreclose as long as they did

20  it according to whatever contractual obligations and whatever

21  the rules of the State of Texas have to do.

22      All right.  Then what happened next?

23      MR. PEQUENO:  I filed -- I filed a reconsideration of

24  Rule 59E within ten days.

25      THE COURT:  Right, okay.

1    MR. PEQUENO:  And then the judge set a hearing for it

2    for June the 5th.  In the hearing, I told the judge that I had

3    $30,000 equity in the home, and what Aurora had told them was

4    not true.  And I presented it to the court.  The judge said --

5    also at that time I hadn't filed all my schedules, all my other

6    stuff, things for the bankruptcy.  And I had told the judge that

7    I needed to convert to a Chapter 13 and -- because I wanted

8    my -- I wanted to be able to save my home.

9        He said, "Well, you can't do it in a seven.  You have to

10   move to a 13."  And he said, "Based on the fact that there is

11   equity in the home, we're going to -- we're going to reconsider

12   the motion to lift the stay," and he set the hearing for

13   August -- and it's in the transcript, and it's part of the

14   record, Your Honor.

15       THE COURT:  Okay.

16       MR. PEQUENO:  It's not something I said.  It's something

17   that the court --

18       THE COURT:  No, and I'm taking your word for it.

19       MR. PEQUENO:  And then on August the 7th, the judge said

20   "I hereby -- I -- you will be converted to a 13."  And he

21   said -- he said to the Aurora representative, he said -- they

22   mentioned, "Well, the stay has been lifted."  The judge said,

23   "Yes, but Mr. Pequeno can confirm.  He can show me a plan.  I'm

24   going to -- that I can confirm.  And once I confirm, you have a

25   new contract."  That's what he -- that's what he told both of

1    us.

2        So he did not rule on the motion -- on the -- to reconsider

3    to lift the stay because, in effect, when he ruled it on June

4    the 5th, how can -- my issue is that the judge ruled that they

5    lacked cause, so how could they have lifted the stay if they

6    lacked cause from the very beginning?  And then the judge said,

7    "I rule that I'm going to give you time to -- you know, to

8    comply with the 13."

9        But that's when trustee objected all -- all against it up to

10    now.

11        THE COURT:  Okay.  But was -- at any point in time, was

12    the stay reimposed?

13        MR. PEQUENO:  He orally ruled that he would reconsider

14    Aurora's motion to lift stay.  He orally ruled on June the 5th.

15        THE COURT:  Okay.  But what I --

16        MR. PEQUENO:  Excuse me.  And on August the 7th, he

17    said, "This is the vehicle that you can get a new contract with

18    Aurora.  If you do it, then you can save your house.  If you

19    don't do it, then Aurora can sell it."

20        That is my position.  And they're saying that I'm conjuring

21    something up.  It's what the court said, Your Honor.

22        THE COURT:  I think what they're saying is, and I think,

23    Mr. Negrin, you can correct me if I'm putting words in his

24    mouth, he's saying, "Yes, that all happened, but he never

25    reimposed the stay.  And since he never reimposed the stay and

1    since you hadn't paid us, we foreclosed."

2          MR. PEQUENO:  Your Honor, the court specifically told to

3    both parties the situation.  And I even sent, you know, mail as

4    to what the court had said.  The court specifically said,

5    "Motion to reconsider Aurora's motion to lift stay."  What does

6    that mean?

7          THE COURT:  That means he'll think about it again.  But

8    it doesn't change any existing order he's already given.  That's

9    the problem.  I mean, that's -- I think that's the difference

10   where you're hung up on and what -- and what they're saying.

11   They're saying, yeah, he can reconsider it, but he never told us

12   not to do it.  And I think you took his words of saying, "Yes,

13   I'll reconsider it," as in, "All right.  Everything's stayed

14   until I have time to reconsider it," which I don't hear you

15   saying happened.

16         MR. PEQUENO:  Your Honor, on August the 7th he said,

17   "You will have a -- if you comply with bankruptcy rules of

18   confirming, giving me your Chapter 13 plan and confirming, you

19   have a new contract."  He even told them.

20         THE COURT:  Okay.  But let me --

21         MR. PEQUENO:  He told Aurora that.

22         THE COURT:  Did you ever get a Chapter 13 plan

23   confirmed?

24         MR. PEQUENO:  Yes -- no, because trustee contested it

25   because he said I would lose ownership of the $400,000.  So he

1    was contesting that aspect of it.

2        THE COURT:  Wait a minute.  When he said -- when you

3    say, "I will lose," do you mean the trustee would lose?

4        MR. PEQUENO:  Excuse me?

5        THE COURT:  Okay.  Well, let me put it this way.  If

6    you're in a 13 and it's -- then you would have control over the

7    settlement of the lawsuit.  Am I wrong about that or right?

8        MR. PEQUENO:  I would have control, yes, Your Honor,

9    plus my home.  My whole issue in this thing was to save my home,

10   Your Honor.

11       THE COURT:  No, I understand that.  I understand that,

12   and I understood it at the time you appealed it.

13       MR. PEQUENO:  Another, Your Honor, that I do want to add

14   is on -- after -- on November the 7th, Judge Schmidt said in the

15   transcript, if they sold your house, Mr. Pequeno, they must

16   have -- there was an order -- there was an order and stay.

17   There was -- he said because -- when he ruled against me not to

18   go into the 13, he said I did give you the opportunity -- you

19   know, I did motion -- they were not supposed to foreclose your

20   house.  He said if I need to enter some papers, I will.  But he

21   said -- but that's dependent if you accept trustee's settlement.

22       And I said well, the settlement's not right because he

23   didn't have authority to begin with.  But the judge did state

24   that, that -- I believe that the court was giving me an

25   opportunity -- and it's in the transcript.  It's not something

1    that's before the hearing.

2        THE COURT:  No, I'm familiar with this part of the

3    transcript.  I remember it.  This all happened before or at

4    the -- contemporaneously when it was appealed to my court the

5    first time, because I knew that was your motivation from the

6    arguments in the first case.  And by motivation, I mean trying

7    to save your house.

8        All right.  Is there any reason -- Mr. Pequeno, you have

9    some reply briefs you want to file in one of these four cases.

10   How much time do you need to do that?

11       MR. PEQUENO:  Your Honor, not more than 30 days.

12       THE COURT:  All right.  Here's what I want to do.  All

13   right.  Mr. Pequeno, I'm going to give you until the 18th of

14   November.  That's basically 30 days, maybe 31 there, to file

15   whatever you need to file.

16       Counsel, is there anything -- are y'all ready to go?  Am I

17   ready to rule from your standpoint, or do you need to do

18   anything?

19       MR. NEGRIN:  Aurora is ready for Your Honor to rule.

20       MR. ROBERTSON:  We're ready, Your Honor.

21       MR. SCHMIDT:  Fine with me.

22       THE COURT:  So, Mr. Pequeno, you've got those 31,

23   however many that works out to be, but until November 18th to

24   rule.  And that's -- just so you know, that's the Friday before

25   Thanksgiving.  I'm sitting here looking at my calendar.

And then I'm probably going to rule on these -- well, I am going to rule on them individually, and I'm just going to go bam, bam, bam right down the line and rule on them.

If there is a motion over which I have questions or want to hear more of, I'm more than likely to just schedule a phone conference. And I know some of y'all traveled to be here today, and I appreciate it, but I -- I'm trying to get, you know, a handle over all four of these and why there are four separate ones instead of one big one. And if there becomes a problem, obviously communicate to me, with me through Cristi, and she can -- but I plan on going ahead and ruling on these and getting them done as fast as I can, because I know this has lingered on forever.

I'm obviously not going to rule on 169 because as far as I'm concerned, this court doesn't have jurisdiction over 169, and that -- you know, it's either in the 5th Circuit, if Mr. Pequeno is right, or it's already been through the 5th Circuit, if Mr. Schmidt is right. But either way, it's out of my court.

If there are more appeals, I'm thinking do you want them consolidated in this court? Is there a desire of the parties to do that, or you just want to file them and let them fall where they may?

MR. PEQUENO: I think because of the way the times are, and they're ruled on different times, I don't see how you can do it any other way, Your Honor, right now.

1          THE COURT:  What do you mean by do it any other way?

2          MR. PEQUENO:  Because I have to appeal them, you know,

3     within the ten days.

4          THE COURT:  No.  I guess -- but what I can do, if

5     it's -- I'm not going to do this on my own, but if y'all -- if

6     you as a group want me to or maybe you do it individually if

7     they fall into Judge Tagle's court, you can file a motion to

8     bring them over here, and that's probably the cleanest way to do

9     it if one of you do that.  But you can -- you can tell Judge

10    Tagle, whoever files the motion, if you want to do that, that I

11    am anticipating those appeals and that I would take them if she

12    so desires me to.

13         MR. PEQUENO:  I do -- well, sorry, Your Honor.  I just

14    wanted to add, there was a -- I made a payment to one of the

15    appeals, bankruptcy appeals, but they misapplied it to another

16    one.  How do I correct that?  Do I go to one of your clerks or a

17    court's order?  Because the clerks downstairs, I give them a

18    letter and I tell them where to apply it.  And then when I look

19    at the docket, it's somewhere else.

20         THE COURT:  Tell me, what are the circumstances of that?

21         MR. PEQUENO:  Okay.  There's an appeal that -- it's not

22    before the court yet.  It's coming.  I went ahead and paid the

23    appeal fee, $255.  And they took the money and applied it to

24    another appeal that had already been paid.  So the appeal that

25    should have been credited -- you know, applied correctly wasn't

1    applied.

2           THE COURT:  Okay.  So it got applied to probably one of

3    these four?

4           MR. PEQUENO:  Yes, sir.  It got applied to 135, to be

5    exact.  You can see it in the docket, what happened.  But I go

6    to the --

7           THE COURT:  So 135 has been paid twice?

8           MR. PEQUENO:  Yes, Your Honor.  How do I fix something

9    like that?

10          THE COURT:  All right.

11          MR. PEQUENO:  I wanted to -- because I go to the --

12          THE COURT:  Why don't we do this, Mr. Pequeno.  Why

13   don't we wait until after the hearing.  And, Cristi, why don't

14   you go down with Mr. Pequeno to the clerk's office and see if we

15   can resolve that matter.

16          MR. PEQUENO:  Thank you, Your Honor.

17          MR. SCHMIDT:  Your Honor, on another matter, with

18   complete candor to the court, I believe since you're reinstating

19   the appeals that virtually all, if not all of his appeals are

20   going to be moot as a result of the consummation of the

21   settlement agreement, so I will be filing motions to dismiss the

22   appeal as moot or these appeals as moot.

23          THE COURT:  Okay.

24          MR. SCHMIDT:  But I wanted to --

25          THE COURT:  I'll take them up when I take up the rest of

1  the motion.

2          MR. SCHMIDT:  Thank you, Your Honor.

3          THE COURT:  Why would they -- let me -- Mr. Schmidt, let

4  me ask you that while you're here, though, since you've raised

5  that issue.  I understand as a practical matter why they'd be

6  moot.  But as a legal matter, are they moot?

7          MR. SCHMIDT:  I believe they are, Your Honor, because

8  there's -- the -- one of his -- one of his appeals has to do

9  with vacating of the settlement agreement.  That clearly would

10 be, I believe, moot because the settlement has now been

11 consummated and all the funds paid, so there's no subject matter

12 to be litigated over the propriety of the settlement agreement.

13         THE COURT:  Has it been paid?

14         MR. SCHMIDT:  Yes, it has, Your Honor.

15         MR. PEQUENO:  The only thing is --

16         MR. SCHMIDT:  And the releases have been executed as

17 between the parties.  The settlement that was approved provided

18 for the mutual release, and that has been done.

19         THE COURT:  Okay.  Go ahead, Mr. Pequeno.  You started

20 to say something.

21         MR. PEQUENO:  What I was going to add, Your Honor, is

22 that he doesn't -- trustee does not have authority to be doing

23 that, and the settlement he's using is unfounded.

24         THE COURT:  Well, I mean, that's part of the argument on

25 appeal is who had the right to --

```
1              MR. PEQUENO:  Plus --

2              THE COURT:  -- settle the case.

3              MR. PEQUENO:  Plus I am in a 13, and --

4              THE COURT:  Hold on, hold on, hold on, hold on.  Now,

5    hold on.  I'm looking, Mr. Pequeno, at the kind of outline you

6    gave me of the various appeals and what pertains to what.

7              MR. PEQUENO:  Yes, Your Honor.

8              THE COURT:  It seems to me the issue, the direct appeal

9    of the issue that Mr. Schmidt is talking about is contained in

10   the 169 appeal, isn't it?

11             MR. PEQUENO:  Yes, Your Honor.

12             THE COURT:  I mean, because that's whether -- whether

13   the court erred or not in converting you back to a seven.

14             MR. SCHMIDT:  No, Your Honor, it is not.  169 is not the

15   appeal of the conversion because Your Honor has not even passed

16   upon the reconversion order.  That is -- that is on its way to

17   you, and I could give you the number if you'll give me a second,

18   Your Honor.

19      169 is -- maybe I'm confused.  Hold on.

20             MR. PEQUENO:  Your Honor, 169 --

21             MR. SCHMIDT:  Right.  I am confused, Your Honor.

22             MR. PEQUENO:  -- is whether I'm in a seven or a 13.

23             MR. SCHMIDT:  That is correct.  169 is the conversion.

24   I'm sorry.  My mind was on the settlement agreement.

25             THE COURT:  Okay.
```

44

```
 1          MR. SCHMIDT:  Yeah.  169 is the conversion back to
 2    Chapter 7, and that is at the -- that was appealed and -- at the
 3    5th Circuit, and the appeal was dismissed with prejudice.
 4    Mr. Pequeno is now talking about there being some other appeal
 5    that we talked about earlier, Your Honor.  I'm not familiar with
 6    the appeal itself.
 7          THE COURT:  Okay.  I mean, clearly --
 8          MR. PEQUENO:  I mean, if you want a copy --
 9          THE COURT:  This is the new sound system.
10          MR. SCHMIDT:  That's the new sound system.  Okay.
11          THE COURT:  This is your tax dollars at work.
12       Well, clearly that's -- whether there is an appeal and what
13    the merits of that appeal are, are all going to be decided by
14    someone other than me because the 5th Circuit is going to
15    decide.
16          MR. PEQUENO:  It is -- I can give the court a copy of --
17          THE COURT:  No.  Mr. Pequeno, it really doesn't matter
18    to me because I don't have jurisdiction.
19          MR. SCHMIDT:  Right.  It's upstairs.
20          THE COURT:  One way or the other, though, that's why I
21    was asking that question because really the merits of --
22          MR. PEQUENO:  That's the conversion issue.
23          THE COURT:  The merits of the settlement or who has the
24    power to settle is really tied into that appeal.
25          MR. SCHMIDT:  Well, Your Honor, it's also tied into the
```

1    appeal that will be coming up to you, which is the denial of the

2    vacation -- or the vacating, excuse me, Your Honor, vacating of

3    the order approving the settlement agreement.

4              THE COURT:  Okay.

5              MR. SCHMIDT:  And that order is unstayed.  There was no

6    supersedeas filed, no application to stay made, and so it was

7    consummated.

8              THE COURT:  Okay.  All right.  Okay.  I think I know

9    what I'm dealing with now.

10    Mr. Pequeno, you have to the 18th.  As a practical matter,

11    the next week is Thanksgiving week.  The week after that runs,

12    the next Friday would be December 2nd.  If for any reason any of

13    y'all want to reply to anything Mr. Pequeno files, you can have

14    until December 2nd.  But by reply, I'm talking very short.  I

15    mean, if there's something you want to say, look, that's wrong,

16    read this order, that's fine.  But don't give me -- I don't want

17    to read a book.  You guys have already filed your briefs.

18              MR. SCHMIDT:  Your Honor, I have not filed my briefs

19    except in the one.

20              THE COURT:  Okay.  Well, then, you need to.

21              MR. SCHMIDT:  He has not filed of -- that I know of,

22    he's filed briefs.  He has not provided me with copies of them.

23              THE COURT:  Have you filed your briefs in the --

24              MR. SCHMIDT:  All of the other appeals.

25              MR. PEQUENO:  Yes, I have, Your Honor, and I have sent

```
 1    him copies.

 2            THE COURT:  All right.  Well, y'all make sure --

 3            MR. PEQUENO:  I can send him another one.

 4            THE COURT:  Send him another one.

 5        All right.  Mr. Schmidt, in that case, you've got the same

 6    November 18th deadline to reply to whatever he's filed.

 7            MR. SCHMIDT:  Okay, Your Honor.

 8            MR. PEQUENO:  I believe he's --

 9            THE COURT:  What about in y'all's case?  Have you --

10            MR. NEGRIN:  I filed a reply brief on behalf of Aurora

11    on October 12th, Your Honor.

12            THE COURT:  Okay.

13            MR. NEGRIN:  And under the court's order now.

14            THE COURT:  Okay.  I've given him another 30 days to

15    reply to that.

16            MR. NEGRIN:  Correct.

17            MR. SCHMIDT:  I think, Your Honor, in explanation, the

18    appeals were dismissed before my appellate time ran, so I didn't

19    file anything.  I think I do have his briefs in those other

20    appeals.

21            MR. NEGRIN:  There is one thing that may lead to some

22    confusion, Your Honor, and we probably should address it a

23    little bit.  And that is that occasionally from my e-mail, I'll

24    see a motion or something pop up that has Mr. Pequeno's name on

25    it and has either my lawsuit and case style associated with
```

1    something belonging to something in which I'm not interested,

2    but Mr. Schmidt is, and maybe vice versa, I don't know.  But the

3    only -- the point is if we could have Mr. Pequeno be very

4    careful of which case he files in.

5        THE COURT:  I kept them separate.  I mean, I kept them

6    separate because I realize that in my effort to simplify things,

7    it was going to make it more confusing.  So let's try to use the

8    right cause number with the right case so that we won't have

9    that confusion, because that will end up being confusing to me

10   because if I'm searching on a computer for stuff, I'm searching

11   under a cause number.

12       MR. PEQUENO:  That's what I'm doing, Your Honor.  And

13   they got my e-mail, and I got their e-mail.  If they got any

14   confusion, they can do that or call me.

15       THE COURT:  I think if all sides will keep that in mind.

16   When we pull this up, we pull it up by cause number.  And if it

17   gets filed in the wrong cause, it's real hard for us to go back

18   and find something.

19      All right.  Anything else?

20       MR. SCHMIDT:  No, Your Honor.

21       THE COURT:  All right.  We appreciate y'all being here

22   today.

23       MR. NEGRIN:  Will Your Honor reduce its findings -- its

24   order on the briefing schedule to an order, or are we just going

25   to write it down or --

```
1          THE COURT:  Well, I think it will be in the minutes, and
2   I don't -- I mean, it's not that extensive, so I don't even
3   really see -- if you haven't filed a brief, you have until the
4   18th.  At the same time, Mr. Pequeno is going to file reply
5   briefs if there's any issue you haven't filed a brief.  And then
6   after Mr. Pequeno files his reply brief, you've got until
7   December 2nd to file something brief.  And, Mr. Pequeno, if
8   there's -- if there is something you want to reply to
9   Mr. Schmidt's briefs, you have until December 2nd.  So that way
10  we all know if you're filing something affirmatively, you've got
11  until the 18th; and if you're replying to something somebody
12  else files, you've got until December 2.
13          MR. NEGRIN:  Very well.
14          MR. SCHMIDT:  Thank you, Your Honor.
15          THE COURT:  Thank you-all.
16                              * * *
17      (End of requested transcript)
18                              -oOo-
19      I certify that the foregoing is a correct transcript from
20  the record of proceedings in the above matter.
21
22  Date:  December 7, 2005
23
24
25                              Signature of Court Reporter
                                Barbara Barnard
```